# 25-721

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

---

JESSICA BERGIN,

*Plaintiff-Appellee*

v.

New York State Unified Court System

*Defendant-Appellant.*

---

**On Appeal from the Decision and Order of the United States District Court for the Eastern District of New York**

---

## DEFENDANT-APPELLANT'S BRIEF AND SPECIAL APPENDIX

---

Michael J. Siudzinski, of Counsel
*Attorney for Defendant-Appellant*
Office of Court Administration
25 Beaver Street, 10th Floor
New York, New York 10004
(212) 428-2150
msiudzin@nycourts.gov

# TABLE OF CONTENTS

Page

Table of Authorities ........ i

PRELIMINARY STATEMENT ........ 1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ........ 2

STATEMENT OF ISSUES PRESENTED ........ 3

STATEMENT OF THE CASE ........ 4

A. Factual and Legal Background ........ 4
B. Plaintiff's Employment with UCS ........ 4
C. Plaintiff's Request for a Religious Exemption to the Vaccine Policy . 4
D. Plaintiff's Separation From Service with UCS and Reinstatement ... 8
E. The District Court Proceedings ........ 9

STANDARD OF REVIEW ........ 11

SUMMARY OF ARGUMENT ........ 11

ARGUMENT ........ 14

I. Plaintiff Cannot Demonstrate that UCS or Its Employees had a Motive to Avoid Providing An Accommodation to Her Religious Beliefs or Practices ........ 14

A. The district court clearly erred in ruling that *EEOC* did not apply to this case ........ 14
B. There is no evidence that Bergin's religious beliefs were a motivating factor in denying her request ........ 17

II. Bergin's Claims Against UCS and OCA Fail to State A Claim Upon Which Relief May Be Granted Under Title VII. ................................23

A. Bergin cannot demonstrate a prima facie case of failure to accommodate.......................................................................................23

CONCLUSION ..........................................................................................34

CERTIFICATION OF COMPLIANCE ..................................................35

SPECIAL APPENDIX.............................................................. SPA - i

SPECIAL APPENDIX TABLE OF CONTENTS........................... SPA - ii

Memorandum Decsison and Order,
filed October 8, 2024 (Document 36) .......................................SPA - 1

Consent Judgment and Order,
filed March 10, 2025 (Document 44) ........................................SPA - 9

# Table of Authorities

## Cases

*Baker v. Home Depot*,
445 F.3d 541 (2d Cir. 2006) .......................................................... 14, 23

*Brooklyn Ctr. For Psychotherapy, Inc. v. Philadelphia Indemnity Ins. Co.*, 955 F.3d 305 (2d Cir. 2020) .......................................................... 19

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001) .......................................................... 25

*Chauhan v. MM Hotel Management, LLC,*
2019 WL 6118006 (E.D.N.Y. Nov. 11, 2019) .......................................... 23

*Chinese Am. Citizens All. of Greater N.Y. v. Adams*,
116 F.4th 161 (2d Cir. 2024) .......................................................... 11

*Conner v. Raver*, 2025 WL 1745595,
(N.D. Cal. June 23, 2025) .......................................................... 31

*Cosme v. Henderson*,
No. 98 CIV. 2754 (VM), 2000 WL 1682755 (S.D.N.Y. Nov. 9, 2000), aff'd, 287 F.3d 152 (2d Cir. 2002) .......................................................... 33

*EEOC v. Abercrombie & Fitch Stores*, Inc.,
575 U.S. 768 (2015) .......................................................... passim

*Elmenayer v. ABF Freight Sys.*,
2001 WL 1152815 (E.D.N.Y. Sept. 20, 2001) .................................. 32, 33

*Fallon v. Mercy Cath. Med. Ctr. Of Se. Pa.*,
877 F.3d 487 (3d Cir. 2017) .......................................................... 31

*Finkbeiner v. Geisinger Clinic*,
623 F.Supp.3d 458 (M.D. Pa. 2022) .............................................. 28, 31

*Jackson v. New York State Off. Of Mental Health – Pilgrim Psychiatric Ctr.*, 2024 WL 1908533 (E.D.N.Y. May 1, 2024) .................................. 24

*Lowman v. NVI LLC*, 821 Fed.Appx. 29 (2d Cir. 2020) .......................................................... 16

*Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943 (2d Cir. 2008) .......................................................... 33

*Ricci v. DeStefano*, 557 U.S. 557 (2009) .................................................. 18

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) .................................................................... 18

*Thomas v. Nat'l Assoc. of Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000) ........................................................... 32

*Thompson v. City of New York*, 2002 WL 31760219 (S.D.N.Y. Dec. 9, 2002) ........................................ 32

*Wade-James v. Genzyme Corp.*, 2025 WL 438686 (C.D. Cal Feb. 2025) .................................................. 32

*Weiss v. Permanente Med. Group, Inc.*, 738 F.Supp.3d 1217 (N.D. Cal. 2024) ............................................ 28, 30

*Williams v. NYC Dept. of Sanitation*, 2002 WL 1154627 (S.D.N.Y. Sept. 28, 2002) ....................................... 25

**Statutes**

28 U.S.C. § 1291 ........................................................................ 2

28 U.S.C. § 1331 ........................................................................ 2

42 U.S.C. § 12112(b)(5)(A) ............................................................ 19

42 U.S.C. § 2000e ........................................................................ 2

42 U.S.C. § 2000e-2(a) ................................................................... 15

42 U.S.C. § 2000e-2(a)(1) ........................................................... 16, 18

42 U.S.C. § 2000e-2(m) .................................................................. 16

**Rules**

Fed. R. App. P. 4(a)(4)(A). ............................................................ 2

## PRELIMINARY STATEMENT

Appellant, the New York State Unified Court System ("UCS") as the judicial branch of New York, implemented a COVID-19 vaccination policy for all of its judicial and non-judicial staff to ensure its mission of open, continuous, and safe court operations to serve public court users. In furtherance of its mission, its vaccination policy was mandatory unless a medical or religious exemption was granted. Including Plaintiff-Appellee, Jessica Bergin, over 1200 UCS employees sought such exemptions between September and December 2021. UCS responded by creating an anonymous, unbiased, and procedurally robust, yet simple, request application and review process. Despite multiple steps of anonymous and unbiased review by numerous UCS officials and the lack of any evidence of actual discrimination, the District Court for the Eastern District of New York (Cogan, J.) determined that UCS is liable for failing to accommodate Bergin's religious-based exemption request. For the reasons set forth below, the District Court's judgment should be reversed, vacated, and the action dismissed.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Bergin commenced this action alleging a single claim under Title VII of the federal Civil Rights Act of 1964. 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"), giving the District Court subject matter jurisdiction pursuant to 28 U.S.C. § 1331. On July 28, 2023, UCS and Bergin submitted respective motions for summary judgment. By Order, dated October 8, 2024, the District Court denied UCS's motion and granted Bergin's motion, entering judgment on the question of UCS's liability. The District Court set the matter for trial on damages only. By Consent Judgment and Order, so-ordered on March 10, 2025, the parties stipulated to Bergin's damages and outstanding costs and fees to the extent this matter is not reversed, vacated, and dismissed on appeal. As such, this Court has appellate jurisdiction under 28 U.S.C. § 1291. *See also* Fed. R. App. P. 4(a)(4)(A).

## STATEMENT OF ISSUES PRESENTED

1. Did the District Court err in ruling that employer motive was not at issue here in contrast to the Supreme Court's ruling in *EEOC v. Abercrombie & Fitch Stores*, Inc., 575 U.S. 768 (2015)? Alternatively, can a Title VII discrimination claim for failure to accommodate be established when there are no factual indicia of either employer discriminatory animus (a necessary factor for disparate treatment claims) or, at least, employer "motive" to deny the request pursuant to *EEOC v. Abercrombie & Fitch Stores*, Inc., 575 U.S. 768 (2015)?

2. Did the district court err in finding that Plaintiff sufficiently informed UCS of her sincerely-held religious belief which conflicted with an employment requirement solely based on the information in her original submission?

3. When considering a request for a religious-based reasonable accommodation, is an employee obligated to determine if a single statement, which is only part of the entire submission, is sufficient to inform it of the employee's religious belief and a conflict to its employment requirement, or may the employer consider incomplete

or inconsistent statements made by the employee in other submitted documents when making its determination?

## STATEMENT OF THE CASE

### A. Factual and Legal Background

For purposes of this brief, only materials contained within the Joint Appendix ("JA") may be considered. The relevant and non-conclusory factual allegations and procedural history are repeated and summarized below.

### B. Plaintiff's Employment with UCS

Plaintiff was employed with UCS from July 2016 through April 2022 as a full-time court officer assigned to the Richmond County Criminal Court. (JA 1 (¶¶ 10, 12).) In or about January 10, 2022 Plaintiff was deemed "unfit for service" on the basis that she was not vaccinated against COVID-19. (JA 1 (¶ 11); see JA 73.) On April 7, 2022, UCS terminated Plaintiff's employment. (JA 1 (¶ 10).)

### C. Plaintiff's Request for a Religious Exemption to the Vaccine Policy

On September 10, 2021, UCS notified its employees by official memorandum that UCS would "require all judges and non-judicial personnel to be vaccinated by September 27, 2021, unless otherwise

approved for an exemption due to medical reasons or sincerely held religious beliefs." (JA 1 (¶ 14); *see* JA 23.) The memorandum stated that "exemptions to the mandatory vaccination requirement will be considered for…employees with sincerely held religious beliefs and practices that prohibit them from receiving a COVID-19 vaccine." (JA 1 (¶ 15); *see* JA 23.) The memorandum further stated that "applications for religious exemption must contain the employee's written, signed, and notarized statement detailing the religious basis for his/her objection to COVID-19 vaccination and the religious principle(s) that guide the objections to COVID-19 vaccination." (JA 1 (¶ 15); *see* JA 23.) The deadline for judges and non-judicial personnel to apply for the religious or medical vaccine exemption was set for September 27, 2021. (JA 1 (¶ 16); *see* JA 23.) Employees were directed to upload their exemption requests on or before September 27, 2021, through the online employee portal. (JA 1 (¶ 16); *see* JA 23.)

The memorandum also stated that "employees who timely file a request for exemption will be subject to the Mandatory Testing Program while their request is being reviewed. (JA 23.) Those employees who are granted a medical or religious exemption to vaccination will be subject to

the Mandatory Testing Program during the specified exemption period." (JA 1 (¶ 17); *see* JA 23.) The Mandatory Testing Program was implemented on September 7, 2021 and applied only to non-vaccinated personnel. (JA 1 (¶ 18); *see* JA 23.) It was conducted on a weekly basis. (JA 1 (¶ 18); *see* JA 23.) Plaintiff was a participant in the Mandatory Testing Program because she was unvaccinated. (JA 1 (¶ 19).)

On September 26, 2021, plaintiff submitted a request for a religious exemption to the UCS COVID-19 vaccination policy using the forms annexed to the September 10, 2021, UCS Vaccination Policy Memorandum. (JA 1 (¶ 21); *see* JA 23-49, 50-57.) Included with her vaccination exemption request, plaintiff annexed a letter from her pastor at the International Christian Center, which stated, in relevant part, that the "International Christian Center supports its religious belief [that] receiving a vaccine that uses aborted fetal cell lines in the development or testing of the vaccine violates their sincerely held religious beliefs regarding the sanctity and protection of pre-born children." (JA 1 (¶ 23); *see* JA 56-57.) Plaintiff did not include similar language in her request, presumably relying on her pastor's statements.

On November 8, 2021, the UCS Vaccination Exemption Committee sent plaintiff a letter and questionnaire requesting "more information before it can make a final determination." (JA 1 (¶ 24); *see* JA 58-65.) UCS requested further information from plaintiff regarding her history of taking or abstaining from medications and vaccines that were developed and tested with fetal cell lines, and specifically requested that plaintiff complete both Sections A and B thereof. (JA 1 (¶ 24); *see* JA 58-65.)

On November 26, 2021, plaintiff submitted her response to UCS' request for more information. (JA 1 (¶ 25); *see* JA 66-72.) Within her submission, plaintiff declined to answer the questions regarding her prior use of other medications and vaccinations on the grounds that, "my family and I strive to keep our individual medical information private." (JA 1 (¶ 25); *see* JA 71.) The questions regarding prior medication and vaccination history were requested by each employee who sought a religious vaccine exemption. (JA 1 (¶ 27).)

On December 29, 2021, plaintiff was informed by letter from UCS that her religious vaccination exemption request was denied. (JA 1 (¶ 28); *see* JA 73.) As a result, plaintiff was required to submit proof of taking her

first dose of a COVID-19 vaccination on or before January 10, 2022. (JA 1 (¶ 28); *see* JA 73.) On January 3, 2022, plaintiff attempted to submit a revised set of answers to the questionnaire. (JA 1 (¶ 32).) On January 4, 2022, plaintiff's supervisor received an email from UCS Administrative Counsel, Mindy Jeng, informing plaintiff that "the Committee's decisions are final, and the new request would not be considered." (JA 1 (¶ 33).) The email from Ms. Jeng stated that plaintiff was required to "submit proof of vaccination by January 10, 2022." (JA 1 (¶ 33).) To date, plaintiff has not taken a COVID-19 vaccination. (JA 1 (¶ 35).)

### D. Plaintiff's Separation From Service with UCS and Reinstatement

On January 10, 2022, plaintiff was sent a memorandum stating that plaintiff was "unfit for service for your failure to comply with the Vaccination Mandate." (JA 1 (¶ 36); *see* JA 73.) Plaintiff was instructed that she could not "report to work until you have submitted the required proof of vaccination and the submission has been confirmed by your supervisor." (JA 1 (¶ 36); *see* JA 73.) On January 10, 2022 UCS placed plaintiff on administrative leave using her accrued paid leave days until she was terminated on April 7, 2022 for failing to "comply with the Vaccination Mandate." (JA 1 (¶ 49).)

On February 15, 2023, UCS rescinded its vaccination policy and as of that date, no longer require judges and non-judicial employees to be vaccinated against COVID-19. (*See* JA 247 (¶ 79).) Concurrently, UCS also announced that it would allow any employee who was terminated as a result of non-compliance to seek reinstatement beginning on February 17, 2023. (*See* JA 247 (¶ 80).) On April 20, 2023, UCS distributed a letter to all previously terminated employees stating that the employee was eligible to seek reinstatement. (*See* JA 247 (¶ 80).) Plaintiff submitted a reinstatement request which was received by UCS on May 25, 2023. (*See* JA 247 (¶ 81).) On June 22, 2023 UCS reinstated plaintiff to her position of Court Officer at the Richmond County Criminal Courthouse. (*See* JA 247 (¶ 81).)

### E. The District Court Proceedings

On September 2, 2022, Bergin commenced this action against the New York State Unified Court System ("UCS"). (JA 1.) On November 4, 2022, UCS moved to dismiss the action on the grounds that Bergin had failed to state a claim for failure to accommodate because she could not demonstrate that she had notified UCS of her alleged religious beliefs. (*See* JA 21-73.) Plaintiff opposed and the Court denied UCS's motion by

docket order, dated November 27, 2022. (*See* JA 73-150; 151.) On December 13, 2022, UCS answered the complaint and the parties entered into discovery following a discovery conference on January 26, 2023. (*See* JA 153.)

On July 28, 2023, UCS moved for summary judgment and Bergin cross-moved for summary judgment. By Order, October 8, 2024, the District Court denied UCS's motion and granted Bergin's motion, finding UCS liable on Bergin's failure to accommodate claim. (*See* JA 310.) The court, having found UCS liable, put the matter down for trial on damages. (*See* JA 317.)

By Consent Judgement and Order, dated March 10, 2025, the parties entered into agreement on damages pending appeal of this matter. (*See* JA 327-35.)

## STANDARD OF REVIEW

This Court reviews de novo the district court's grant of summary judgment to plaintiff. *Chinese Am. Citizens All. of Greater N.Y. v. Adams*, 116 F.4th 161, 170 (2d Cir. 2024).

## SUMMARY OF ARGUMENT

The district court incorrectly granted Bergin's motion for summary judgment, finding UCS liable for her Title VII failure to accommodate claim on the basis that (i) the question of UCS's motivation, and that of its officials and employees, was not at issue in determining liability; and that (ii) she had sufficiently informed UCS of her sincerely-held religious belief and how it conflicted with UCS's vaccination policy.

I. The District Court erred in its ruling that an employer's motivation was not at issue herein, in clear contravention of the Supreme Court's ruling in *EEOC v. Abercrombie & Fitch Stores*, Inc., 575 U.S. 768 (2015).

The federal district courts and appellate courts have long treated Title VII failure to accommodate claims as a third category of discrimination claims, distinct from disparate treatment (*i.e.* intentional discrimination) and disparate impact (*i.e.* indirect discrimination). The

Supreme Court, in *EEOC v. Abercrombie & Fitch Stores*, Inc., 575 U.S. 768 (2015), ruled that there are only two categories of discrimination claims and that failure to accommodate should be treated in the same category as intentional discrimination, and inherent therein, a plaintiff must demonstrate *some motivation* by the employer to deny the request.

The district court declined to apply the analysis from *EEOC*, ruling that the Supreme Court's analysis applied only in matters in which the employer did not have actual knowledge. The district court's order ignored the plain language in *EEOC*. There is no evidence in the record, much less did Bergin demonstrate, that UCS or any of its officials or employees was motivated to deny her exemption request. As amply demonstrated by UCS, its review process was anonymous and unbiased, and resulted in the approval and granting of hundreds of its employees' religious-based and medical-based requests. Indeed, UCS's application and review process was established to mirror the district court's own process for its employees and has been repeatedly upheld by federal and state courts as appropriate and reasonably applied.

II. The district court erred when it found that Bergin sufficiently informed UCS of her alleged sincerely-held religious belief. Courts have

repeatedly found that an employer, when considering requests for reasonable accommodation of religious beliefs, may seek additional information from the employee and base its final determination on all submitted materials. An employee's failure to provide responses to an employer's requests for information is generally deemed a failure to engage in the interactive process and is sufficient grounds for an employer to deny a request.

UCS, as part of its COVID-19 exemption request procedures, lawfully required applicants to submit additional information concerning their religious beliefs and practices in response to predetermined questions. Bergin, in response to UCS's lawful request for more information, failed to provide responses to UCS's supplemental questions. UCS's review panel determined that due to Bergin's failure to answer the questions, it did not have sufficient information to grant her exemption request.

The district court, in granting Bergin's motion, found that UCS should have granted her exemption request based solely on her original submission, despite her refusal or failure to engage in the interactive process between employer and employee.

On these grounds, the district court's finding of liability should be reversed and the action should be dismissed for failure to state a claim.

## ARGUMENT

### I. Plaintiff Cannot Demonstrate that UCS or Its Employees had a Motive to Avoid Providing An Accommodation to Her Religious Beliefs or Practices.

#### A. The district court clearly erred in ruling that *EEOC* did not apply to this case

The federal courts, including this one, have long used a three-prong test for a plaintiff to establish a *prima facie* Title VII failure to accommodate claim: 1) she held a bona fide religious belief conflicting with an employment requirement; 2) she informed her employers of this belief; and 3) she was disciplined for failure to comply with the conflicting employment requirement. *See Baker v. Home Depot*, 445 F.3d 541, 543 (2d Cir. 2006). The second factor has been interpreted to mean the employer must have "actual knowledge" of the employee's religious beliefs.

In *EEOC*, the Supreme Court altered the analysis for Title VII "failure to accommodate" claims, finding (i) that an employer need not have *actual notice* of the employee's religious beliefs if there is a "suspicion" thereof and (ii) that the employer must have some motivating

factor to avoid providing the accommodation. *See*, *id.* at 773. The Supreme Court found that under the statutory language of Title VII, there are only two types of claims, disparate treatment (or intentional discrimination) and disparate impact, neither of which require actual notice by the employer of the employee's religious belief. *See EEOC*, 575 U.S. at 771-72 (citing to Title VII, 42 U.S.C. § 2000e-2(a), provisions (1) and (2), respectively).

The Supreme Court ruled that:

> An employer who has actual knowledge of the need for an accommodation does not violate Title VII by refusing to hire an applicant if avoiding that accommodation is not his motive." Conversely, an employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed. Thus, the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions."

*Id.* at 773. Additionally, the Supreme Court, relying on the text of Title VII, found that disparate treatment claims premised on an employer's failure to accommodate require a motive or intent element, common to other disparate treatment claims, finding that the phrase "because of" in

the Title VII disparate treatment provision (*see* 42 U.S.C. § 2000e-2(a)(1)) precludes employers from using a protected characteristics as motivating factors in employment decision. *See id.* at 772-73 (citing to 42 U.S.C. § 2000e-2(m)).

The Supreme Court summarized its ruling as follows: "If the applicant actually requires an accommodation of that religious practice, and the employer's desire to avoid the prospective accommodation is *a motivating factor* in his decision, the employer violates Title VII." *Id.* at 773-74 (emphasis added). This Court restated the Supreme Court's ruling as: "In a case involving alleged religious discrimination, a plaintiff may satisfy this burden [of stating a *prima facie* claim] by plausibly alleging that he or she actually requires an accommodation of' his or her religious practice and that the employer's desire to avoid the prospective accommodation was a motivating factor in an employment decision." *Lowman v. NVI LLC*, 821 Fed.Appx. 29, 31 (2d Cir. 2020), citing *EEOC*, 575 U.S. 768 (quotations omitted).

It is clear the district court erred by ruling that UCS's motivation (or lack thereof) was not at issue here. In contrast to the district court's interpretation, there is nothing in the *EEOC* ruling that limits its

application to fact patterns in which the employee does not notify the employer of their religious beliefs or practices. All Title VII disparate treatment claims, premised on an employer's failure to accommodate a religious belief or practice, must include a motivating factor, demonstrated by actual evidence, which is non-existent in this case.

### B. There is no evidence that Bergin's religious beliefs were a motivating factor in denying her request

The district court compounded its error by refusing to rule on the lack of evidence to establish UCS's motivation. (*See* JA 316-17 (n.2).) In doing so, no consideration was given to fact that there is no evidence in the record that UCS had any intent other than to grant its employees' requests for accommodation from its vaccination policy. The record is rife with detail about UCS's process to allow its 16,000 employees an opportunity to seek an exemption from its vaccination policy without bias or favoritism towards any individuals or religious affiliations. (JA 247-281.) Had the district court considered the evidence in the record, it would have found that there is there no genuine question of fact that UCS had no particular motive to grant or deny Bergin or its other employees' requests. This Court should find that there is no evidence in the record to support that UCS was motivated to avoid granting Bergin a religious

accommodation, reverse the district court's order, and dismiss this action.

Although the Supreme Court in its *EEOC* decision did not revisit what a plaintiff must demonstrate to establish a Title VII disparate treatment claim, the issue was examined in a decision by the Supreme Court in the same term, three weeks later. *See Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524–25 (2015). The opening paragraph of the Supreme Court's decision restated the longstanding burden on plaintiffs asserting a Title VII disparate treatment claim; they must demonstrate a discriminatory intent or motive:

> *In contrast to a disparate-treatment case, where a "plaintiff must establish that the defendant had a discriminatory intent or motive,"* a plaintiff bringing a disparate-impact claim challenges practices that have a "disproportionately adverse effect on minorities" and are otherwise unjustified by a legitimate rationale.

*Id.* at 524–25, citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (emphasis added). Even the dissent in *Texas Dep't of Housing & Community Affairs* agreed. "In other words, to take action against an individual *because of* a protected trait plainly requires discriminatory intent. No one disputes that understanding of § 2000e-2(a)(1) [Title VII's

disparate treatment provision]. *Id.* at 548-49 (citations and quotations omitted) (emphasis in original).

This Court should rule in the same manner. If, as the Supreme Court clearly laid out in *EEOC*, Title VII failure to accommodate claims are simply one type of disparate treatment claims, then the burden on plaintiffs should be same.[1] The Supreme Court, therein, intended for disparate treatment claims to be analyzed under the same rubric including a motivating factor element. A plaintiff must demonstrate an employer's discriminatory intent or motive related to the protected characteristic; Title VII's "because of" clause is not superfluous. *See EEOC*, 575 U.S. 772-73.

Discriminatory intent is a minimal showing for a plaintiff, but there must be *some evidence* of it to support an inference.

> An inference of discrimination can arise from . . . the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the

[1] Before *EEOC,* federal courts did not require discriminatory intent or motive as an element because these claims were usually analyzed similarly to failure to accommodate claims under the Americans with Disabilities Act ("ADA). The language of the ADA statute, in contrast to Title VII, does not include a "because of" clause, *i.e.* motive. *See* 42 U.S.C. 12112(b)(5)(A); *see also Brooklyn Ctr. For Psychotherapy, Inc. v. Philadelphia Indemnity Ins. Co.*, 955 F.3d 305, 312 (2d Cir. 2020) (stating that ADA failure to accommodate claims do not require proof of discriminatory intent). The Supreme Court's decision in *EEOC* altered the analysis away from ADA failure to accommodate claims to relyt on Title VII's disparate treatment provision's "because of" clause.

> protected group; or the sequence of events leading to the plaintiff's discharge.

*Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). There is zero evidence of any inference of a discriminatory intent by UCS or its officials and employees.

In contrast, the evidence clearly establishes that UCS treated all employees equally in an unbiased and non-discriminatory manner. UCS actively sought *to provide* reasonable accommodations to employees who needed one: it created a process for employees to request an accommodation from its vaccination policy based on federal legal precedent and mirroring the district court's process; it repeatedly informed all of its employees of how to apply for an accommodation; it created simple forms for employees to use and an online portal to easily submit them; it redacted employees' submitted forms to exclude any identifying information (name, title, work location); it created a committee of thirteen high-ranking agency officials, each of whom devoted hundreds of hours reviewing applications and meeting to discuss; it only denied such requests when the employee failed to provide the necessary information or gave inconsistent information; and it established a process whereby requests that were denied by part of the

committee were subsequently re-reviewed by a quorum of the whole committee. (*See* JA 247 (¶¶ 35, 49); JA 274 (¶¶ 8-19).) It is clear UCS took its responsibilities and its employees' religious rights seriously.

There is no evidence that UCS was motivated to deny its employees' religious accommodation requests for discriminatory or other reasons. Indeed, of the approximately 900 religious-based employee requests, 536 were granted without favoritism or bias towards specific individuals, job titles, work locations, or religious affiliations. UCS also considered employee requests for exemptions on medical grounds, even denying some requests. Again, the evidence in the record shows that UCS's only motivation was to grant exemptions to employees who demonstrated a sincere belief which conflicted with its vaccination policy, while encouraging as many of its employees as possible to be vaccinated so it could fulfill its mission to keep courts open.

It is unjust that UCS, having established a neutral, anonymous, and unbiased process for reviewing employee religious accommodation requests, could be found liable for disparate treatment without any evidence that it had a discriminatory intent or otherwise sought to avoid granting Bergin's request. It simply cannot be that Congress, in enacting

Title VII, sought to hold employers liable for disparate treatment without any showing of an intent to actually discriminate.

The Court should interpret the Supreme Court's ruling in *EEOC* to mean that an employee denied a religious accommodation must demonstrate the employer acted with a discriminatory intent or motive, the same as other Title VII disparate treatment claims. In other words, the Court should find that employees asserting disparate treatment accommodation claims must establish that the employment decision was made "because of" the employee's religious belief or practice, with at least some minimal evidence of a discriminatory intent.

Accordingly, the Court should reverse and vacate the district court's order and dismiss this action on the grounds that Bergin cannot demonstrate that UCS was motivated to deny her accommodation "because of" her religious practices.

## II. Bergin's Claims Against UCS and OCA Fail to State A Claim Upon Which Relief May Be Granted Under Title VII.

The district court erred in finding that Bergin sufficiently informed UCS of a sincerely-held belief that conflicted with UCS's COVID-19 vaccination policy.

### A. Bergin cannot demonstrate a prima facie case of failure to accommodate

To establish a prima facie failure to accommodate claim under Title VII, a plaintiff must demonstrate three elements: 1) she held a bona fide religious belief conflicting with an employment requirement; 2) she informed her employers of this belief; and 3) she was disciplined for failure to comply with the conflicting employment requirement. *See Chauhan v. MM Hotel Management, LLC* 2019 WL 6118006 (E.D.N.Y. Nov. 11, 2019) (*citing Baker v. Home Depot*, 445 F.3d 541, 543 (2d Cir. 2006)).

The district court erroneously found that Bergin's original submission was sufficient to establish the *prima facie* element of notifying UCS of her religious belief. The court, however, relied on a ruling in an order denying a motion to dismiss, citing *Jackson v. New York State Off. Of Mental Health – Pilgrim Psychiatric Ctr.*, 2024 WL

1908533, at *6 (E.D.N.Y. May 1, 2024). The court in *Jackson*, however, only found that a two-page letter was sufficient to *plausibly* allege a failure to accommodate claim *to avoid dismissal*. *See id.* (citing to three district court orders, each respectively finding that the plaintiff therein had plausibly stated a cause of action to avoid a motion to dismiss). The plausibility standard for motions to dismiss is significantly lower than the standard for summary judgment motions where a plaintiff-movant *must present evidence establishing entitlement to judgment*, while the non-moving party must show there is a genuine dispute of material fact. While a plaintiff's allegations relying on short statement of religious beliefs may be sufficient to avoid a motion to dismiss, Bergin's statement of religious beliefs in her request to UCS is not sufficient for a court to find judgment in her favor.

UCS established through the evidence that there is no genuine question of fact concerning whether her accommodation request sufficiently notified UCS of a sincerely-held belief. The deposition testimony submitted in support of UCS's motion and in opposition to Bergin's motion, demonstrate that the UCS's review committee members could not ascertain what, if any, beliefs she has and how they conflicted

with UCS's policy. (*See* JA 246). It is not within the authority or role of courts to second-guess an employer's decision or sit as "super personnel departments" in the absence of discrimination. *See Williams v. NYC Dept. of Sanitation*, 2002 WL 1154627, at *18 (S.D.N.Y. Sept. 28, 2002) (citing to *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001).

UCS further contends, however, that Bergin's accommodation request did not create a genuine question of fact, but wholly failed to inform UCS of any sincerely-held belief that conflicted with its vaccination policy. Bergin's own allegations demonstrate that she failed to inform UCS of her religious beliefs, instead relying on bald statements of religious beliefs, lacking any explanation of how such beliefs prevent her from complying with UCS's vaccination policy.

Plaintiff's initial request included references to a moral and ethical objection to the ingredients used in the development of the COVID-19 vaccinations. (*See* JA 53.)

While Plaintiff did not specifically state she objected to abortion in her written submission, she referred to a letter written by her pastor attached to the request. (*See* JA 56-57.). In the letter, authored by Ronald

Squibb, Senior Pastor at the International Christian Center, he referred to abortion, stem-cell research, the use of fetal stem-cells in the development and testing of the COVID-19 vaccines, and the church's objection to such use. (*See* JA 1 (¶23); JA 53.) Bergin's sole reference to fetal stem cells in either of her own written submissions was that they "unequivocally [violated her] ethics." (JA 53.) In contrast, her written submissions rely heavily on non-religious statements such as: "coerced medical treatment will infringe on my right of conscience," that she is educated "in healing through natural remedies and therapeutics," and that her doctors believe the vaccine should be her choice, "since it is my body." (JA 53.)

UCS then sought further information from Bergin regarding her past use of certain medications and treatments that also used fetal stem-cell lines in development and testing. (*See* JA 58.) The district court agreed that UCS was within its rights as an employer to seek additional information from its employees, including Bergin. (*See* JA 317.)

Bergin concedes that she was asked to provide additional information in furtherance of her religious exemption through a supplemental form and questionnaire. (JA 1 (¶¶ 24-25).) Bergin

submitted her supplemental form and questionnaire on November 16, 2021. (JA 1 (¶ 25); *see* JA 66.) Bergin, however, refused to fill out the questionnaire and instead submitted another personal statement. (JA 1 (¶ 25).) Her personal statement, again, failed to put UCS on notice of *her personal beliefs and how they conflicted with UCS policy*.

"A party that fails to communicate or withholds important information solely within the knowledge of that party, can be found to have obstructed the process in bad faith." *Id.* By Bergin's admission in her Complaint, she chose to withhold information solely within her own knowledge from UCS prior to the November 22, 2022 deadline. (JA 1 (¶ 25); *see* JA 58.)

UCS denied her religious exemption request on the basis that it was incomplete because she did not respond to the questions therein. (JA 1 (¶ 28); *see* JA 73.) In other words, UCS was not informed what Bergin's religious beliefs are or how they *conflicted* with its vaccination policy.

District courts in other circuits have found that bald statements about religious beliefs do not sufficiently demonstrate a conflict, even if they demonstrate a religious belief. For example, the district court for the Northern District of California found that an employee's "generic

explanation" of religious beliefs, would create a " 'blanket privilege' that would have resulted in a 'limitless excuse for avoiding all unwanted obligations'," and, the same as here, "provided little basis [for the employer] to evaluate the extent of her religious beliefs' potential conflict with" its policy. *Weiss v. Permanente Med. Group, Inc.*, 738 F.Supp.3d 1217, 1221 (N.D. Cal. 2024), citing *Finkbeiner v. Geisinger Clinic*, 623 F.Supp.3d 458, 465-66 (M.D. Pa. 2022). Plaintiff's statement in *Weiss* was:

> The COVID-19 vaccines go directly against my belief that I am not to introduce foreign substances into my body temple that change how my Creator designed it. God created my body temple with an immune system, the mechanism to ward off disease, and there is need [*sic*] to inject a man-made substance in an effort to "improve" my God given abilities.

*Weiss,* 738 F.Supp.3d at 1221.

Compare that to Bergin's similar statements in her original and supplemental submissions:

> According to my faith, any coerced medical treatments will infringe on my right of conscience, to manage my personal medical treatments, free of outside pressure. In addition to religious beliefs, i try to live each day as pure as possible and most of my consumption is organic or from the earth.
>
> . . .

> I was educated in healing through natural remedies and therapeutics (ie; vitamins, minerals, plant-based food, breathing exercises, meditation yoga) Also, now is a different/important time for our family as we are trying to conceive the precious gift of life. We have chosen to refrain from putting anything in our bodies.
>
> . . .
>
> I have been in close contact with my doctors who also believe that taking this inoculation should be solely my choice, since it is my body.
>
> I strongly believe in the sanctity of human life. I cannot, with a clear conscience, take vaccines as it has been confirmed that they have been developed using ingredients and methods, ***which unequivocally violate my ethics***. (emphasis added)
>
> . . .
>
> [A]ny forced medical mandates would raise questions as far as whether or not side effects or direct injuries from said vaccine would be covered by the institution mandating it.

(JA 53.)

> My free will and right of conscience as an individual created by God is of the highest important and greatest gift. Any undesirable intrusions will defile His design. This letter is to notify the committee of my sincere religious beliefs regarding this specific demand. My family and I strive to keep our individual medical information private.
>
> I do not put anything in my body that violates my deeply held religious beliefs.

(JA 71.)

Instead of clearly and unequivocally answering UCS's questions identifying specific beliefs and how such beliefs conflict with UCS's policy, Bergin instead relied on sweeping generalizations about the sanctity of her body, "natural" healing, and violating her *ethics*, while refusing to answer if she had previously refused to accept vaccines, medicines, or foods. (JA 53.) Plaintiffs' inherently contradictory statements—sometimes referring to the sanctity of her body and sometimes referring to use of fetal stem cells in developing COVID-19 vaccines—do not create a question of fact, much less support a finding to support a *prima facie* claim here. Bergin, in her writings, never states that the vaccines conflict with a specific religious practice (in contrast to health and ethical concerns), instead alluding to it by annexing the letter from Pastor Squibb. (*See* JA 56-57.)

The court in *Weiss* ruled that, an "employee must . . . relay sufficient information about the conflict between the religious belief and the employer's practice or policy, not simply the employee's desired accommodation." 738 F.Supp.3d at 1223. The court further found that the defendant-employer was, based on the plaintiff's statement quoted above, within its rights to ask further questions and to refuse granting a

religious accommodation when the plaintiff admitted that she had never refused other vaccinations based on religious beliefs. *See id.* at 1221, 1223. It is not sufficient simply to demonstrate a sincere belief, the employee must also demonstrate how their sincere beliefs conflict with the work requirement. Bergin consciously refused to answer UCS's questions about how her religious beliefs conflicted with its vaccination policy.

Similarly, in *Finkbeiner* the court found that an employee's statement that she has a "God given right to make [her] own choices" was "fungible enough to cover anything" the plaintiff wanted and was equivalent to an " 'isolated moral teaching' . . . not a comprehensive system of beliefs about fundamental or ultimate matters." *See Finkbeiner*, 623 F.Supp.458 at 465-66, citing *Fallon v. Mercy Cath. Med. Ctr. Of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017).

Other district courts have found similar bald statements insufficient to demonstrate that an employee has put an employer on notice of an actual conflict. *See*, *e.g. Conner v. Raver*, 2025 WL 1745595, at *5 (N.D. Cal. June 23, 2025) (dismissing the action after finding that plaintiff's statements were "generic answers," particularly where

plaintiff "*either refused to answer the questions or repeated portions of her prior answers" . . . and failed to "respond whether she objected to all medical testing."*) (emphasis added); *Wade-James v. Genzyme Corp.*, 2025 WL 438686, at *5 (C.D. Cal Feb. 2025) (finding that plaintiff's statements that "her body was a 'Temple of God,' and [that] the COVID-19 vaccine . . . was akin to 'unclean food' that should not be consumed" and " 'receiving the COVID-19 vaccine would violate the trust she is required to have in the healing power of GOD" was insufficient to "identify any conflict religious tenet or teaching").

Federal courts have often analogized Title VII failure to accommodate claims to ADA claims. The process of considering an employee's request for a reasonable accommodation is intended to be an interactive process in which both the employer and employee participate. *See Elmenayer v. ABF Freight Sys.*, 2001 WL 1152815, at *5 (E.D.N.Y. Sept. 20, 2001) (*citing Thomas v. Nat'l Assoc. of Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000)). In assessing the parties' engagement in an interactive process, "a court should look for signs of good faith or bad faith…" *See Thompson v. City of New York* 2002 WL 31760219 at *8 (S.D.N.Y. Dec. 9, 2002). "A party that fails to communicate or withholds

important information solely within the knowledge of that party, can be found to have obstructed the process in bad faith." *Id.* UCS was neither required to nor able to provide plaintiff with a reasonable accommodation when she refused to provide the requested information. *See Elmenayer*, 2001 WL 1152815, at *5; *Cosme v. Henderson*, No. 98 CIV. 2754 (VM), 2000 WL 1682755 (S.D.N.Y. Nov. 9, 2000), aff'd, 287 F.3d 152 (2d Cir. 2002).

Plaintiff cannot establish a prima facie case of religious discrimination concerning her first request because she did not inform UCS of her alleged religious beliefs and how they conflicted with its vaccination policy, instead relying on bald statements that she had sincerely-held beliefs against the COVID-19 vaccine. "An employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate." *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 945-46 (2d Cir. 2008). UCS's questions for its employees were not excessive or intrusive. The Court should uphold the longstanding requirement that employees must participate in the review process in good faith and find that if an employee refuses to answer questions, then such employee has failed to adequately notify

their employer of sincerely-held religious beliefs and any conflict with the employer's work requirements.

## CONCLUSION

For the foregoing reasons, this Court should reverse the Order of the District Court granting judgment in Bergin's favor and grant UCS's motion for summary judgment.

Dated: August 25, 2025
New York, New York

Respectfully Submitted,

DAVID NOCENTI
Attorney for Appellant UCS

By: /S/
Michael J. Siudzinski, of counsel

Office of Court Administration
25 Beaver Street, 10th Floor
New York, New York 10004
(212) 428-2150
msiudzin@nycourts.gov

# CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I, Michael J. Siudzinski, certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 6,462 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point for text and footnotes.

/S/
Michael J. Siudzinski, of counsel

# SPECIAL APPENDIX

# SPECIAL APPENDIX

## TABLE OF CONTENTS

Page

Memorandum Decsison and Order,
filed October 8, 2024 (Document 36) ............................................SPA - 1

Consent Judgment and Order,
filed March 10, 2025 (Document 44)............................................ SPA - 9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA BERGIN, Plaintiff, | |
| -against- | **MEMORANDUM DECISION AND ORDER** |
| NEW YORK STATE UNIFIED COURT SYSTEM, Defendant. | 22-cv-5264 (BMC) |

**COGAN**, District Judge.

This is an action for religious discrimination under Title VII brought by a court officer employed by the New York Unified Court System. Plaintiff contends that her employer failed to accommodate her request for a religious exemption from its COVID-19 vaccination policy. Plaintiff also claims that defendant has not demonstrated any undue hardship that would result from granting her reasonable accommodations to the COVID-19 vaccination policy. This case is before the Court on the parties' cross-motions for summary judgment.

## BACKGROUND

Plaintiff Jessica Bergin is a Christian and a member of International Christian Center, a General Council Church of the Assemblies of God. Plaintiff holds the religious belief that receiving a vaccine developed or tested with aborted fetal cell lines perpetuates the evil of abortion. When defendant issued an official memorandum requiring employees to receive COVID-19 vaccinations, plaintiff submitted a request for a religious accommodation to comply with the vaccine policy according to the process defendant had created for such requests. Plaintiff included a three-page letter, including quotes from scripture that supported her beliefs,

and a letter from her pastor, explaining plaintiff's sincerely held religious beliefs that prevented her from complying with the vaccine mandate.

Defendant responded with a letter requesting "more information before it can make a final determination" about plaintiff's religious accommodation request, including a questionnaire with follow-up questions. Plaintiff then submitted another personal statement explaining her religious beliefs and how they conflicted with the vaccine mandate. Plaintiff did not fill out the questionnaire, except to direct defendant to her personal statement for the answers to defendant's questions. Plaintiff did not include answers to defendant's questions about her use of other medications and vaccines, asserting that it was important to her to keep her medical information private.

After the deadline for responding to the questionnaire had passed, defendant denied plaintiff's request for a religious accommodation. Plaintiff then submitted another response to the questionnaire, this time filling out the questionnaire completely. Counsel for defendant notified plaintiff's supervisor that plaintiff had submitted this "new religious exemption request" but that the previous decision denying plaintiff's request was final, and the new request would not be considered. When plaintiff did not show proof of a COVID-19 vaccination by the requisite deadline, she was put on administrative leave until she used all of her accrued paid leave days, at which point she was terminated for failing to comply with the vaccine mandate.

Plaintiff then commenced this lawsuit. Her complaint states one claim for religious discrimination under Title VII. Defendant has since rescinded its vaccination policy and reinstated plaintiff. Both parties have cross-moved for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"Cross-motions for summary judgment do not alter [this] basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." AFS/IBEX v. AEGIS Managing Agency Ltd., 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021) (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)). A court need not grant summary judgment for either party, "[r]ather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales, 249 F.3d at 121 (citing Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

### II. Religious Discrimination

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Accordingly, it is "an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." Trans World Airlines. Inc. v. Hardison, 432 U.S. 63, 74 (1977).

To establish a *prima facie* case of failure to accommodate under Title VII, plaintiffs "must show that '(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement.'" Baker v. The Home Depot, 445 F.3d 541, 546 (2d Cir. 2006) (quoting Knight v. Conn Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001)). If a plaintiff has established a *prima facie* case, "the burden then shifts to the employer to show it could not accommodate the employee['s] religious beliefs without undue hardship." Vasquez v. City of New York - Off. of Mayor, No. 22-cv-5068, 2024 WL 1348702, at *5 (E.D.N.Y. Mar. 30, 2024).

### A. *Prima Facie* Case

Here, the parties do not dispute, and the Court agrees, that plaintiff has satisfied the first and third factors for her *prima facie* case: plaintiff held a bona fide religious belief conflicting with defendant's vaccine policy and she was terminated for her failure to comply with this policy. The remaining question is whether plaintiff adequately informed defendant of her religious belief through her request for accommodation.

"An employer need have 'only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements.'" Hickey v. State Univ. of New York at Stony Brook Hosp., No. 10-cv-1282, 2012 WL 3064170, at *7 (E.D.N.Y. July 27, 2012) (quoting Brown v. Polk Cnty., Iowa, 61 F.3d 650, 654 (8th Cir. 1995)). Specifically, submitting a "religious accommodation form with a two-page letter that detail[s] religious objections to [a] COVID-19 vaccination requirement" is sufficient to inform an employer of an employee's religious objections to a vaccine policy. Jackson v. New York State Off. of Mental Health - Pilgrim Psychiatric Ctr., No. 23-cv-04164, 2024 WL 1908533, at *6 (E.D.N.Y. May 1, 2024) (citations omitted). This is exactly what plaintiff did here.

It is undisputed that plaintiff submitted a religious accommodation form, personal statement, and statement from her pastor detailing plaintiff's religious beliefs that conflict with defendant's vaccine mandate. This was sufficient to satisfy the requirement that plaintiff inform defendant of her conflicting religious beliefs with an employment requirement. Plaintiff's failure to properly fill out defendant's questionnaire asking follow-up questions does not change this analysis, as plaintiff had already adequately informed defendant of her beliefs.

Nor does plaintiff's failure to properly complete the questionnaire create a question of material fact about the sincerity of plaintiff's religious beliefs. Defendant does not contest, based on her initial request alone, that plaintiff had a sincerely held religious belief in conflict with the vaccine mandate. In fact, defendant has admitted, through its Rule 30(b)(6) witness and Chief of Administration, that plaintiff's initial request for a religious accommodation was "perfectly adequate" and "explained a religious belief." Given the lack of dispute regarding plaintiff's sincerely held religious belief in conflict with the vaccine mandate, plaintiff's failure to properly

fill out the questionnaire does not change the fact that plaintiff has satisfied this prong of the *prima facie* case for a failure to accommodate religious beliefs under Title VII.

Defendant relies on Ferrelli v. Unified Court System, No. 22-cv-68, 2022 WL 673863 (N.D.N.Y. March 7, 2022), which involved the same vaccine mandate and the same supplemental questionnaire, to reach a contrary conclusion. There, the plaintiffs sought to invalidate the vaccine mandate on religious freedom grounds. The court held that the vaccine mandate was a neutral and generally applicable requirement, and that the supplemental questionnaire could be used to test the sincerity of employees' claimed religious beliefs: "[T]he Court finds that a limited factual inquiry of the type pursued by Defendants is narrowly tailored to stem the spread of COVID-19 because it enables the state to distinguish between sincerely held religious beliefs and those beliefs that are either contrived or not religious in nature." Id. at *8.

The instant case is very different. Plaintiff is challenging neither the vaccine mandate nor the right of defendant to inquire about the sincerity of its employees' religious beliefs through the supplemental questionnaire. Instead, she is asserting, as defendant has conceded, that her initial exemption claim was "religious" and "not contrived." The initial exemption claim was satisfactory to show that her religious belief was sincerely held, and therefore the supplemental questionnaire, in her particular case, was superfluous.

Because there is no dispute that plaintiff held a bona fide religious belief conflicting with defendant's vaccine policy or that plaintiff was terminated for her failure to comply with this policy, and the undisputed facts show that plaintiff met the legal test for adequately informing defendant of this belief, there is a *prima facie* case of failure to accommodate plaintiff's religious beliefs under Title VII.

### B. Undue Hardship

This Court agrees with defendant that "considering and responding to employees' inquiries, submissions, and requests made after the deadline would have been an undue hardship on its operations." Plaintiff's supplemental response to the questionnaire, submitted after the vaccine policy's deadline, cannot be considered in determining whether defendant failed to accommodate plaintiff's religious beliefs.[1]

However, dispensing with any obligation to consider plaintiff's late response does not alter the fact that plaintiff has demonstrated a *prima facie* case without regard to the supplemental questionnaire, and that it would have been no hardship at all on defendant – which, again, concedes the sincerity of her initial exemption claim – to grant the exemption. Based on that first request, there is no dispute of material fact that plaintiff had a bona fide religious belief that conflicted with the vaccine mandate, defendant knew of this belief, and defendant terminated plaintiff for her failure to comply with the vaccine mandate. There was no need, and therefore no undue hardship, for defendant to consider plaintiff's late supplemental response.

Furthermore, there would have been no undue hardship in granting plaintiff's religious accommodation request. First, defendant granted 555 religious accommodation requests (out of 937 applications), permitting accommodations of the same sort requested by plaintiff. Second, defendant has since rescinded its vaccination policy and, tellingly, reinstated plaintiff to her former position over a year ago.[2]

---

[1] An accommodation is an undue hardship when it is "substantial in the overall context of an employer's business." Groff v. DeJoy, 600 U.S. 447, 468 (2023). Defendant received, and had to evaluate, over 1,200 employee exemption requests, comprising 7.5% of defendant's total staff. The committee that reviewed these requests spent hundreds of hours reviewing employees' requests. It would be an undue hardship to require defendant to consider employees' requests or supplemental responses received after the deadline.

[2] Defendant's final argument is that E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768 (2015), requires plaintiff to show that defendant was motivated to discriminate against her. The case does not apply in this context. Abercrombie merely held that when the employee (or prospective employee, as in that case) does not inform the

If defendant wanted to send out a supplemental questionnaire for every claim of religious exemption, there was, as Ferrelli holds, no constitutional impediment in doing so. But if the claim for religious exemption itself presented sufficient grounds to grant the exemption, as defendant concedes it did here, defendant could not use the failure to timely complete the supplemental questionnaire as a reason to deny the exemption.

**CONCLUSION**

Plaintiff's motion for summary judgment [26] is granted and defendant's motion for summary judgment [27] is denied. By separate order, the Court will set this matter down for trial on the issue of damages.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
October 7, 2024

employer of her need for a religious accommodation, the employer's employment decision, if motivated in substantial part by the desire to frustrate the exercise of the religious practice without the presence of an undue burden, is still actionable under Title VII. Here, defendant was well aware of plaintiff's need for a religious exemption.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA BERGIN,<br><br>Plaintiff,<br><br>-against-<br><br>NEW YORK STATE UNIFIED COURT SYSTEM,<br><br>Defendant. | **CONSENT JUDGMENT AND ORDER**<br><br>22-cv-5264 (BMC) |

This CONSENT JUDGMENT AND ORDER (hereinafter "Consent Judgment") is made by and between Plaintiff Jessica Bergin ("Plaintiff") and Defendant New York State Unified Court System (hereinafter "UCS"), as of the date this Consent Judgment is "So Ordered" by a Judge of the United States District Court for the Eastern District of New York:

**WHEREAS**, on or about September 2, 2022, Plaintiff commenced the above-captioned civil action by filing a complaint (the "Complaint") in the United States District Court for the Eastern District of New York, Case Number 22-cv-5264, against Defendant UCS;

**WHEREAS**, the Complaint alleged a single claim against Defendant UCS pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII");

**WHEREAS**, the allegations and claim in the Complaint, together with any related filings and proceedings, constitute "the Action";

**WHEREAS**, Defendant UCS and the State of New York expressly deny any wrongful conduct or liability, or violation of any federal, state or local statute, ordinance or law, in connection with the events alleged in the Action;

**WHEREAS**, by Decision and Order, dated October 7, 2024, the Court (Cogan, J.)

granted Plaintiff's Motion for Summary Judgment, finding Defendant UCS liable for Plaintiff's Title VII claim in all respects and allowing the Action to proceed to trial for purposes of determining damages and other relief for Plaintiff's Title VII claim, and denying Defendant's Motion for Summary Judgment;

**WHEREAS**, Defendant UCS desires to pursue an appeal of the legal questions raised in its Motion for Summary Judgment, denied by the Court's October 7, 2024 Decision and Order, and Plaintiff and Defendant desire to resolve the issue of reasonable damages, both economic and compensatory, without further proceedings before the District Court including a trial in the Action;

**WHEREAS**, no party hereto is an infant or incompetent person for whom a committee has been appointed, and no person not a party to this Consent Judgment has an interest in the subject matter of the Action; and

**NOW**, **THEREFORE**, in consideration of the mutual promises, covenants, representations, and other consideration contained in this Consent Judgment, Plaintiff and Defendant hereby stipulate and agree, and the Court orders, as follows:

1. **Final Order**: Plaintiff and Defendant intend that this Consent Judgment together with the Court's October 7, 2024 Decision and Order, which is attached hereto as Exhibit A and incorporated by reference herein, constitute a final order in this Action for purposes of taking an appeal to the United States Court of Appeals, Second Circuit. No further litigation or proceedings shall be taken regarding the issue of damages and attorneys' fees and costs, except attorneys' fees and costs that may arise after execution of this Consent Judgment.

2. **Appeal and Fulfillment of Terms**: Upon the Court's so-ordering of this Consent Judgment, Defendant may seek an appeal, pursuant to all applicable federal statutes and rules, of

any legal questions raised by the Complaint, Defendant's Motion for Summary Judgment, and the Court's October 7, 2024 Decision and Order in this Action. "Time for Payment": Payments are contingent upon Plaintiff's prevailing party status at the conclusion of the case and in no event will Plaintiff be entitled to demand or receive the payments referenced in this Consent Judgment prior to the issuance of a mandate by the U.S. Court of Appeals for the Second Circuit affirming the final judgment, or the voluntary withdrawal of the appeal by Defendant, or a determination by Defendant to not appeal (signified by Defendant's decision not to file a notice of appeal and the expiration of the time for same).

3. **Salary Step Increase**: For and in consideration of Plaintiff's execution of this Consent Judgment, her agreement to be bound by its terms, and her undertakings as set forth herein, Defendant UCS shall increase Plaintiff's "salary step" a single step in the Pay Schedule attached to and incorporated into the collective bargaining agreement between UCS and Plaintiff's employee union, the New York State Court Officers Association, in effect at the time of fulfilment of the terms herein. The salary step required hereunder shall be effectuated in Plaintiff's official payroll records no later than 10 business days after the Time for Payment set forth in Paragraph 2.

4. **Payment to Plaintiff by Defendant Unified Court System**:

For and in consideration of Plaintiff's execution of this Consent Judgment, her agreement to be bound by its terms, and her undertakings as set forth herein, subject to any withholding for taxes to the State of New York and the United States Internal Revenue Service ("IRS"), Defendant UCS shall pay the sum of Ninety-Five Thousand and Fifty-Four Dollars and Zero Cents ($95,054.00) which, together with those payments detailed in Paragraph 5, shall be full and complete satisfaction of all claims, allegations, or actions, direct or indirect, known or

unknown, that Plaintiff had, has, or may have against Defendant UCS and or the New York State Office of Court Administration ("OCA") (including, but not limited to, any of UCS's and/or OCA's officials, employees, or agents, whether in their individual or official capacities), and/or the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof) arising out of any conduct, acts or omissions prior to, and as of the date of this Consent Judgment, including but not limited to those asserted in the Action. Payment of the above-referenced sum shall be made as follows:

(a) A single payment in the gross amount of Ninety-Five Thousand and Fifty-Four Dollars and Zero Cents ($95,054.00), less applicable income tax withholdings and deductions, for which an I.R.S. Form W2 shall be issued to Plaintiff Jessica Bergin, and which shall be full and complete satisfaction of any and all claims, allegations, or causes of action for back pay, lost wages, lost overtime, and all other income-related damages incurred by Plaintiff in connection with any of the acts, transactions, occurrences, or omissions asserted in the Action against Defendants.

(b) The payment as set forth in subsection (a) of this paragraph shall be made payable to the order of Jessica Bergin.

5. **<u>Payments to Plaintiff and Plaintiff's Attorneys</u>:** For and in consideration of Plaintiff's execution of this Consent Judgment, her agreement to be bound by its terms, and her undertakings as set forth herein, the State of New York, on behalf of Defendant, shall pay the total sum of One Hundred Forty Thousand and Three Hundred and Twenty-Nine Dollars and Fifty Cents ($140,329.50) which, together with those payments detailed in Paragraph 4, shall be full and complete satisfaction of all claims, allegations, or actions, direct or indirect, known or

unknown, that Plaintiff had, has, or may have against Defendant UCS and/or the New York State Office of Court Administration ("OCA") (including, but not limited to, any of UCS's and/or OCA's officials, employees, or agents, whether in their individual or official capacities), and/or the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof) arising out of any conduct, acts or omissions prior to, and as of the date of this Consent Judgment , including but not limited to those asserted in the Action. Payment of the above-referenced sum shall be made as follows:

(a) A single payment in the gross amount of One Hundred Forty Thousand and Three Hundred and Twenty-Nine Dollars and Fifty Cents ($140,329.50), for which an I.R.S. Form 1099 shall be issued, and which shall be full and complete satisfaction of any and all claims, allegations, or causes of action for compensatory damages (including, but not limited to, physical injury, pain and suffering, mental and emotional anguish and trauma, reputational damages, punitive damages, and liquidated damages), and any and all claims, allegations, or causes of action for attorneys' fees, costs, disbursements, and expenses incurred by Plaintiff for any and all legal counsel who have at any time represented Plaintiff in the Action as well as in connection with any of the acts, transactions, occurrences, or omissions asserted in the Action against Defendant.

(b) The payment as set forth in subsection (a) of this paragraph shall be made payable to the order of Steven M. Warshawsky as attorney for Jessica Bergin, 118 North Bedford Road, Suite 100, Mount Kisco, NY, 10549.

6. **Payments and Accrual of Interest:** Payment for the above-described amounts

shall not become due until the Time for Payment as described in Paragraph 2 or upon written agreement of the parties or their representatives. In the event that payment of either amount specified in Paragraphs 4 and 5 of this Consent Judgment has not been made by the one hundred twentieth (120th) day after the Time for Payment, interest on any part of the amount not paid by the one hundred twentieth (120th) day shall accrue at the statutory rate prescribed by 28 U.S.C. § 1961, commencing on the one hundred twenty-first (121st) day.

7. **Responsibility of Plaintiff and Plaintiff's Attorneys for Taxes:** With the exception of any payroll taxes withheld on the payment referred to in Paragraph 4 herein, any other taxes, or interest or penalties on taxes, on the payments referred to in Paragraph 5 of this Consent Judgment shall be the sole and complete responsibility of Plaintiff (or Plaintiff's attorneys respectively, for fees paid to said attorneys). Plaintiff and Plaintiff's attorneys acknowledge and agree that they shall have no claim, right, or cause of action against UCS and/or OCA (including, but not limited to, any of UCS's and/or OCA's officials, employees, or agents, whether in their individual or official capacities), nor the State of New York, or any of their agencies, departments, divisions, officers, employees, agents, attorneys, insurers, and assigns, whether in their individual or official capacities, or any of them, or all of them, on account of such taxes, interest, or penalties.

8. **Binding Effect on Successors and Assigns:** The terms and conditions of this Consent Judgment shall inure to the benefit of, and be binding upon, the successors and assigns of each party hereto.

9. **Authority:** Each signatory to this Consent Judgment hereby represents and warrants that he, she, or it has the requisite authority to enter into this Consent Judgment, and has not previously assigned or transferred any rights or interests with respect to the matters covered

by this Consent Judgment.

10. **Voluntary Agreement:** Plaintiff represents that she has thoroughly discussed all aspects of this Consent Judgment with her attorneys, that she is represented by counsel, and Plaintiff represents that she has carefully read and fully understands all of the provisions of the Consent Judgment. Plaintiff represents that she executes and delivers the Consent Judgment voluntarily after being fully informed of its terms, contents, and effect, and acknowledges that she understands its terms, contents, and effect. Plaintiff acknowledges that she has been advised of her right to seek the advice of an attorney and that she is and has been represented by counsel of her own choosing before agreeing to the terms of this Consent Judgment, and no compromise or representation of any kind, other than as set forth or referred to herein, has been made to any party or any one acting on behalf of any party.

11. **Negotiated Agreement**: The parties acknowledge that each party has participated and cooperated in the drafting and preparation of this Consent Judgment. The language in all parts of this Consent Judgment shall be in all cases construed according to its fair meaning and not strictly for or against any party.

12. **No Admission of Liability:** Defendant UCS acknowledges the findings made by the Court in its October 7, 2024 Decision and Order; however, nothing contained herein shall constitute an admission by Defendant UCS or the State of New York that they deprived Plaintiff of any right or failed to perform any duty under the constitutions, charters, statutes, rules, regulations, or other laws of the United States or, the State of New York, or the City of New York, or that any action or inaction by them was unlawful or wrongful. It is understood and agreed that any actions taken or payments made pursuant to this Consent Judgment are made solely to avoid the burdens and expense of protracted litigation; that this Consent Judgment and

the actions taken and payments made pursuant hereto are not to be construed as constituting any admission of wrongdoing or liability on the part of Defendant, the State of New York, or any of their present and former agencies, entities, departments, offices, subdivisions, subsidiaries, affiliates, administrators, principals, officers, employees, directors, members, trustees, shareholders, agents, attorneys, insurers, heirs and assigns, whether in their individual or official capacities, or any of them, or all of them, and that they expressly deny any wrongdoing or liability. Nothing contained in this Consent Judgment shall be deemed to constitute a policy, custom, or practice of Defendant UCS and/or OCA, or the State of New York, or any of their offices, agencies, departments, divisions, subdivisions, officials, employees, or agents, whether in their individual or official capacities.

13. **Headings:** The headings contained in this Consent Judgment are for convenience of reference only and are not a material part of this Consent Judgment.

14. **Submission to the Court:** Upon signature by all parties and counsel for parties, this Consent Judgment shall be submitted without further notice to the Court to be "So Ordered" and publicly filed on the Court's docket.

15. **Counterparts:** This Consent Judgment may be executed in several counterparts, each of which shall be deemed an original and which, taken together, shall constitute one and the same instrument, and may be executed by facsimile or PDF signature and notary seal.

16. **Acknowledgement of Full Understanding:** Plaintiff acknowledges and agrees that Plaintiff has fully read, understand, and voluntarily enters into this Consent Judgment. Plaintiff acknowledges and agrees that Plaintiff has had an opportunity to ask questions and consult with an attorney of Plaintiff's choice before signing this Consent Judgment.

**IN WITNESS WHEREOF**, the parties hereto acknowledge that they have read this

Consent Judgment and accept and agree to the provisions contained herein, and have each executed this Consent Judgment to be effective on the day and date indicated below.

Dated: March 8, 2025

JESSICA BERGIN

STATE OF New York )
) ss.:
COUNTY OF Richmond )

On the 8th day of March, 2025, before me personally came and appeared JESSICA BERGIN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Christine Rizzo.
NOTARY PUBLIC

CHRISTINE RIZZO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01RI5023709
QUALIFIED IN RICHMOND COUNTY
MY COMMISSION EXPIRES 03/26/2026

Dated: March 10, 2025

THE WARSHAWSKY LAW FIRM
*Attorney for Plaintiff*
By:

Steven Warshawsky
118 North Bedford Rd., Suite ~~340~~ 100
Mount Kisco, NY ~~10459~~ 10549
(914) 864-3353

Dated: March 10, 2025

DAVID NOCENTI
Counsel, NYS Office of Court Administration
*Attorney for Defendant UCS*

By:

Michael J. Siudzinski
Assistant Deputy Counsel
25 Beaver Street, 10th Floor
New York, NY 10004
(212) 428-2150

Dated: March 10, 2025

**SO ORDERED:**

Brian M. Cogan

Honorable Brian M. Cogan
United States District Judge

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA BERGIN, Plaintiff, -against- NEW YORK STATE UNIFIED COURT SYSTEM, Defendant. | **MEMORANDUM DECISION AND ORDER** 22-cv-5264 (BMC) |

**COGAN**, District Judge.

This is an action for religious discrimination under Title VII brought by a court officer employed by the New York Unified Court System. Plaintiff contends that her employer failed to accommodate her request for a religious exemption from its COVID-19 vaccination policy. Plaintiff also claims that defendant has not demonstrated any undue hardship that would result from granting her reasonable accommodations to the COVID-19 vaccination policy. This case is before the Court on the parties' cross-motions for summary judgment.

## BACKGROUND

Plaintiff Jessica Bergin is a Christian and a member of International Christian Center, a General Council Church of the Assemblies of God. Plaintiff holds the religious belief that receiving a vaccine developed or tested with aborted fetal cell lines perpetuates the evil of abortion. When defendant issued an official memorandum requiring employees to receive COVID-19 vaccinations, plaintiff submitted a request for a religious accommodation to comply with the vaccine policy according to the process defendant had created for such requests. Plaintiff included a three-page letter, including quotes from scripture that supported her beliefs,

and a letter from her pastor, explaining plaintiff's sincerely held religious beliefs that prevented her from complying with the vaccine mandate.

Defendant responded with a letter requesting "more information before it can make a final determination" about plaintiff's religious accommodation request, including a questionnaire with follow-up questions. Plaintiff then submitted another personal statement explaining her religious beliefs and how they conflicted with the vaccine mandate. Plaintiff did not fill out the questionnaire, except to direct defendant to her personal statement for the answers to defendant's questions. Plaintiff did not include answers to defendant's questions about her use of other medications and vaccines, asserting that it was important to her to keep her medical information private.

After the deadline for responding to the questionnaire had passed, defendant denied plaintiff's request for a religious accommodation. Plaintiff then submitted another response to the questionnaire, this time filling out the questionnaire completely. Counsel for defendant notified plaintiff's supervisor that plaintiff had submitted this "new religious exemption request" but that the previous decision denying plaintiff's request was final, and the new request would not be considered. When plaintiff did not show proof of a COVID-19 vaccination by the requisite deadline, she was put on administrative leave until she used all of her accrued paid leave days, at which point she was terminated for failing to comply with the vaccine mandate.

Plaintiff then commenced this lawsuit. Her complaint states one claim for religious discrimination under Title VII. Defendant has since rescinded its vaccination policy and reinstated plaintiff. Both parties have cross-moved for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"Cross-motions for summary judgment do not alter [this] basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." AFS/IBEX v. AEGIS Managing Agency Ltd., 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021) (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)). A court need not grant summary judgment for either party, "[r]ather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales, 249 F.3d at 121 (citing Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

### II. Religious Discrimination

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Accordingly, it is "an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." Trans World Airlines. Inc. v. Hardison, 432 U.S. 63, 74 (1977).

To establish a *prima facie* case of failure to accommodate under Title VII, plaintiffs "must show that '(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement.'" Baker v. The Home Depot, 445 F.3d 541, 546 (2d Cir. 2006) (quoting Knight v. Conn Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001)). If a plaintiff has established a *prima facie* case, "the burden then shifts to the employer to show it could not accommodate the employee['s] religious beliefs without undue hardship." Vasquez v. City of New York - Off. of Mayor, No. 22-cv-5068, 2024 WL 1348702, at *5 (E.D.N.Y. Mar. 30, 2024).

### A. *Prima Facie* Case

Here, the parties do not dispute, and the Court agrees, that plaintiff has satisfied the first and third factors for her *prima facie* case: plaintiff held a bona fide religious belief conflicting with defendant's vaccine policy and she was terminated for her failure to comply with this policy. The remaining question is whether plaintiff adequately informed defendant of her religious belief through her request for accommodation.

"An employer need have 'only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements.'" Hickey v. State Univ. of New York at Stony Brook Hosp., No. 10-cv-1282, 2012 WL 3064170, at *7 (E.D.N.Y. July 27, 2012) (quoting Brown v. Polk Cnty., Iowa, 61 F.3d 650, 654 (8th Cir. 1995)). Specifically, submitting a "religious accommodation form with a two-page letter that detail[s] religious objections to [a] COVID-19 vaccination requirement" is sufficient to inform an employer of an employee's religious objections to a vaccine policy. Jackson v. New York State Off. of Mental Health - Pilgrim Psychiatric Ctr., No. 23-cv-04164, 2024 WL 1908533, at *6 (E.D.N.Y. May 1, 2024) (citations omitted). This is exactly what plaintiff did here.

It is undisputed that plaintiff submitted a religious accommodation form, personal statement, and statement from her pastor detailing plaintiff's religious beliefs that conflict with defendant's vaccine mandate. This was sufficient to satisfy the requirement that plaintiff inform defendant of her conflicting religious beliefs with an employment requirement. Plaintiff's failure to properly fill out defendant's questionnaire asking follow-up questions does not change this analysis, as plaintiff had already adequately informed defendant of her beliefs.

Nor does plaintiff's failure to properly complete the questionnaire create a question of material fact about the sincerity of plaintiff's religious beliefs. Defendant does not contest, based on her initial request alone, that plaintiff had a sincerely held religious belief in conflict with the vaccine mandate. In fact, defendant has admitted, through its Rule 30(b)(6) witness and Chief of Administration, that plaintiff's initial request for a religious accommodation was "perfectly adequate" and "explained a religious belief." Given the lack of dispute regarding plaintiff's sincerely held religious belief in conflict with the vaccine mandate, plaintiff's failure to properly

fill out the questionnaire does not change the fact that plaintiff has satisfied this prong of the *prima facie* case for a failure to accommodate religious beliefs under Title VII.

Defendant relies on Ferrelli v. Unified Court System, No. 22-cv-68, 2022 WL 673863 (N.D.N.Y. March 7, 2022), which involved the same vaccine mandate and the same supplemental questionnaire, to reach a contrary conclusion. There, the plaintiffs sought to invalidate the vaccine mandate on religious freedom grounds. The court held that the vaccine mandate was a neutral and generally applicable requirement, and that the supplemental questionnaire could be used to test the sincerity of employees' claimed religious beliefs: "[T]he Court finds that a limited factual inquiry of the type pursued by Defendants is narrowly tailored to stem the spread of COVID-19 because it enables the state to distinguish between sincerely held religious beliefs and those beliefs that are either contrived or not religious in nature." Id. at *8.

The instant case is very different. Plaintiff is challenging neither the vaccine mandate nor the right of defendant to inquire about the sincerity of its employees' religious beliefs through the supplemental questionnaire. Instead, she is asserting, as defendant has conceded, that her initial exemption claim was "religious" and "not contrived." The initial exemption claim was satisfactory to show that her religious belief was sincerely held, and therefore the supplemental questionnaire, in her particular case, was superfluous.

Because there is no dispute that plaintiff held a bona fide religious belief conflicting with defendant's vaccine policy or that plaintiff was terminated for her failure to comply with this policy, and the undisputed facts show that plaintiff met the legal test for adequately informing defendant of this belief, there is a *prima facie* case of failure to accommodate plaintiff's religious beliefs under Title VII.

**B. Undue Hardship**

This Court agrees with defendant that "considering and responding to employees' inquiries, submissions, and requests made after the deadline would have been an undue hardship on its operations." Plaintiff's supplemental response to the questionnaire, submitted after the vaccine policy's deadline, cannot be considered in determining whether defendant failed to accommodate plaintiff's religious beliefs.[1]

However, dispensing with any obligation to consider plaintiff's late response does not alter the fact that plaintiff has demonstrated a *prima facie* case without regard to the supplemental questionnaire, and that it would have been no hardship at all on defendant – which, again, concedes the sincerity of her initial exemption claim – to grant the exemption. Based on that first request, there is no dispute of material fact that plaintiff had a bona fide religious belief that conflicted with the vaccine mandate, defendant knew of this belief, and defendant terminated plaintiff for her failure to comply with the vaccine mandate. There was no need, and therefore no undue hardship, for defendant to consider plaintiff's late supplemental response.

Furthermore, there would have been no undue hardship in granting plaintiff's religious accommodation request. First, defendant granted 555 religious accommodation requests (out of 937 applications), permitting accommodations of the same sort requested by plaintiff. Second, defendant has since rescinded its vaccination policy and, tellingly, reinstated plaintiff to her former position over a year ago.[2]

---

[1] An accommodation is an undue hardship when it is "substantial in the overall context of an employer's business." Groff v. DeJoy, 600 U.S. 447, 468 (2023). Defendant received, and had to evaluate, over 1,200 employee exemption requests, comprising 7.5% of defendant's total staff. The committee that reviewed these requests spent hundreds of hours reviewing employees' requests. It would be an undue hardship to require defendant to consider employees' requests or supplemental responses received after the deadline.

[2] Defendant's final argument is that E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768 (2015), requires plaintiff to show that defendant was motivated to discriminate against her. The case does not apply in this context. Abercrombie merely held that when the employee (or prospective employee, as in that case) does not inform the

If defendant wanted to send out a supplemental questionnaire for every claim of religious exemption, there was, as Ferrelli holds, no constitutional impediment in doing so. But if the claim for religious exemption itself presented sufficient grounds to grant the exemption, as defendant concedes it did here, defendant could not use the failure to timely complete the supplemental questionnaire as a reason to deny the exemption.

## CONCLUSION

Plaintiff's motion for summary judgment [26] is granted and defendant's motion for summary judgment [27] is denied. By separate order, the Court will set this matter down for trial on the issue of damages.

**SO ORDERED.**

Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
October 7, 2024

---

employer of her need for a religious accommodation, the employer's employment decision, if motivated in substantial part by the desire to frustrate the exercise of the religious practice without the presence of an undue burden, is still actionable under Title VII. Here, defendant was well aware of plaintiff's need for a religious exemption.