# 25-721

In the
United States Court of Appeals
For the Second Circuit

**Jessica Bergin,**
*Plaintiff–Appellee*

v.

**New York State Unified Court System,**
*Defendant–Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

# BRIEF FOR PLAINTIFF-APPELLEE

***Attorney for Plaintiff-Appellee:***

STEVEN M. WARSHAWSKY
THE WARSHAWSKY LAW FIRM
118 North Bedford Road, Suite 100
Mount Kisco, New York 10549
T: (914) 864-3353
E: smw@warshawskylawfirm.com

# TABLE OF CONTENTS

Table of Contents ....................................................................... i

Table of Authorities ..................................................................... iii

Preliminary Statement ..................................................................... 1

Questions Presented and Summary of Argument ..................................... 2

Statement of Undisputed Facts ........................................................... 4

A. Defendant's Answer ........................................................................ 4

B. Defendant's Interrogatory Responses .............................................. 9

C. Defendant's 30(b)(6) Deposition Testimony ...................................... 11

D. Defendant's Summary Judgment Affidavits ....................................... 14

E. Bergin's Reinstatement ................................................................... 15

Standard of Review ........................................................................... 16

Argument ......................................................................................... 17

A. Legal Framework For Title VII Religious Accommodation Claims ........................................................................ 17

B. Employer's Statutory Duty To Accommodate Religious Beliefs ............................................................................ 19

C. The District Court Properly Entered Summary Judgment For Plaintiff On Her Title VII Accommodation Claim ............... 22

1. It is undisputed that Bergin held a bona fide religious belief conflicting with Defendant's COVID-19 vaccination policy ....... 22

2. It is undisputed that Bergin was fired because she did not get the COVID-19 vaccine ....... 24

3. No reasonable jury could find that Bergin failed to inform UCS of her religious objections to the COVID-19 vaccines ....... 25

(i) What is required for an employee to "inform" her employer of her conflicting religious belief? ....... 25

(ii) Bergin adequately informed UCS of her religious objections to the COVID-19 vaccines ....... 27

4. There is no undue hardship defense in this case ....... 33

D. Bergin Did Not Violate The "Interactive Process" ....... 34

E. The Supreme Court's Decision In *EEOC v. Abercrombie & Fitch Stores* Does Not Require Plaintiffs In Title VII Accommodation Cases To Prove Discriminatory Motive ....... 38

Conclusion ....... 42

Certificate of Compliance ....... 43

# TABLE OF AUTHORITIES

## CASES

*Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013) ........ 27

*Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60 (1986) ........ 20,35

*Baker v. Home Depot*, 445 F.3d 541 (2d Cir. 2006) ........ *passim*

*Bazinet v. Beth Israel Lahey Health, Inc.,* 113 F.4th 9 (1st Cir. 2024) ........ 32

*Braccia v. Northwell Health Sys.*, No. 24-2665, 2025 WL 2610704 (2d Cir. Sept. 10, 2025) (sum.) ........ 39

*Brener v. Diagnostic Ctr. Hosp.,* 671 F.2d 141 (5th Cir. 1982) ........ 20

*Brown v. Polk County, Iowa*, 61 F.3d 650 (8th Cir. 1995) (en banc) ........ 26

*Cagle v. Weill Cornell Medicine*, No. 24-2427, 2025 WL 2790408 (2d Cir. Sept. 30, 2025) (sum.) ........ 39

*Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012 (4th Cir. 1996) ........ 26

*Chavis v. Wal-Mart Stores, Inc.,* 265 F.Supp.3d 391 (S.D.N.Y. 2017) ........ 19

*Cosme v. Henderson*, 287 F.3d 152 (2d Cir. 2002) ........ 18,36

*County of Washington v. Gunther*, 452 U.S. 161 (1981) ........ 37

*D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441 (2d Cir. Nov. 17, 2023) (sum.) ........ 39

*Dixon v. City of Syracuse*, No. 20-CV-381(DNH), 2024 WL 4227775 (N.D.N.Y. Sept. 18, 2024) ........ 9

*Dixon v. Hallmark Companies, Inc.*, 627 F.3d 849 (11th Cir. 2010) ........ 26

*Does 1-2 v. Hochul*, No. 22-2858, 2024 WL 5182675
(2d Cir. Dec. 20, 2024) (sum.) ............................................................39

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015)................................................... *3,17,38,39,40,41*

*Gardner-Alfred v. Fed. Reserve Bank of N.Y.*, 143 F.4th 51
(2d Cir. 2025) .......................................................................32

*Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571
(2d Cir. 2006) .........................................................................4

*Giurca v. Bon Secours Charity Health Sys.*, No. 23-200, 2024 WL
763388 (2d Cir. Feb. 26, 2024) (sum.) ..............................................38

*Groff v. DeJoy*, 600 U.S. 447 (2023) ....................................... *17,20,21,41*

*Hale v. Vidal*, No. 22-2973, 2023 WL 7211909
(2d Cir. Nov. 2, 2023) (sum.)...........................................................39

*Hebrew v. Texas Dept. of Criminal Justice,* 80 F.4th 717
(5th Cir. 2023).......................................................................21

*Heller v. EBB Auto Co.*, 3 F.3d 1433 (9th Cir. 1993).............................26

*Heublein, Inc. v. United States*, 996 F.2d 1455 (2d Cir. 1997)...............16

*Hickey v. State Univ. of New York at Stony Brook Hosp.*,
No. 10-CV-1282(JS), 2012 WL 3064170 (E.D.N.Y. July 27, 2012) ....26

*Keene v. San Francisco*, No. 22-16567, 2023 WL 3451687
(9th Cir. May 15, 2023) (mem.) .......................................................29

*Knight v. Conn. Dept. of Pub. Health*, 275 F.3d 156
(2d Cir. 2001) ................................................................... *passim*

*Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019)................................37

*Lowman v. NVI LLC*, No. 19-3149, 821 Fed. Appx. 29
(2d Cir. July 22, 2020) (sum.) .........................................................38

*Morangelli v. Chemed Corp.*, 922 F.Supp.2d 278 (E.D.N.Y. 2013) ..........9

*New Yorkers for Religious Liberty, Inc. v. New York*, 125 F.4th 319 (2d Cir. 2024) (per curiam) ....................19

*Patel v. NYU Langone Hosp.*, No. 20-112, 2021 WL 4852426 (2d Cir. Oct. 19, 2021) (sum.)....................39

*Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476 (2d Cir. 1985), *aff'd in part and remanded*, 479 U.S. 60 (1985)....................25

*Redmond v. GAF Corp.*, 574 F.2d 897 (7th Cir. 1978)....................26

*Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182 (2d Cir. 2025) (per curiam) .................... *passim*

*Sofia v. Esposito*, No. 17-CV-1829(KPF), 2019 WL 6529432 (S.D.N.Y. Dec. 4, 2019)....................9

*Stephen v. Maximum Sec. & Investigations, Inc.,* 99-CV-4313(RWS), 2000 WL 1774849 (S.D.N.Y. Dec. 4, 2000)....................20

*Toledo v. Nobel-Sysco, Inc.,* 892 F.2d 1481 (10th Cir. 1989) ....................20

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) ........18,35,41

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) (per curiam) ....................29

*Wechsler v. Hunt Health Sys., Ltd.*, No. 94-CV-8294(PKL), 1999 WL 672902 (S.D.N.Y. Aug. 27, 1999) ....................9

## STATUTES, REGULATIONS, RULES

42 U.S.C. § 2000e *et seq.* .......... 35

42 U.S.C. § 2000e-2(a)(1) .......... 17

42 U.S.C. § 2000e(j) .......... 18,20

29 C.F.R. Part 1605 .......... 35

29 C.F.R. § 1605.2(b)(1) .......... 18

29 C.F.R. § 1605.2(c) .......... 19,21

Fed. R. Civ. P. 56(a) .......... 16

## OTHER AUTHORITIES

Black's Law Dictionary (11th Ed. 2019) .......... 23

## PRELIMINARY STATEMENT

This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, on the grounds that Defendant failed to reasonably accommodate Plaintiff's sincerely held religious objection to a mandatory COVID-19 vaccination policy, and as a result unlawfully terminated her employment.

The United States District Court for the Eastern District of New York (Cogan, J.), properly entered summary judgment in favor of Plaintiff because the undisputed evidence – including Defendant's answers to contention interrogatories and 30(b)(6) deposition testimony – established every element of Plaintiff's prima face case as a matter of law. Once a prima facie case is established by the employee, it is black letter law that the employer must offer him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship. Because Defendant did not (and cannot) assert an undue hardship defense in this case, Defendant violated Title VII by denying Plaintiff's religious exemption. The district court's ruling should be AFFIRMED.

## QUESTIONS PRESENTED AND SUMMARY OF ARGUMENT

Question #1: Did the district court err when it granted summary judgment to Plaintiff on her Title VII religious accomodation claim?

Answer: No. Based on the undisputed evidence before the district court – including Defendant's answers to contention interrogatories and 30(b)(6) deposition testimony – all of the elements of Plaintiff's prima face case were established as a matter of law. Bergin held a bona fide religious belief conflicting with UCS's COVID-19 vaccination requirement; she requested a religious exemption in which she informed UCS of her belief; and she was fired for not getting the vaccine. Because Defendant did not (and cannot) assert an undue hardship defense, Defendant violated Title VII by denying Plaintiff's religious exemption. Accordingly, the district court properly entered summary judgment for Plaintiff.

Question #2: Did Plaintiff fail to comply with her obligations to participate in the "interactive process"?

Answer: No. Bergin provided detailed information about her religious objections to the COVID-19 vaccines as part of her request for a religious exemption, which Defendant's 30(b)(6) witness acknowledged

was "perfectly adequate" and "explained a religious belief." This satisfied Bergin's obligation to inform UCS about the basis for her religious exemption. Nothing in the statute, regulations, or case law required Bergin to answer additional follow-up questions about her personal medical history. The "interactive process" was not at issue in this case because there was no disagreement about the nature of the accommodation that would be provided to Bergin (an exemption from the vaccination requirement subject to certain health and safety protocols) had her request been granted, as it should have been.

Question #3: Does the Supreme Court's decision in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), require plaintiffs asserting Title VII religious accommodation claims to prove their employer's discriminatory motive as part of their prima facie case?

Answer: No. *Abercrombie* is a narrow decision holding that an employer who refuses to hire a job applicant based on the employer's motive of avoiding the need to accommodate the applicant's religious practice violates Title VII. Nothing in *Abercrombie* altered the employer's statutory duty to accommodate or required plaintiffs in accommodation cases to prove discriminatory motive.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff's motion for summary judgment before the district court below was based on the following undisputed material facts.

### A. Defendant's Answer:

The following facts alleged in the Complaint were admitted by Defendant in its Answer and thus "are judicial admissions that bind the defendant throughout this litigation." *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006).

Plaintiff Jessica Bergin (Bergin) was employed by Defendant New York State Unified Court System (UCS) as a full-time court officer at the Richmond County Criminal Court beginning July 14, 2016. Compl. ¶¶ 2, 3, 10, 12 (JA 10-11); Ans. ¶¶ 2, 3, 10, 12 (JA 153-155).

On September 10, 2021, UCS notified employees by official memorandum that "the Unified Court System will require all judges and non-judicial personnel to be vaccinated by September 27, 2021, unless otherwise approved for an exemption due to medical reasons or sincerely held religious beliefs." Compl. ¶ 14 (JA 11); Ans. ¶ 14 (JA 155).

In a section with the heading Exemptions, the memorandum stated, in relevant part, that "[e]xemptions to the mandatory

vaccination requirement will be considered for . . . employees with sincerely held religious beliefs and practices that prohibit them from receiving a COVID-19 vaccine." The memorandum further stated that "[a]pplications for religious exemption must contain the employee's written, signed and notarized statement detailing the religious basis for his/her objection to COVID-19 vaccination and the religious principle(s) that guide the objections to COVID-19 vaccination." Compl. ¶ 15 (JA 11-12); Ans. ¶ 15 (JA 155).

On September 26, 2021, Bergin submitted a request for a religious exemption, using the prescribed forms and following the prescribed procedures. Compl. ¶ 21 (JA 12); Ans. ¶ 21 (JA 155).

Bergin supported her request with a three-page personal statement that included an extensive list of scriptural citations, along with a personalized, signed letter from her pastor. Compl. ¶¶ 22, 23 (JA 12-13); Ans. ¶¶ 22, 23 (JA 155-156).

Bergin's personal statement explained, *inter alia*, that "I am sincerely devoted to God, His Word and the Holy Trinity"; "I have been a practicing, devoted servant of Christ my entire life"; "I have a right of conscience to choose what enters my body"; being forced to take the

COVID-19 vaccine "disobeys my religious faith"; "I try to live each day as pure as possible and most of my consumption is organic or from the earth"; "I strongly believe in the sanctity of human life" and "cannot, with a clear conscience, take these vaccines as it has been confirmed that they have been developed using ingredients and methods, which unequivocally violate my ethics"; and "after extensive prayer, and moral and spiritual counseling, my family and I have decided not to put anything into our bodies against our sincere beliefs." Compl. ¶ 22 (JA 12-13); Ans. ¶ 22 (JA 155).

The pastor's letter stated that "the following teaching of International Christian Center demonstrates the principled religious basis on which Jessica Bergin holds a conscientious religious objection to the current Covid-19 vaccines" and specifically noted that "International Christian Center supports its religious belief [that] receiving a vaccine that uses aborted fetal cell lines in the development or testing of the vaccine violates their sincerely held religious beliefs regarding the sanctity and protection of pre-born children." Compl. ¶ 23 (JA 13); Ans. ¶ 23 (JA 155-156).

On November 8, 2021, UCS sent Bergin a form letter and questionnaire requesting "more information before it can make a final determination," including about other medications and vaccines that were allegedly developed using fetal cell lines that Bergin may have taken in the past. Compl. ¶ 24 (JA 13); Ans. ¶ 24 (JA 156).

In response, Bergin submitted another personal statement, on or about November 16, 2021. Compl. ¶ 25 (JA 13); Ans. ¶ 25 (JA 156). In her response, Bergin emphasized, *inter alia*, that "God created me in His image and made me a vessel of the Holy Spirit. I cannot take this vaccine as it conflicts with my sincerely held religious beliefs. Upon praying to Jesus, I was directed to His truth and divine wisdom and I would like to exercise my religious freedoms." *Id.* Bergin declined to answer the questions about her use of other medications and vaccines on the grounds that "[m]y family and I strive to keep our individual medical information private." *Id.* She closed by reiterating "[p]olitely, I will never stray from my sincere beliefs because it has been prayed upon between myself and my God." *Id.*

On December 29, 2021, Bergin received a form letter stating that her request for a religious exemption "was considered by the UCS

Vaccination Exemption Committee and denied." Compl. ¶ 28 (JA 14); Ans. ¶ 28 (JA 156). No reason was given for the denial. *Id.* Bergin was given until January 10, 2022, to submit proof of taking the first dose of a COVID-19 vaccine. *Id.*

In the denial letter, UCS did not question or deny the sincerity of Bergin's religious objections to the COVID-19 vaccines. Compl. ¶ 29 (JA 14); Ans. ¶ 29 (JA 156).

In the denial letter, UCS did not state that Bergin's religious exemption was denied because it would have caused an undue hardship. Compl. ¶ 30 (JA 14); Ans. ¶ 30 (JA 156).

On or about January 3, 2022, Bergin submitted another response to the supplemental questionnaire. Compl. ¶ 32 (JA 15); Ans. ¶ 32 (JA 157).

On January 4, 2022, Bergin's supervisor received an email from UCS Administrative Counsel, Mindy M. Jeng, Esq., stating that "[t]he Committee's decisions are final, and the new request will not be considered." Compl. ¶ 33 (JA 15); Ans. ¶ 33 (JA 157). The email reiterated that Bergin was required "to submit proof of vaccination by January 10." *Id.*

On January 10, 2022, Bergin was served with a memorandum advising her that she was "unfit for service because of your failure to comply with the Vaccination Mandate." Bergin was instructed "not to report to work until you have submitted the required proof of vaccination and the submission has been confirmed by your supervisor." Compl. ¶ 36 (JA 15); Ans. ¶ 36 (JA 157).

Starting on January 10, 2022, Bergin remained on administrative leave, using her accrued paid leave days, until she was terminated effective April 7, 2022, for "fail[ing] to timely comply with the Vaccination Mandate." Compl. ¶ 49 (JA 17); Ans. ¶ 49 (JA 159).

**B. Defendant's Interrogatory Responses:**

Defendant's responses to Plaintiff's contention interrogatories "are treated by courts in this Circuit as 'judicial admissions' that generally estop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses." *Wechsler v. Hunt Health Sys., Ltd.*, No. 94-CV-8294(PKL), 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999); *Morangelli v. Chemed Corp.*, 922 F.Supp.2d 278, 311 (E.D.N.Y. 2013) (same) (quoting *Wechsler*); *see also, e.g., Dixon v. City of Syracuse*, No. 20-CV-381(DNH), 2024 WL 4227775, at *4

(N.D.N.Y. Sept. 18, 2024) ("The Second Circuit has yet to rule on this precise issue, but district courts in this Circuit generally treat a party's response to contention interrogatories as binding judicial admissions.") (citing cases); *Sofia v. Esposito*, No. 17-CV-1829(KPF), 2019 WL 6529432, at *7 (S.D.N.Y. Dec. 4, 2019) ("Multiple courts in this District and Circuit have recognized that answers to contention interrogatories can bind parties to their answers.") (citing cases).

Defendant's verified responses to Plaintiff's first set of interrogatories are found at JA 163-171. As relevant here:

Interrogatory No. 6 asked: "Identify all reasons why Jessica's Bergin's application for a religious exemption to the UCS COVID-19 vaccination policy was denied." JA 167.

Defendant answered: [objections omitted] "UCS contends that Plaintiff failed to provide sufficient information about her beliefs which would have allowed the committee to grant her request." JA 168.

Interrogatory No. 7 asked: "If Defendant contends that Ms. Bergin lacked a bona fide, good faith religious objection to the COVID-19 vaccine, identify, with as much specificity as possible, the basis for this contention." JA 168.

Defendant answered: [objections omitted] "UCS does not contend that Plaintiff lacked a bona fide, good faith religious objection, see response to Int. #6." JA 168.

Interrogatory No. 9 asked: "If Defendant contends that it would have caused an undue hardship to grant Ms. Bergin a religious exemption to the UCS COVID-19 vaccination policy, identify, with as much specificity as possible, the nature, scope, and cost of this alleged undue hardship." JA 169.

Defendant answered: [objections omitted] "UCS does not contend that it would have caused an undue hardship to grant Plaintiff a religious exemption. See response to Int. #6." JA 169.

**C. Defendant's 30(b)(6) Deposition Testimony:**

Defendant designated Justin Barry, UCS Chief of Administration, to testify on its behalf in response to Plaintiff's 30(b)(6) deposition notice. *See* Justin Barry Deposition dated June 1, 2023 (excerpts only), at 13-16 (JA 177-180).

Mr. Barry testified, in relevant part, as follows:

It was the policy of UCS to grant religious exemptions "for sincerely held religious beliefs which prohibit a judge or employee from receiving a COVID-19 vaccine." *Id.* at 21 (JA 181).

As part of the evaluation process, UCS did not take into consideration whether granting a religious exemption would impose an undue hardship on the court system; the only consideration was whether "the objection to the vaccination [was] religious in nature and was it sincerely held[,] period." *Id.* at 25 (JA 182).

"[T]he supplemental form was always considered in conjunction as a part of a whole with the initial form." *Id.* at 41 (JA 183).

"Virtually all of them [employees who requested religious exemptions] were asked to fill out one or both of the sections of the supplemental form and the ground rules were that a working group would then review both the initial form and the supplemental form once it had been submitted . . . ." *Id.* at 49-50 (JA 184-185).

In situations where an employee's answers to the supplemental form were considered unresponsive by the UCS vaccination exemption committee, the committee did not engage in any follow-up

communications with the employee asking him or her to provide responsive answers to the questions. *Id.* at 60 (JA 186).

Bergin's initial application "express[ed] concerns about bodily integrity and particularly from a letter from her pastor, I believe it was, from the International Christian Center Senior Pastor, objections related to the use of stem cells in the development of the vaccine." *Id.* at 73 (JA 188).

Bergin's "initial submission was perfectly adequate and it explained a religious belief based upon a number of issues that she presents and we wanted to explore it some more." *Id.* at 74 (JA 189).

Bergin's response to the supplemental questionnaire was considered insufficient because she did not answer each of the questions asked on the form. *Id.* at 76-77 (JA 190-191).

The personal statement that Bergin submitted in response to the supplemental questionnaire is "a fine statement that we would have taken no objection to as an attachment to the supplemental form, but we were looking for direct answers to all the questions in [sections] A and B." *Id.* at 77 (JA 191).

There was no other reason besides the nonresponsiveness of her supplemental form for why Bergin's application for a religious exemption was denied. *Id.* at 79 (JA 192).

### D. Defendant's Summary Judgment Affidavits:

Defendant submitted affidavits from Mr. Barry and Ms. Jeng in support of Defendant's motion for summary judgment and in opposition to Plaintiff's motion for summary judgment. *See* Affidavit of Justin Barry (JA 247-273); Declaration of Mindy Jeng (JA 274-281). As relevant here, these witnesses testified:

More than 1,200 judges and non-judicial staff applied for exemptions; approximately 1,000 were based on religious grounds. UCS granted approximately 536 religious exemptions and denied approximately 363 such requests. Barry Aff. ¶ 44 (JA 262); *see also* Meng Decl. ¶ 21 (JA 278).

"The VEC granted or denied a very small number of applications based solely on an applicant's initial form." Meng Decl. ¶ 12 (JA 276).

UCS reviewed applications for religious exemptions "solely to determine whether the applicant's opposition to being vaccinated was based on a sincerely held religious belief. Applications were not denied

based on what their belief is or the source of the belief, or whether the applicant identifies with one particular religious or another. UCS granted exemptions to employees professing adherence to a wide variety of religious beliefs and faiths. The VEC did not in any way seek to assess the validity of any employee's professed religious beliefs, including Plaintiff's." Barry Aff. ¶ 49 (JA 263-264); *see also* Meng Decl. ¶ 19 (JA 278).

**E. Bergin's Reinstatement:**

UCS ended its COVID-19 vaccination policy effective February 17, 2023. Meng Decl. ¶ 32 (JA 280). UCS offered reinstatement to employees who had been terminated from employment or had quit in lieu of becoming vaccinated. *Id.* (JA 280-281). On or about June 22, 2023, Bergin was reinstated to her position as a court officer at the Richmond County Criminal Court. *Id.* ¶ 33 (JA 281).

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is well-established:

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (internal quotation marks and citations omitted).

This Court reviews a district court's entry of summary judgment *de novo*. *Id.*

# ARGUMENT

## A. Legal Framework For Title VII Religious Accommodation Claims.

"Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business." *Groff v. DeJoy*, 600 U.S. 447, 453-54 (2023) (internal quotation marks and citation omitted). Importantly, "Title VII does not demand mere neutrality with regard to religious practices – that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not . . . to discharge any individual . . . because of such individual's religious observance and practice." *EEOC v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768, 775 (2015) (internal quotation marks and citations omitted).

Title VII declares it unlawful, *inter alia*, "for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to

an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

As the Supreme Court recognized nearly 50 years ago: "The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . ." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) ("Thus, according to this definition, when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship."); 29 C.F.R. § 1605.2(b)(1) (same).

To make out a prima facie case of failure to accommodate under Title VII, employees "must show that (1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (quoting *Knight v. Conn. Dep't of*

*Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)). These longstanding elements of the employee's prima face case were recently reiterated by this Court in *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 185-86 (2d Cir. 2025) (per curiam) (quoting *Knight*, *supra*).

"Once a prima facie case is established by the employee, the employer must offer him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Baker*, 445 F.3d at 546 (quoting *Cosme*, *supra*); *Russo*, 129 F.4th at 186 (same) (quoting *Baker*, *supra*); *see also* 29 C.F.R. § 1605.2(c) (same).

### B. Employer's Statutory Duty To Accommodate Religious Beliefs.

It bears emphasizing that the employer's statutory duty to accommodate an employee's religious beliefs under Title VII is mandatory, not discretionary. Once an employee has notified his or her employer of a bona fide religious belief that conflicts with an employment requirement, the employer must offer the employee a reasonable accommodation. *Baker*, 445 F.3d at 546; *New Yorkers for Religious Liberty, Inc. v. New York*, 125 F.4th 319, 333 (2d Cir. 2024) (per curiam) (citing *Cosme*, *supra*). This is a "statutory requirement." *Chavis v. Wal-Mart Stores, Inc.*, 265 F.Supp.3d 391, 399 (S.D.N.Y.

2017). "The statutory burden to accommodate rests with the employer." *Toledo v. Nobel-Sysco, Inc.,* 892 F.2d 1481, 1488 (10th Cir. 1989) (quoting *Brener v. Diagnostic Ctr. Hosp.,* 671 F.2d 141, 146 (5th Cir. 1982)).

As the Supreme Court recently reiterated in *Groff v. DeJoy*: "Title VII requires that an employer reasonably accommodate an employee's practice of religion . . . ." 600 U.S. at 473. An employer who fails to reasonably accommodate an employee's religious beliefs "violates the statute." *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 68 (1986).

The only exception to this statutory duty is where the employer "demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j); *Ansonia Bd. of Educ.,* 479 U.S. at 68. Thus, to avoid liability for failing to accommodate an employee's religious beliefs, the employer must demonstrate that "no reasonable accommodation was possible without causing an undue hardship." *Stephen v. Maximum Sec. & Investigations, Inc.,* 99-CV-4313(RWS), 2000 WL 1774849, at *5 (S.D.N.Y. Dec. 4, 2000).

As the Supreme Court emphasized in *Groff:* "Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations. This distinction matters." 600 U.S. at 473. Thus, even if an employer determines that one form of accommodation would constitute an undue hardship, "[c]onsideration of other options . . . would also be necessary." *Id.*; *see also Hebrew v. Texas Dept. of Criminal Justice,* 80 F.4th 717, 722 (5th Cir. 2023) ("If a requested accommodation poses an undue hardship, the employer must *sua sponte* consider other possible accommodations. Only after thorough consideration of other options may the employer deny the employee's request for accommodation.").

The employer's legal obligation is summarized succinctly in the EEOC regulations, 29 C.F.R. § 1605.2(c):

> After an employee . . . notifies the employer . . . of his or her need for a religious accommodation, the employer . . . has an obligation to reasonably accommodate the individual's religious practices. A refusal to accommodate is justified only when an employer . . . can demonstrate that an undue hardship would in fact result from each available alternative method of accommodation.

### C. The District Court Properly Entered Summary Judgment For Plaintiff On Her Title VII Accommodation Claim.

The district court properly entered summary judgment for Plaintiff on her Title VII accommodation claim because, based on the undisputed evidence, there is no genuine dispute of material fact with respect to any element of Plaintiff's prima facie case and Defendant is not asserting an undue hardship defense.

#### 1. It is undisputed that Bergin held a bona fide religious belief conflicting with Defendant's COVID-19 vaccination policy.

The first element of Plaintiff's prima facie case is that she held a bona fide religious belief conflicting with Defendant's COVID-19 vaccination policy. *See Russo*, 129 F.4th at 185-86. As found by the district court, this element is undisputed. *See* JA 313 ("Here, the parties do not dispute, and the Court agrees, that plaintiff . . . held a bona fide religious belief conflicting with defendant's vaccine policy . . . .").

Neither in response to Bergin's application nor during this litigation has Defendant disputed either the religious nature of Bergin's objections to the COVID-19 vaccines or the sincerity of her religious beliefs. Significantly, in response to Plaintiff's Interrogatory No. 7,

Defendant unequivocally answered that "UCS does not contend that Plaintiff lacked a bona fide, good faith religious objection." JA 168.

Consequently, Defendant conceded that Bergin's objection was *religious*. Defendant conceded that it was *bona fide*, i.e., (1) made in good faith; without fraud or deceit; (2) sincere; genuine. *See* Black's Law Dictionary (11th Ed. 2019) (accessed via Westlaw). And Defendant conceded that it was made in *good faith*, i.e., a state of mind consisting of (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation . . . or (4) absence of intent to defraud or to seek unconscionable advantage. *Id.*

Furthermore, in response to Plaintiff's Interrogatory No. 6, Defendant did not identify a lack of religious belief as one of the reasons for denying Bergin's religious exemption. The only reason given was Bergin's alleged failure to provide sufficient information about her beliefs. JA 167-168. Likewise, Mr. Barry testified that the only reason for denying Bergin's application was the nonresponsiveness of her supplemental questionnaire. JA 192. And in this appeal, Defendant nowhere argues that Bergin lacks a bona fide religious objection to the

COVID-19 vaccines (only that she failed to inform UCS about her beliefs).[1]

Accordingly, there is nothing for a jury to decide with respect to the first element of Plaintiff's prima facie case, which is established as a matter of law.

### 2. It is undisputed that Bergin was fired because she did not get the COVID-19 vaccine.

The third element of Plaintiff's prima facie case is that she was disciplined for failing to comply with the conflicting employment requirement. *See Russo*, 129 F.4th at 186. Again, this element is undisputed. *See* JA 313 ("Here, the parties do not dispute, and the Court agrees, that plaintiff . . . was terminated for her failure to comply with this policy.").

Bergin was terminated effective April 7, 2022, for "fail[ing] to timely comply with the Vaccination Mandate." Compl. ¶ 49 (JA 17); Ans. ¶ 49 (JA 159). Defendant does not dispute this element on appeal.

---

[1] To the extent that Defendant's arguments on appeal can be construed as disputing the religious nature of Bergin's objections to the COVID-19 vaccines (*see* Def. Br. at 27-32), these arguments are foreclosed by Defendant's interrogatory answers and 30(b)(6) deposition testimony.

Accordingly, there is nothing for a jury to decide with respect to the third element of Plaintiff's prima facie case, which is established as a matter of law.

### 3. No reasonable jury could find that Bergin failed to inform UCS of her religious objections to the COVID-19 vaccines.

The second element of Plaintiff's prima facie case is that she informed her employer of her conflicting religious belief. *See Russo*, 129 F.4th at 186. This is the only element of Plaintiff's prima face case that Defendant disputes on appeal. Based on Defendant's own testimony, however, the district court correctly found that Bergin "adequately informed defendant of her beliefs." JA 314.

#### (i) What is required for an employee to "inform" her employer of her conflicting religious belief?

Neither the Supreme Court nor the Second Circuit has opined regarding the quantum of information that an employee must provide her employer in support of a Title VII accommodation claim. Neither the statute nor the regulations address this issue. The relevant Second Circuit precedents speak in generalities. *See Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985) ("informed the employer of this belief"), *aff'd in part and remanded*, 479 U.S. 60 (1985); *Knight*, 275

F.3d at 167 ("informed their employers of this belief"); *Baker*, 445 F.3d at 546 ("informed their employers of this belief"); *Russo*, 129 F.4th at 186 ("informed [her] employer of this belief").

Several other circuit courts have addressed this question more explicitly, and they unanimously agree that the informational burden on an employee is minimal:

In *Heller v. EBB Auto Co.*, 3 F.3d 1433 (9th Cir. 1993), the Ninth Circuit explained that "[a] sensible approach would require only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Id.* at 1439 (citing *Redmond v. GAF Corp.*, 574 F.2d 897, 902 (7th Cir. 1978)); *see also Brown v. Polk County, Iowa*, 61 F.3d 650, 654 (8th Cir. 1995) (en banc) (same) (citing *Heller*); *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019-20 (4th Cir. 1996) (same) (citing *Redmond* and *Heller*); *Dixon v. Hallmark Companies, Inc.*, 627 F.3d 849, 856 (11th Cir. 2010) (same) (citing *Brown*).[2]

[2] *Heller* and *Brown* were followed in *Hickey v. State Univ. of New York at Stony Brook Hosp.*, No. 10-CV-1282(JS), 2012 WL 3064170, at *7 (E.D.N.Y. July 27, 2012), a case cited by the district court below. JA 314.

More recently, in *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013), the Seventh Circuit explained that "an employee who wants to invoke an employer's duty to accommodate his religion under Title VII must give the employer fair notice of his need for an accommodation and the religious nature of the conflict." *Id.* at 450.

In sum, looking back over several decades of case law, the appropriate standard under Title VII requires that a plaintiff provide only general information about his or her religious beliefs that conflict with a job requirement. Bergin's thoughtful, detailed submissions in support of her application for a religious exemption were more than sufficient to meet this burden.

**(ii) Bergin adequately informed UCS of her religious objections to the COVID-19 vaccines.**

It is undisputed that Bergin submitted an application for a religious exemption to Defendant's COVID-19 vaccination policy using the prescribed forms and following the prescribed procedures. Bergin supported her application with a three-page personal statement that included an extensive list of scriptural citations, along with a personalized, signed letter from her pastor. Compl. ¶¶ 21-23 (JA 12-13); Ans. ¶¶ 21-23 (JA 155-156); *see* JA 314 ("It is undisputed that plaintiff

submitted a religious accommodation form, personal statement, and statement from her pastor detailing plaintiff's religious beliefs that conflict with defendant's vaccine mandate.").

Bergin's personal statement explained, *inter alia*, that "I am sincerely devoted to God, His Word and the Holy Trinity"; "I have been a practicing, devoted servant of Christ my entire life"; "I have a right of conscience to choose what enters my body"; being forced to take the COVID-19 vaccine "disobeys my religious faith"; "I try to live each day as pure as possible and most of my consumption is organic or from the earth"; "I strongly believe in the sanctity of human life" and "cannot, with a clear conscience, take these vaccines as it has been confirmed that they have been developed using ingredients and methods, which unequivocally violate my ethics"; and "after extensive prayer, and moral and spiritual counseling, my family and I have decided not to put anything into our bodies against our sincere beliefs." *See* JA 50-55.

The pastor's letter supported "the principled religious basis on which Jessica Bergin holds a conscientious religious objection to the current Covid-19 vaccines," specifically, that "receiving a vaccine that uses aborted fetal cell lines in the development or testing of the vaccine

violates [her] sincerely held religious beliefs regarding the sanctity and protection of pre-born children." JA 56-57.

In sum, Bergin's initial application provided a detailed explanation of her religious objections to the COVID-19 vaccines, including her objection based on the connection between the vaccines and aborted fetal cell lines.[3]

Contrary to Defendant's position on appeal, Defendant <u>admitted</u> during this litigation that it was informed about Bergin's religious objections to the COVID-19 vaccines.

In testimony conspicuously ignored by Defendant in its brief, Mr. Barry testified that Bergin's initial application "express[ed] concerns about bodily integrity and particularly from a letter from her pastor, I believe it was, from the International Christian Center Senior Pastor, objections related to the use of stem cells in the development of the vaccine." JA 188. He further testified that Bergin's "initial submission **was perfectly adequate and it explained a religious**

---

[3] *See We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 276-77 (2d Cir. 2021) (per curiam) (fetal cells lines obtained from elective abortions "were used for testing in the research and development phase of the mRNA (Pfizer-BioNTech and Moderna) COVID-19 vaccines and in the production of the Johnson & Johnson COVID-19 vaccine.") (footnotes omitted); *Keene v. San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (mem.) ("the record reflects that the COVID-19 vaccines are, albeit remotely, 'derived' from aborted fetal cell lines").

**belief** based upon a number of issues that she presents and we wanted to explore it some more." JA 189 (bold added).[4]

In sum, Mr. Barry's testimony clearly establishes that, based on the contents of Bergin's initial application, UCS *was informed* about her religious objections to the COVID-19 vaccines. Whether or not the committee "wanted to explore" Bergin's beliefs "some more," it is undisputed that Bergin satisfied *her* obligation under Title VII when she submitted her "perfectly adequate" application that "explained a religious belief" conflicting with Defendant's vaccination policy.

Defendant argues on appeal that "[t]he deposition testimony submitted in support of UCS's motion and in opposition to Bergin's motion, demonstrate [sic] that the UCS's review committee members could not ascertain what, if any, beliefs she has and how they conflicted with UCS's policy." Def. Br. at 24-25 (citing JA 246). This argument is flatly contradicted by Mr. Barry's testimony above, as well as the detailed contents of Bergin's initial application, which plainly articulated religious objections to the COVID-19 vaccines. Furthermore,

[4] Bergin submitted another personal statement reiterating her religious objections in response to the supplemental questionnaire. *See* JA 66-72. Mr. Barry described this second personal statement as "a fine statement that we would have taken no objection to as an attachment to the supplemental form, but we were looking for direct answers to all the questions in [sections] A and B." JA 191.

the deposition testimony cited at JA 246 (an excerpt from Mr. Barry's deposition) provides no support for Defendant's argument, as nowhere does Mr. Barry state that Defendant *did not understand* the nature of Bergin's religious objections to the COVID-19 vaccines.[5]

Defendant insistently asserts in its brief that Bergin failed to inform UCS about her religious objections to the COVID-19 vaccines – "wholly failed to inform UCS of any sincerely-held belief that conflicted with its vaccination policy" (at 25), "Her personal statement, again, failed to put UCS on notice of *her personal beliefs and how they conflicted with UCS policy*" (at 27) (italics in original), "UCS was not informed what Bergin's religious beliefs are or how they *conflicted* with its vaccination policy" (at 27) (italics in original), "she did not inform UCS of her alleged religious beliefs and how they conflicted with its vaccination policy" (at 33), and so on – but each of these arguments is belied by Mr. Barry's testimony, which admitted that Bergin's initial application was "perfectly adequate" and "explained a religious belief,"

[5] The only valid reasons for an employer to question an employee about his or her religious beliefs is to understand the nature of the employee's religious objections to a job requirement and to assess the employee's sincerity, neither of which is at issue in the case at bar.

including "objections related to the use of stem cells in the development of the vaccine." JA 188-189.[6]

Importantly, Mr. Barry testified that an employee's answers to the supplemental questionnare were considered in conjunction with the initial application. JA 183. Moreover, Defendant granted some religious exemptions based solely on the initial application. Meng Decl. ¶ 12 (JA 276). Here, despite the alleged deficiencies in Bergin's supplemental questionnaire, it is undisputed (based on Mr. Barry's testimony) that her initial application informed UCS about her religious objections to the COVID-19 vaccination policy. As the district court explained: "Plaintiff's failure to properly fill out defendant's questionnaire asking follow-up questions does not change this analysis, as plaintiff had already adequately informed defendant of her beliefs." JA 314.

---

[6] It is well-established that religious objections to COVID-19 vaccines based on their connection to aborted fetal cell lines are cognizable under Title VII. *See Gardner-Alfred v. Fed. Reserve Bank of N.Y.*, 143 F.4th 51, 63-65 (2d Cir. 2025) (explaining that "[w]hat matters to the law is whether [the plaintiff] believed that the use of Covid-19 vaccines was contrary to her religious convictions"); *see also, e.g., Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 16-17 (1st Cir. 2024) (objection that COVID-19 vaccines were developed using fetal cell lines that originated from aborted fetuses sufficiently pleads religious belief that conflicts with vaccination policy) (citing additional cases). Defendant's argument (at 25, 30) that Bergin did not specifically mention opposition to abortion in her personal statement but only "alluded to it by annexing the letter from Pastor Squibb" is meritless. Bergin specifically referred to the "sanctity of human life." Per Mr. Barry's testimony, UCS was on notice that Bergin objected to the COVID-19 vaccines on the grounds that they were connected to aborted fetal cell lines.

In light of Mr. Barry's testimony, as well as the detailed contents of Bergin's initial application, no reasonable jury could find that Bergin failed to "inform" Defendant of her religious objections to the COVID-19 vaccines. Accordingly, the second and final element of Plaintiff's prima facie case is established as a matter of law.

#### 4. There is no undue hardship defense in this case.

Next, let's clear away the issue on which Title VII accommodation claims usually turn: There is no undue hardship defense in this case.

In response to Plaintiff's Interrogatory No. 6, Defendant did not identify undue hardship as one of the reasons why Bergin's application was denied. JA 167. Underscoring the lack of undue hardship, in response to Plaintiff's Interrogatory No. 9, Defendant unequivocally answered that "UCS does not contend that it would have caused an undue hardship to grant Plaintiff a religious exemption." JA 169.

Furthermore, Mr. Barry testified that UCS did <u>not</u> take into consideration whether granting an exemption would impose an undue hardship on the court system; rather, the only consideration was whether "the objection to the vaccination [was] religious in nature and was it sincerely held[.]" JA 182. Indeed, UCS granted *hundreds* of

religious exemptions. JA 262, 278. As the district court correctly found: "[T]here would have been no undue hardship in granting plaintiff's religious accommodation request." JA 316.

Thus, the undue hardship defense is inapplicable to this case. Only the prima facie case is at issue. As demonstrated above, each element of Plaintiff's prima facie case is undisputed. Consequently, Defendant "must offer [Bergin] a reasonable accommodation." *See Russo*, 129 F.4th at 186. Because UCS failed its statutory duty, Defendant is liable as a matter of law. Accordingly, the district court properly entered summary judgment for Plaintiff on her Title VII accommodation claim.

### D. Bergin Did Not Violate The "Interactive Process."

As part of its arguments on appeal, Defendant takes the position (at 32-34) that employees seeking religious accommodations under Title VII should be required to answer their employer's detailed questions about how their religious beliefs impact other areas of their lives, including their personal healthcare decisions. Nothing in the statute, regulations, or case law supports such an extreme rule.

Despite Title VII having been enacted in 1964, and despite the Supreme Court recognizing nearly 50 years ago that Title VII imposes an affirmative obligation on employers "to make reasonable accommodations, short of undue hardship, for the religious practices of [their] employees," *Hardison*, 432 U.S. at 74, Defendant does not cite a single case holding that an employee who requests a religious accommodation under Title VII has a legal duty to answer an employer's detailed questions about his or her religious beliefs and practices. There is no such duty.

Unlike the Americans With Disabilities Act, there is no formal "interactive process" under Title VII. *See* 42 U.S.C. § 2000e *et seq.*; 29 C.F.R. Part 1605. Nevertheless, where courts have imposed such a requirement under Title VII, it has been directed at *identifying an appropriate accommodation*, which is not at issue here.

As the Supreme Court has explained: "[C]ourts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Ansonia Bd. of Educ.*, 479 U.S. at 69 (internal quotation marks and citations omitted); *see also*, *e.g.*, *Cosme*,

287 F.3d at 158 ("In formulating such an accommodation, both the employer and employee should remain flexible, with an eye toward achieving a mutually acceptable adjustment.").

This conception of the interactive process has no application to the case at bar, however, because it is undisputed that the reasonable accommodation to be provided was an exemption subject to required health and safety protocols. *See* Barry Aff. ¶ 47 (JA 263) ("Employees whose exemptions were then granted by the VEC were notified of the approved exemption and were then required to submit proof of weekly COVID tests and continuing [sic] to wear a mask and engage in social distancing while at work – the same as those with medical exemptions.").

Unlike cases in which the interactive process applied to a plaintiff's Title VII claim, Bergin did not refuse to cooperate with the employer's search for an acceptable accommodation. She merely declined to answer follow-up questions about her use of other medications and vaccines. *See* JA 64-72.[7]

[7] An employee's refusal to answer such questions may be relevant to assessing the *sincerity* of the employee's religious beliefs, but Bergin's sincerity is not at issue. Consequently, her refusal to answer these questions is irrelevant. As the district court explained: "Given the lack of dispute regarding plaintiff's sincerely held

This Court should reject Defendant's draconian approach to the interactive process, whereby an employee who has informed her employer of her conflicting religious belief but does not answer each of her employer's follow-up questions – no matter how intrusive or unreasonable – forfeits her accommodation claim. Nothing in the statute, regulations, or case law supports such an extreme rule, which is blatantly inconsistent "with Title VII's broad remedial purpose, which counsels against 'interpretations of Title VII that deprive victims of discrimination of a remedy, without clear congressional mandate.'" *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019) (quoting *County of Washington v. Gunther*, 452 U.S. 161, 178 (1981)). An employer cannot be allowed to impede an employee's statutory right to a reasonable accommodation in this manner.

Contrary to Defendant's position, it is well-established that the burden on an employee to inform her employer about her conflicting religious belief is minimal. Bergin met this burden here. She did not violate the interactive process.

---

religious belief in conflict with the vaccine mandate, plaintiff's failure to properly fill out the questionnaire does not change the fact that plaintiff has satisifed this [second] prong of the *prima facie* case for failure to accommodate religious beliefs under Title VII." JA 314-315.

### E. The Supreme Court's Decision In *EEOC v. Abercrombie & Fitch Stores* Does Not Require Plaintiffs In Title VII Accommodation Cases To Prove Discriminatory Motive.

Lastly, in this appeal Defendant advances the argument that the Supreme Court's decision in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), "altered the analysis for Title VII 'failure to accommodate' claims," Def. Br. at 14, to require the plaintiff to show that "the employer's desire to avoid a prospective accommodation is a motivating factor in his decision," Def. Br. at 16, and that because there is no genuine dispute of material fact that UCS had a motive to deny Bergin's accommodation, Plaintiff's Title VII claim should be dismissed, Def. Br. at 21-22. This Court should reject Defendant's argument, which is based on a misinterpretation of *Abercrombie*.

As an initial matter, in the ten years since *Abercrombie*, this Court has not endorsed the view that Title VII accommodation claims require plaintiffs to prove discriminatory motive as part of their prima facie case. Although such a requirement is alluded to in *Giurca v. Bon Secours Charity Health Sys.*, No. 23-200, 2024 WL 763388 (2d Cir. Feb. 26, 2024), and *Lowman v. NVI LLC*, No. 19-3149, 821 Fed. Appx. 29 (2d Cir. July 22, 2020) (cited by Defendant), these are non-precedential

summary orders, and neither case was decided on the issue of motive. At the same time, multiple summary orders have continued to rely on existing Circuit precedents that do not require the plaintiff to prove discriminatory motive.[8]

This Court's most recent reported Title VII accommodation decision – *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182 (2025) (per curiam) – does not state that plaintiffs are required to prove discriminatory motive as part of their prima facie case.

With all due respect to Justice Scalia's somewhat confusing opinion in *Abercrombie*, that case is best understood as a *failure to hire* case, not a failure to accommodate case, although the issues were intertwined because the plaintiff argued that she was not hired because the store did not want to provide her with a religious accommodation to its dress code ("Look Policy") to allow her to wear a Muslim headscarf. 575 U.S. at 770-71.

---

[8] *See, e.g.*, *Cagle v. Weill Cornell Medicine*, No. 24-2427, 2025 WL 2790408 (2d Cir. Sept. 30, 2025) (citing *Knight*); *Braccia v. Northwell Health Sys.*, No. 24-2665, 2025 WL 2610704 (2d Cir. Sept. 10, 2025) (citing *Baker*); *Does 1-2 v. Hochul*, No. 22-2858, 2024 WL 5182675 (2d Cir. Dec. 20, 2024) (citing *Knight*); *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441 (2d Cir. Nov. 17, 2023) (citing *Knight*); *Hale v. Vidal*, No. 22-2973, 2023 WL 7211909 (2d Cir. Nov. 2, 2023) (citing *Knight*); *Patel v. NYU Langone Hosp.*, No. 20-112, 2021 WL 4852426 (2d Cir. Oct. 19, 2021) (citing *Baker*).

In *Abercrombie* the adverse action was the employer's decision not to hire the plaintiff. Unlike the case at bar, the plaintiff was not an employee who had requested a religious accommodation. The Supreme Court explained that, "[i]f the applicant actually requires an accommodation of that religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in his decision, the employer violates Title VII." *Id.* at 773-74.

*Abercrombie* thus stands for the proposition that Title VII "prohibits actions taken with the *motive* of avoiding the need for accommodating a religious practice." *Id.* at 774 (italics in original). But *Abercrombie* did not alter the analysis for Title VII accommodation claims more broadly to *limit* such claims to situations where the employer has a discriminatory motive.

In other words, the fact that an employer who acts with a motive to avoid an accommodation violates Title VII, per *Abercrombie*, does not mean that an employer violates Title VII <u>only</u> if it acts with a motive to avoid an accommodation. Nothing in *Abercrombie* suggests such a sweeping transformation of Title VII law in this area.

Defendant's reading of *Abercrombie* would vitiate 50 years of case law, beginning with the Supreme Court's decision in *Hardison*, that the statutory definition of "religion" under Title VII "make[s] it an unlawful employment practice under § 703(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Hardison*, 432 U.S. at 74. This understanding was reaffirmed recently by the Supreme Court in *Groff v. DeJoy*: "Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business." 600 U.S. at 453 (internal quotation marks and citation omitted).

Under Title VII, the employer's duty to accommodate is an affirmative obligation, for which the employer's motive is irrelevant (although motive is necessary where other adverse actions are involved). No cases, including *Abercrombie*, holds that where an employer acts for *non*discriminatory reasons, it is released from its statutory duty to accommodate. This is not the law. As *Abercrombie* itself emphasized: "[R]eligious practice is one of the protected

characteristics that cannot be accorded disparate treatment and **must be accommodated**." 575 U.S. at 775 (bold added).

In the case at bar, all elements of Plaintiff's prima face case were established as a matter of law. Because Defendant did not (and cannot) assert an undue hardship defense, it automatically follows that Defendant violated Title VII by denying Bergin's religious exemption. Accordingly, the district court properly entered summary judgment for Plaintiff on her Title VII accommodation claim.

## CONCLUSION

For the reasons set forth above, Plaintiff-Appellee requests that this Court issue an order AFFIRMING the district court's Memorandum Decision and Order entered October 8, 2024, and award her the costs of this appeal.

Dated: October 31, 2025

Respectfully submitted,

By: /s/ *Steven M. Warshawsky*

STEVEN M. WARSHAWSKY
The Warshawsky Law Firm
*Attorney for Plaintiff-Appellee*

# **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P. 21(d) because this brief has been prepared using Microsoft Word 2007 with Century Schoolbook 14-point font (12-pont font for footnotes) and contains no more than 7,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

October 31, 2025

/s/ *Steven M. Warshawsky*

STEVEN M. WARSHAWSKY
The Warshawsky Law Firm
*Attorney for Plaintiff-Appellee*