# 25-721

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

---

JESSICA BERGIN,

*Plaintiff-Appellee*

v.

New York State Unified Court System

*Defendant-Appellant.*

---

**On Appeal from the Decision and Order of the United States District Court for the Eastern District of New York**

---

## DEFENDANT-APPELLANT'S REPLY BRIEF

---

Michael J. Siudzinski, of Counsel
*Attorney for Defendant-Appellant*
Office of Court Administration
25 Beaver Street, 10th Floor
New York, New York 10004
(212) 428-2150
msiudzin@nycourts.gov

# TABLE OF CONTENTS

Page

Table of Authorities ........ ii

PRELIMINARY STATEMENT ........ 1

RESPONSE TO BERGIN'S "STATEMENT OF UNDISPUTED FACTS" ........ 2

ARGUMENT ........ 3

I. Plaintiff Cannot Demonstrate that UCS or Its Employees had a Motive to Avoid Providing an Accommodation to Her Religious Beliefs or Practices. ........ 3

II. Bergin Fails to State a Claim Against UCS Upon Which Relief May Be Granted Under Title VII. ........ 7

CONCLUSION ........ 18

CERTIFICATION OF COMPLIANCE ........ 19

# Table of Authorities

## Cases

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001) .......... 8

*Chrysler Corp. v. Mann*,
561 F.2d 1282 (8th Cir. 1977) .......... 16

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
537 F.2d 4 (2d Cir. 1976) .......... 1, 3, 4

*Giurca v. Bon Secours Charity Health Sys.*,
2024 WL 763388 (2d Cir. Feb. 26, 2024) .......... 5

*Heller v. EBB Auto Co.*,
8 F.3d 1433 (9th Cir. 1993) .......... 16

*Lowman v. NVI LLC*,
821 Fed. Appx. 29 (2d Cir. 2020) .......... 5

*Redmond v. GAF Corp.*,
574 F.2d 897 (7th Cir. 1978) .......... 16

*Russo v. Patchogue-Medford Sch. Dist.*,
129 F.4th 182 (2d Cir. 2025) .......... 4

*Thompson v. City of New York,*
2002 WL 31760219 (S.D.N.Y. Dec. 9, 2002) .......... 16

*Williams v. NYC Dept. of Sanitation*,
2002 WL 1154627 (S.D.N.Y. Sept. 28, 2002) .......... 8

## Rules

Federal Rule 30(b)(6) .......... 10

## PRELIMINARY STATEMENT

The district court erroneously ignored and then failed to apply the Supreme Court's ruling in *EEOC v. Abercrombie & Fitch Stores, Inc.* The Supreme Court's decision in *EEOC* mandates that federal courts treat Title VII failure to accommodate claims the same as disparate treatment claims (*i.e. intentional* discrimination). In such cases there must be some showing of employer motivation and, in this matter, there are no facts in dispute that Appellant UCS[1] had no motivation to either grant or deny Appellee Bergin's request. UCS established an anonymous, unbiased, and procedurally robust exemption application process during the peak of the COVID-19 pandemic to review over 1200 employee requests without predetermined results.

Had the district court properly applied the *EEOC* ruling, it would have been obligated to grant UCS's motion for summary judgment. Even assuming, *arguendo*, that the district court was not obligated to apply *EEOC*, the court erred in granting Bergin's motion for summary judgment because the undisputed material facts do not support a claim under Title VII for failure to accommodate her alleged religious beliefs.

[1] All abbreviations and acronyms are repeated from Appellant's Brief-in-Chief.

Moreover, if this Court does not reverse and grant UCS's motion for summary judgment, it would set in stone that employers are *per se* liable for religious discrimination without any showing of motivation or discriminatory intent.

**RESPONSE TO BERGIN'S "STATEMENT OF UNDISPUTED FACTS"**

The relevant and material facts of this matter are undisputed. Instead, Bergin applies misleading interpretations of UCS's response to interrogatories and statements made by UCS officials. UCS's position has been consistent throughout this matter—Bergin's failure to answer UCS's questions about her religious beliefs and practices denied UCS that ability to determine if she holds a sincerely-held belief that conflicted with its vaccination policy. There are no facts or evidence in the record to dispute that Bergin refused to provide the information UCS needed to grant to her exemption request and the witnesses' statements are consistent with this. *See*, *infra*, Point II.

The district court's finding of liability should be reversed, and the action should be dismissed for failure to state a claim.

## ARGUMENT

### I. Plaintiff Cannot Demonstrate that UCS or Its Employees had a Motive to Avoid Providing an Accommodation to Her Religious Beliefs or Practices.

Bergin, in opposition to this appeal, argues that the plain language of the *EEOC* does not apply to this case because this Court has not previously ruled in a like manner. Bergin, however, fails to address UCS's legal arguments, instead citing cases that are inapposite here because the defendants in those matters did not raise or argue the issue of employer motivation. (*See* Brief for Plaintiff-Appellee, dated Oct. 31, 2025, hereinafter "Memo," p. 38-39). Bergin also draws a false distinction between failing to accommodate a current employee versus failing to accommodate a new employee. (*See* Memo, p. 39). Courts have never, in the history of Title VII failure to accommodate cases, drawn a distinction between such cases and Bergin does not cite to any support for her argument. Indeed, as cited by Bergin, the Supreme Court in *EEOC* stated that an employer may not "discharge any individual" in response to an individual's religious beliefs or practices. *See EEOC*, 575 U.S. at 775. There is nothing in *EEOC* to suggest, much less explicitly state,

that the Supreme Court intended to create a distinction between current and new employees with respect to accommodating religious beliefs.

Bergin's arguments about the applicable Title VII "legal framework" and "statutory duty" of employers (*See* Memo, p. 17-20) is misleading. UCS is not arguing that the three-prong analysis has been completely thrown out, but instead its argument is simply that the Supreme Court's *EEOC* decision altered the analysis to have failure to accommodate claims to comport with other disparate treatment claims. An undue burden on the employer is still a defense to providing a religious accommodation. For this reason, the cases cited by Bergin are not dispositive here because they are in accordance with the altered analysis.

This Court's decision in *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182 (2d Cir. 2025) is inapplicable. The key factor in *Russo* was that the defendant had a *de facto* undue burden because state law required plaintiff to be vaccinated. *See id.* at 184. An undue burden is still an absolute defense to a *prima facie* claim of failure to accommodate, which is why the *Russo* decision is inapplicable here. This Court did not need to address employer motivation or intent because the defendant in *Russo*

demonstrated a clear undue burden, *i.e.* the statute mandating vaccination.

Similarly, in neither *Giurca v. Bon Secours Charity Health Sys.*, 2024 WL 763388 (2d Cir. Feb. 26, 2024) or *Lowman v. NVI LLC*, 821 Fed. Appx. 29 (2d Cir. 2020), was the issue of employer motivation discussed because the matters were decided on other grounds. This Court has not had the opportunity to apply *EEOC* because the question of a defendant's motivation has seemingly not been raised as a defense. The lack of applicable precedent by this Court and others does not mean that the Supreme Court's decision in *EEOC* is inapplicable.

Herein, UCS vehemently denies that there is any evidence that it was motivated to deny Bergin or other employees' requests to be exempt from its COVID-19 vaccination policy. During the height of the pandemic, UCS created a process for its 16,000 judicial and non-judicial employees to seek exemptions for religious and medical reasons. The process was fully anonymous, neutral, unbiased, and straightforward—employees had to answer only a few questions about their religious beliefs and practices, providing just enough detail for UCS to understand. (*See* JA 274-78). UCS officials spent hundreds of hours reviewing and

discussing over 1200 employee applications and granted over 600. (*See* JA 278-79). The possibility that employees with sincere beliefs may have had their requests denied because they failed to provide sufficient information does not mean that UCS discriminated against such employees, acted in bad faith, or that it was motivated to deny applications.

The Supreme Court altered the federal courts' three-prong analysis by determining that an employee need not show that the employer had actual notice *if* the employer had "a motive of avoiding accommodation." *See EEOC*, 575 U.S. at 773. The Supreme Court's decision assumes that an employer who acts with motivation to deny an accommodation must have had knowledge *or at least a suspicion* of the employee's religious belief or practice.

The federal courts, including this Court, are obligated to follow the Supreme Court's ruling that failure to accommodate claims should be analyzed under the rubric of disparate treatment claims, including whether the employer had a motivating factor to deny a request.

Bergin has never argued in this litigation (and essentially concedes) that there are no facts in existence to show that UCS was motivated to

deny her exemption application. (*See* Memo, p. 38-42). It is unjust that UCS, having established a neutral, anonymous, and unbiased process for reviewing employee religious accommodation requests, could be found liable for disparate treatment without any evidence that it had a discriminatory intent or otherwise sought to avoid granting Bergin's request. It cannot be that Congress, in enacting Title VII, sought to hold employers liable for disparate treatment without any showing of an intent or motivation to actually discriminate. The Court should reverse and vacate the district court's order and grant UCS's motion for summary judgment thereby dismissing this action.

## II. Bergin Fails to State a Claim Against UCS Upon Which Relief May Be Granted Under Title VII.

Bergin argues that the district court properly granted summary judgment in her favor on the grounds that there are no material facts in dispute herein. (*See* Memo. p. 22-37). The district court erred in finding that UCS did not dispute that Bergin demonstrated *at the time of her application* that she has sincerely-held religious belief. The court further erred when it found that she had sufficiently informed UCS of the same. UCS agrees with Bergin that the material facts are not in dispute. But the only relevant and material facts herein are that she indisputably

failed to answer and complete the UCS's questions, which was a requirement to be granted an exemption from UCS's policy.

Bergin argues that UCS has never disputed whether she has a sincerely-held belief. The burden, however, is on a plaintiff to show that she demonstrated a sincerely-held belief with sufficient information *at the time of the employee's request*, not later through litigation and discovery. As stated above, UCS has repeatedly disputed that Bergin both: (i) failed to demonstrate she had a sincerely-held religious belief; and (ii) that she sufficiently informed UCS of such belief. Bergin's refusal to answer UCS's questions addresses both factors, not just the question of whether UCS was sufficiently informed. In other words, the relevant question for purposes of this litigation is **what information was included in Bergin's 2021 application**, not what she has demonstrated in litigation long after her application was denied. It is not the place of the courts to second-guess agencies' decisions or "act as a super personnel department." *See Williams v. NYC Dept. of Sanitation*, 2002 WL 1154627, at *18 (S.D.N.Y. Sept. 28, 2002) (citing to *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001)). The

district court erred when it found that Bergin had demonstrated a sincerely-held belief.

Bergin attempts to mislead this Court with cherry-picked statements instead of responding to UCS's arguments and addressing the undisputed facts.

First, Bergin's citation to UCS's answer in response to Interrogatory 7 is hardly demonstrative. (*See* Memo, p. 10, 22-23). UCS's answer referred Bergin to its answer to Interrogatory 6, in which it stated that "UCS contends that [Bergin] failed to provide sufficient information about her beliefs which would have allowed the [Vaccine Exemption Committee] to grant her request." This is wholly consistent with UCS's position that it could neither confirm nor deny whether she had a sincerely-held religious belief because Bergin refused to provide the needed information about her beliefs and practices. UCS could not contend that Bergin lacked a "bona fide, good faith religious objection to the COVID-19 vaccine" because it did not have the information it needed to make such a determination.

Neither Bergin nor the district court have explained or demonstrated how an employee can satisfy the first factor of the three-

prong analysis (*i.e.* "a sincerely-held religious belief") if the employee doesn't engage in the interactive process, answer the employer's questions, and provide sufficient information.

Second, Bergin attempts to mislead the Court with a statement made by UCS official Justin Barry taken out of context from his deposition. (Memo, p. 13, 23-24). The context of Mr. Barry's statement is important here. Mr. Barry testified as a Rule 30(b)(6) witness, not as one of the individuals that reviewed Bergin's application. (JA-178). Mr. Barry has no direct knowledge of why the VEC members voted to deny her exemption request. As UCS's Rule 30(b)(6) witness, his testimony about Bergin's application materials was based on his experience reviewing other employee's applications and knowledge of UCS's review process. Accordingly, he speculated that the lack of information in Bergin's application prevented the committee from understanding what her religious beliefs are and how they conflict with being vaccinated.

Moreover, Mr. Barry's statement that Bergin's "initial submission was perfectly adequate"—also relied upon in error by the district court (*see* JA 314-15)—is hardly an admission that she met her burden of demonstrating a sincerely-held religious belief.

Mr. Barry's statement that her original submission was "perfectly adequate" is not a smoking gun. To the contrary, a review of the entire colloquy demonstrates that Mr. Barry was simply stating that Bergin's application was sufficiently completed to allow for review (*i.e.*, it was "perfectly adequate"), and that after reviewing the application, the Committee determined that more information was needed.

In particular, the colloquy begins with a discussion about why UCS asked most employees to complete the supplemental form, *i.e.* it was to gather more information about issues raised concerning either bodily integrity or the use of fetal stem cells. (*See* JA-188):

> A. . . . In order to gauge . . . the sincerity of both those beliefs, the work[ing] group would typically and very frequently, if not almost all the time with those two objections or concerns, request that the individual fill out the supplemental form.
>
> Q. In fact, in this case that's what happened. If we take a look at Plaintiff's Exhibit 9, please.
>
> A. Yes.
>
> Q. Before we get to Plaintiff's Exhibit 9, is it fair to say that the reason the committee would have asked Ms. Bergin to submit the supplemental form was because her personal statement invoked these issues of fetal stems cells as well as the bodily integrity concept *as opposed to there being*

> *something intrinsically inadequate with her initial submission to the committee?* (emphasis added)
>
> [Objection]
>
> A. No. I would say her initial submission was perfectly adequate and it explained a religious belief based upon a number of issues that she presents and we wanted to explore it some more.

(JA-188-89.) Mr. Barry's statement that Bergin's initial application was "perfectly adequate" is directly in response to the question whether UCS had asked Bergin to complete the supplemental form because of a defect in her original submission or if it was because she indicated an aversion to the use of fetal stems cells or bodily integrity. In this context, "perfectly adequate" meant only that Bergin's application was sufficient to avoid the result of UCS denying her application solely on her initial submission, warranting UCS's request for more information and further review. It does not mean, as Bergin argues and the district court erred in finding, that her original submission was sufficient to put UCS on notice of the conflict between her alleged religious beliefs and receiving the COVID-19 vaccine.

Indeed, moments later when Mr. Barry was asked whether Bergin's "response to the request for a supplemental form was sufficient or

insufficient for the committee's purpose," he stated, "it was insufficient" because "it was not responsive." (JA 190.) Why was it not responsive? It was not responsive because she did not answer the questions, instead referring the committee to "her statement which did not address any of those particular questions." (JA 191.)

Mr. Barry's deposition statements are fully consistent with UCS's position; Bergin's refusal to answer questions and give the information requested cannot support a finding that she has a sincerely-held religious belief, nor does it demonstrate that the UCS was aware of the same. No witness provided testimony that disputes this or provides an alternative reason, and Bergin does not cite any testimony or documents that state otherwise. Indeed, the undisputed facts provided by UCS official Mindy Jeng, demonstrates that the committee members voted to deny Bergin's request because "she had failed to adequately answer the questions in the supplemental form." (JA-280 (¶ 28).)

There are no material facts in dispute as to why UCS denied Bergin's request—it was because she failed to answer questions on the supplemental form to allow the committee to understand what her religious beliefs are and how they conflict with its vaccination policy.

UCS's committee members could not ascertain what beliefs she sincerely-held and how they conflicted with its policy. Bergin's bald statements of religious beliefs in her original submission may have been "perfectly adequate" to have UCS request more information, but her failure to answer UCS's questions in the supplemental form left the review committee without an explanation of how her alleged beliefs prevented her from complying with UCS's vaccination policy. Bergin wholly failed to both demonstrate a sincerely-held religious belief and to inform UCS how any such belief conflicted with its vaccination policy. The district court's interposition of its own opinion on the sufficiency of her application materials is clear error and should be reversed. The district court should not have acted as a "super personnel department" over the knowledge and experience of UCS's committee members.

Furthermore, Bergin's submission refers to moral and ethical objections to receiving the vaccine. (*See* JA 53.) Indeed, she relies more heavily on non-religious statements such as: "coerced medical treatment will infringe on my right of conscience," that she is educated "in healing through natural remedies and therapeutics," and that her doctors believe the vaccine should be her choice, "since it is my body." (JA 53.) Under

such circumstances, UCS cannot be found to have been sufficiently and clearly informed of Bergin's religious beliefs.

Instead of clearly and unequivocally answering UCS's questions identifying specific beliefs and how such beliefs conflict with UCS's policy, Bergin instead relied on sweeping generalizations about the sanctity of her body, "natural" healing, and violating her *ethics*, while refusing to answer if she had previously refused to accept vaccines, medicines, or foods. (JA 53.) Plaintiffs' inherently contradictory statements—sometimes referring to the sanctity of her body and sometimes referring to use of fetal stem cells in developing COVID-19 vaccines—do not create a question of fact, much less support a finding to support a *prima facie* claim here. Bergin, in her writings, never states that the vaccines conflict with a specific religious practice. (*See* JA 56-57.)

The district court erroneously found that Bergin's original submission was sufficient to establish the *prima facie* element of notifying UCS of her religious belief. Bergin argues that circuit courts have found only a "minimal" burden on the employee. (Memo. p. 25-26). "Minimal," however, assumes that the employee has participated in the

process as stated in the cases cited by Bergin. *See Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir. 1993) (employee should provide "only enough information about [the] employee's religious needs to permit the employer *to understand the existence of a conflict* between the employee's religious practices and the employer's job requirements) (emphasis added); *Redmond v. GAF Corp.*, 574 F.2d 897, 902 (7th Cir. 1978) ("an employee who *is disinterested in informing his employer of his religious needs* 'may forego the right to have his beliefs accommodated'") (quoting *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1286 (8th Cir. 1977) (emphasis added). Bergin's refusal to answer questions demonstrates her "disinterest in informing" UCS of her alleged beliefs and for UCS "to understand the existence of a conflict" with its COVID-19 vaccination policy.

The federal courts have repeatedly held, including the district court below herein, that employers may seek additional information from the employee. (*See* JA 314-15.) An employee that refused to participate operates in bad faith. *See Thompson v. City of New York* 2002 WL 31760219 at *8 (S.D.N.Y. Dec. 9, 2002). "A party that fails to communicate or withholds important information solely within the

knowledge of that party, can be found to have obstructed the process in bad faith." *Id.* Bergin consciously refused to answer UCS's questions about how her religious beliefs conflicted with its vaccination policy.

The Court should uphold the longstanding requirement that employees must participate in the review process in good faith and find that if an employee refuses to answer questions, then the employee has failed to adequately notify their employer of sincerely-held religious beliefs and any conflict with the employer's work requirements.

## CONCLUSION

For the foregoing reasons, this Court should reverse the Order of the District Court granting judgment in Bergin's favor and grant UCS's motion for summary judgment.

Dated: November 21, 2025
New York, New York

Respectfully Submitted,

DAVID NOCENTI
Attorney for Appellant UCS

By: /S/
Michael J. Siudzinski, of counsel

Office of Court Administration
25 Beaver Street, 10th Floor
New York, New York 10004
(212) 428-2150
msiudzin@nycourts.gov

# CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I, Michael J. Siudzinski, certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 6,462 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point for text and footnotes.

/S/
Michael J. Siudzinski, of counsel