# No. 25-721

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

JESSICA BERGIN,
Plaintiff-Appellee,

v.

NEW YORK STATE UNIFIED COURT SYSTEM,
Defendant-Appellant.

On Appeal from the United States District Court
for the Eastern District of New York

**BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AND THE UNITED STATES AS AMICI CURIAE IN SUPPORT OF PANEL REHEARING OR REHEARING EN BANC**

CATHERINE ESCHBACH
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

CHELSEA C. SHARON
Attorney
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2889
chelsea.sharon@eeoc.gov

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
Attorney
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

STATEMENT IN SUPPORT OF REHEARING .......... 1

STATEMENT OF INTEREST .......... 2

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 3

A. Statutory Background .......... 3

B. Factual and Procedural History .......... 4

ARGUMENT .......... 4

I. *Abercrombie* does not impose a "desire to avoid offering an accommodation" requirement for every religious-accommodation claim. .......... 5

II. Religious-accommodation claims do not require proof of a separate "adverse employment decision." .......... 12

CONCLUSION .......... 14

CERTIFICATE OF COMPLIANCE .......... 15

CERTIFICATE OF SERVICE .......... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ames v. Ohio Dep't of Youth Servs.*,
605 U.S. 303 (2025)....................8

*Bailey v. Metro Ambulance Servs., Inc.*,
992 F.3d 1265 (11th Cir. 2021)....................1, 9

*Billings v. Murphy*,
No. 22-2010, 2024 WL 444727 (2d Cir. Feb. 6, 2024) (summary order)....................2, 12

*Bilyeu v. UT-Battelle, LLC*,
154 F.4th 396 (6th Cir. 2025)....................2, 13

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020)....................7

*Cole v. Grp. Health Plan, Inc.*,
105 F.4th 1110 (8th Cir. 2024)....................2, 13

*Conn. Fine Wine & Spirits, LLC v. Seagull*,
936 F.3d 119 (2d Cir. 2019)....................5

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015)....................1, 4, 5, 6, 7, 10

*EEOC v. Consol Energy, Inc.*,
860 F.3d 131 (4th Cir. 2017)....................1, 9

*EEOC v. Joe's Stone Crab, Inc.*,
220 F.3d 1263 (11th Cir. 2000)....................10

*Groff v. DeJoy*,
600 U.S. 447 (2023)....................3, 11

*Hebrew v. Tex. Dep't of Crim. Just.*,
80 F.4th 717 (5th Cir. 2023) .......... 1, 8

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) .......... 2, 12, 13

*Sanders v. Union Pac. R.R. Co.*,
108 F.4th 1055 (8th Cir. 2024) .......... 10

*Staple v. Sch. Bd. of Broward Cnty.*,
No. 21-11832, 2024 WL 3263357 (11th Cir. July 2, 2024)
(summary order) .......... 12, 13

*Tabura v. Kellogg USA*,
880 F.3d 544 (10th Cir. 2018) .......... 1, 9

**Statutes and Rules**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* .......... 1, 2, 3, 6, 12

42 U.S.C. § 2000e(j) .......... 3

42 U.S.C. § 2000e-2(a)(1) .......... 3, 7, 12

42 U.S.C. § 2000e-5(a) .......... 2

42 U.S.C. § 2000e-5(f)(1) .......... 2

Fed. R. App. P. 29(b)(2) .......... 2

## STATEMENT IN SUPPORT OF REHEARING

The panel ruled that to establish a prima facie case of religious discrimination based on failure to accommodate under Title VII of the Civil Rights Act of 1964, a plaintiff must show that: (1) she actually required an accommodation of her religious practice, and (2) the employer's desire to avoid providing the accommodation was a motivating factor in (3) an adverse employment decision. This formulation is at odds with Supreme Court precedent and conflicts with the authoritative precedent of other courts of appeals in two respects.

First, requiring plaintiffs in all religious-accommodation cases to show the employer "desire[d] to avoid" making the accommodation misinterprets *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), and conflicts with the decisions in *Hebrew v. Texas Department of Criminal Justice*, 80 F.4th 717 (5th Cir. 2023); *Bailey v. Metro Ambulance Services, Inc.*, 992 F.3d 1265 (11th Cir. 2021); *EEOC v. Consol Energy, Inc.*, 860 F.3d 131 (4th Cir. 2017); and *Tabura v. Kellogg USA*, 880 F.3d 544 (10th Cir. 2018).

Second, the panel's expressed position that religious-accommodation plaintiffs must show a separate adverse employment decision beyond the accommodation denial conflicts with the "some harm" standard

established in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). It also conflicts with this Court's unpublished decision in *Billings v. Murphy*, No. 22-2010, 2024 WL 444727 (2d Cir. Feb. 6, 2024) (summary order), and with published decisions in *Bilyeu v. UT-Battelle, LLC*, 154 F.4th 396 (6th Cir. 2025); and *Cole v. Group Health Plan, Inc.*, 105 F.4th 1110 (8th Cir. 2024).

## STATEMENT OF INTEREST

The United States and Equal Employment Opportunity Commission (EEOC) have a substantial interest in the proper interpretation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, for which the Attorney General and the EEOC share enforcement responsibility. *See id.* §§ 2000e-5(a), (f)(1). This case concerns what a Title VII plaintiff must show to prevail based on an employer's refusal to accommodate a religious practice. Amici file this brief under Federal Rule of Appellate Procedure 29(b)(2).

## STATEMENT OF THE ISSUES[1]

1. Must plaintiffs in all religious-accommodation cases show that the employer acted out of a desire to avoid providing an accommodation?

---

[1] Amici take no position on any other issue.

2. Must plaintiffs in all religious-accommodation cases show that the employer took a separate adverse employment action in addition to failing to provide an accommodation?

## STATEMENT OF THE CASE

### A. Statutory Background

Title VII makes it unlawful for an employer to "refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion." 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate" an employee's "religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). To establish undue hardship, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).

**B. Factual and Procedural History**

Plaintiff Jessica Bergin, a court officer for the New York State Unified Court System (UCS), brought this Title VII religious-discrimination case asserting that UCS denied her request for a religious accommodation— an exemption to its COVID-19 vaccination requirement—then terminated her after she refused to comply. Panel Opinion (Op.) at 4-6; R.36 at 1-2. The district court granted partial summary judgment to Bergin, rejecting UCS's argument that the Supreme Court's decision in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), altered the prior prima facie elements for a religious-accommodation claim by adding a requirement that the employer acted out of a desire to avoid providing an accommodation. R.36 at 4-8 & n.2. The panel vacated and remanded, concluding that *Abercrombie* abrogated this Court's prior prima facie test and articulating the new prima facie test as including a requirement that "the employer's desire to avoid the actually required prospective accommodation was a motivating factor in … an adverse employment decision." Op. at 4.

**ARGUMENT**

Rehearing is warranted on these questions of exceptional importance because the panel's decision conflicts with decisions of other circuits and is

in tension with Supreme Court precedent. The ruling significantly alters the framework for evaluating claims involving religious accommodations within this Circuit, affecting a broad swath of cases. *See Conn. Fine Wine & Spirits, LLC v. Seagull*, 936 F.3d 119, 123 (2d Cir. 2019) (Sullivan, J., dissenting from denial of rehearing en banc) (perpetuating circuit split and applying rule that imposed harm on consumers in the Second Circuit raised issue of exceptional importance warranting en banc review).

## I. *Abercrombie* does not impose a "desire to avoid offering an accommodation" requirement for every religious-accommodation claim.

The panel decision misread *Abercrombie* as requiring a religious-accommodation plaintiff to show in every instance that the employer "acted out of a desire to avoid offering an accommodation." Op. at 11. No other circuit has adopted this framework, and for good reason: it is not what *Abercrombie* says.

*Abercrombie* addressed a claim that the employer acted with an unlawful motive when it refused to hire Samantha Elauf—a practicing Muslim who wore a headscarf for religious reasons—"in order to avoid accommodating [her] religious practice" by granting an exception to the store's no-headwear policy. 575 U.S. at 770. The employer claimed it could

not have harbored this motive because it lacked "actual knowledge" of Elauf's need for an accommodation. *Id.* at 772. The Supreme Court disagreed, concluding that an employer can still "act[] with the motive of avoiding accommodation" even where "he has no more than an unsubstantiated suspicion that accommodation would be needed." *Id.* at 773. In other words, the Supreme Court made clear that "[m]otive and knowledge are separate concepts" and that the former can exist even without the latter. *Id.*

*Abercrombie* did not say, however, that unlawful motive in the form of a "desire to avoid offering an accommodation," Op. at 11, is required for every religious-accommodation claim. *Abercrombie* used this language to illustrate that *when* an employer's failure to hire an applicant stems from this desire, that is sufficient to violate the statute even without express knowledge of the need for an accommodation. *See Abercrombie*, 575 U.S. at 773 ("[A]n employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed."); *id.* at 773-74 (employer who "thinks" but "does not know for certain" that job applicant will require accommodation still violates Title VII if the "desire to avoid the

prospective accommodation is a motivating factor" in decision not to hire applicant).

To be sure, *Abercrombie* did make clear—as does the statute—that the discrimination must occur "because of" the individual's religion. *Id.* at 772-73; 42 U.S.C. § 2000e-2(a)(1). But, as the Supreme Court has explained, this language simply requires that "the employer intentionally relies in part" on a protected trait when taking the challenged employment action. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 659 (2020). Where the challenged employment action is separate from the accommodation denial itself—such as a termination or failure to hire—the employer's motive plays a logical role in this analysis. For example, in *Abercrombie*, exploring whether the failure to hire Elauf stemmed from a "desire to avoid the prospective accommodation," 575 U.S. at 773, teases out whether the failure to hire was actually "because of" religion (the need to accommodate Elauf) or instead "because of" some reason unrelated to religion. This language is thus best understood as discerning whether there is a causal link between the presumed need for an accommodation and the failure to hire.

No such inquiry is necessary for a religious-accommodation claim that does not involve a separate adverse employment decision because

there is no independent employment action to which an accommodation denial must be causally linked. Thus, where an employer intentionally denies a religious accommodation, a religious-accommodation claim demands no additional evidence of motive to establish a prima facie case. To apply *Abercrombie*'s failure-to-hire formulation in this factually distinct context contravenes the Supreme Court's instruction to avoid "inflexible applications" of prima facie proof of discrimination and "inflexible formulations of the prima facie standard in disparate-treatment cases" in particular. *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 310-11 (2025) (citation modified).

Here, the causation inquiry simply requires determining whether Bergin's termination was "because of" her religion (specifically, her need for accommodation and resulting inability to comply with the vaccination requirement) or "because of" another, unrelated reason. There appears to be no dispute that it was the former. *See* Op. at 6 (stating that Bergin "was terminated … for failure to comply with the vaccination requirement"). That should have been the end of the matter. Authoritative decisions of the Fourth, Fifth, Tenth, and Eleventh Circuits, post *Abercrombie*, are in accord. *See Hebrew*, 80 F.4th at 724 (plaintiff's "religious practice was more than a

motivating factor in [employer's] termination decision" within meaning of *Abercrombie* where employer denied accommodation and then fired plaintiff for "continu[ing] to abide by his religious practice"); *Bailey*, 992 F.3d at 1275 (for "reasonable-accommodation claim of religious disparate treatment," indicating that plaintiff must show that "employer took adverse employment action against [employee] because of his inability to comply with the employment requirement" and not including any proof-of-motive requirement); *Consol Energy*, 860 F.3d at 141 (articulating prima facie test without any proof-of-motive requirement); *see also Tabura*, 880 F.3d at 554 ("In *Abercrombie* … the issue was one of motivation—specifically, may an employer decline to hire an applicant when the employer is motivated to avoid the future need to accommodate that prospective employee's religious needs. … Our case, by contrast, presents a question of the effectiveness of the [proffered] accommodation ….").

There is no independent requirement that the employer act with animus or bias towards religious accommodations when denying the accommodation request or when deciding to take an adverse employment action based on the resulting conflict between religion and work requirements. While the panel did not specifically state that its "desire to

avoid offering an accommodation" formulation entailed such an inquiry, that is what UCS appeared to urge on appeal. *See* Dkt. 28.1 at 3, 20-21, 23, 26. And it is difficult to make sense of the panel's formulation without understanding it to require more than an intentional denial of an accommodation.

*Abercrombie* itself makes clear that no such showing is required by explaining that an employer can still violate the statute by refusing to hire an applicant based on adherence to "an otherwise-neutral policy." 575 U.S. at 775. If instead the employer had to be motivated by a specific desire to avoid providing religious accommodations, then simple compliance with neutral policies would not give rise to liability. And it is settled that Title VII disparate-treatment claims do not require animus or bias towards a protected trait as a general matter. *E.g., EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1283-84 (11th Cir. 2000) ("[A] plaintiff need not prove that a defendant harbored some special 'animus' or 'malice' towards the protected group to which she belongs" to establish liability for a Title VII disparate-treatment claim); *cf. Sanders v. Union Pac. R.R. Co.*, 108 F.4th 1055, 1061-62 (8th Cir. 2024) (for ADA disparate-treatment claim, "while our cases have spoken in terms of 'discriminatory animus,' the ADA does not

require evidence of prejudice toward the disabled" and the question is whether the employer "acted because of the employee's disability"). To the extent the panel's "desire to avoid offering an accommodation" formulation entails such an animus or bias requirement, it contravenes these basic principles.

Finally, the panel decision's "desire to avoid" requirement is in tension with Supreme Court precedent beyond *Abercrombie*. In particular, it is difficult to square with *Groff,* which begins with the unqualified statement that Title VII "requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" 600 U.S. at 453-54 (citation omitted). And *Groff* reiterated that "Title VII does not demand mere neutrality with regard to religious practices but instead gives them favored treatment in order to ensure religious persons' full participation in the workforce." *Id.* at 461 n.9 (internal quotation marks omitted). While *Groff*'s focus was undue hardship, its underlying premise is that employers have an affirmative obligation to grant reasonable religious accommodations absent an undue burden—not that they may deny such accommodations freely so long as they do so with no ill motive.

## II. Religious-accommodation claims do not require proof of a separate "adverse employment decision."

The panel decision erroneously set itself apart from other courts in its articulation of the third prong of the prima facie case—that a religious-accommodation claim requires proof of a separate "adverse employment decision" apart from the accommodation denial itself. Op. at 4.

Title VII's disparate-treatment provision does not reference an "adverse employment decision" but instead proscribes discrimination "with respect to … terms, conditions, or privileges of employment" because of a protected trait. 42 U.S.C. § 2000e-2(a)(1). This Court has recognized that an accommodation denial may negatively "alter[] the 'terms, conditions, or privileges of employment,'" without any need for "an *additional* adverse employment action, beyond the [accommodation] denial" itself. *Billings*, 2024 WL 444727, at *3 (citation omitted). And the Supreme Court's 2024 decision in *Muldrow* "erased" any remaining "doubt" on this score. *Staple v. Sch. Bd. of Broward Cnty.*, No. 21-11832, 2024 WL 3263357, at *4 (11th Cir. July 2, 2024) (summary order). *Muldrow* held that Title VII's disparate-treatment provision requires a showing of "some harm respecting an identifiable term or condition of employment." 601 U.S.

at 354-55. Under this “simple injury standard,” a plaintiff “need show only some injury respecting her employment terms or conditions” and need not show that “the harm incurred was ‘significant’ … [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar.” *Id.* at 355, 356 n.2, 359 (citation omitted).

Following *Muldrow*, courts have found that an accommodation denial itself may give rise to “some harm” in employment terms or conditions, without any need for an independent adverse employment decision. *See Bilyeu*, 154 F.4th at 405 (“[U]nder *Muldrow*, a court cannot dismiss a Title VII complaint simply because the plaintiff’s only harm is having to choose between violating his religious beliefs and violating workplace policies.”); *Staple*, 2024 WL 3263357, at *4 (following *Muldrow*, “[a]ll [the plaintiff] had to do was allege some harm respecting an identifiable term or condition of his employment” and “he did that” by alleging religious-accommodation denial); *cf. Cole*, 105 F.4th at 1114 & n.2 (suggesting that “the denial of a requested religious accommodation absent a showing of undue hardship may itself” result in “some harm” under *Muldrow*).

Here, Bergin's accommodation denial *did* lead to a separate adverse employment decision: her termination. But the panel decision is erroneous to the extent it suggests this is a required element of a failure-to-accommodate claim.

**CONCLUSION**

For the foregoing reasons, this Court should grant rehearing.

Respectfully submitted,

CATHERINE ESCHBACH
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

/s/ Chelsea C. Sharon
CHELSEA C. SHARON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2889
chelsea.sharon@eeoc.gov

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
Attorney
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

August 25, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because it contains 2,547 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 40(d)(2), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

/s/ Chelsea C. Sharon
CHELSEA C. SHARON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2889
chelsea.sharon@eeoc.gov

August 25, 2026

## CERTIFICATE OF SERVICE

I certify that on August 25, 2026, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate ACMS system. I certify that all counsel of record are registered ACMS users, and service will be accomplished via the appellate ACMS system.

/s/ Chelsea C. Sharon
CHELSEA C. SHARON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2889
chelsea.sharon@eeoc.gov