25-721
*Bergin v. N.Y. State Unified Court System*

# United States Court of Appeals
# For the Second Circuit

August Term 2025
Argued: March 5, 2026
Decided: July 15, 2026
Amended: September 15, 2026

No. 25-721

JESSICA BERGIN,

*Plaintiff-Appellee*,

*v.*

NEW YORK STATE UNIFIED COURT SYSTEM,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of New York
No. 22-CV-5264, Brian M. Cogan, *Judge*.

Before: RAGGI and NATHAN, *Circuit Judges*, and FURMAN, *District Judge*.*

Plaintiff was terminated for failure to comply with a COVID-19 vaccination requirement after her employer denied her request for a religious exemption. She sued the employer under Title VII of the Civil Rights Act of 1964, asserting a single claim of failure to accommodate her religion. The United States District Court for the Eastern District of New York (Cogan, *J.*) granted partial summary judgment for the plaintiff, holding that there was no genuine dispute that the plaintiff had made out a prima facie case of religious discrimination—resting in large part on statements made by the employer during discovery—and that the employer did not demonstrate that granting an accommodation would constitute an undue hardship. The employer appeals, arguing that the district court failed to modify the prima facie test for failure-to-accommodate-religion claims in light of *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). Because we agree that *Abercrombie* abrogated our earlier Title VII precedents, and because the district court improperly deemed statements in the discovery record to be judicial admissions, we **VACATE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

---

* Judge Jesse M. Furman, of the United States District Court for the Southern District of New York, sitting by designation.

STEVEN M. WARSHAWSKY, The Warshawsky Law Firm, Mount Kisco, NY, *for* Plaintiff-Appellee.

MICHAEL J. SIUDZINSKI, Of Counsel, N.Y. State Office of Court Administration, New York, NY, *for* Defendant-Appellant.

———

NATHAN, *Circuit Judge*:

Defendant New York State Unified Court System ("UCS") appeals from a judgment entered on March 10, 2025 in the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge*) in favor of plaintiff Jessica Bergin on her claim of employment discrimination based on UCS's failure to accommodate her religion in violation of Title VII of the Civil Rights Act of 1964. That Act makes actionable an employer's failure to accommodate an employee's religious practice or belief, unless providing an accommodation would pose an undue hardship.

In the past, our Circuit assessed whether a plaintiff stated a prima facie case of failure to accommodate religion under Title VII by asking whether the plaintiff (1) held a bona fide religious belief conflicting with a work requirement, (2) informed her employer of that belief, and (3) was disciplined for failure to comply with the requirement. *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d

Cir. 2001). Today we must decide whether the Supreme Court abrogated that test in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). We hold that it did. Now, to state a prima facie case of failure to accommodate religious belief or practice under Title VII, a plaintiff must demonstrate (1) that she actually required an accommodation of her religious practice, and (2) that the employer's desire to avoid the actually required prospective accommodation was a motivating factor in (3) an adverse employment decision. Because in this case the district court did not consider whether the plaintiff satisfied *Abercrombie*'s standard, and because it improperly deemed portions of the discovery record to be judicial admissions, we vacate the judgment and remand for further proceedings.

## BACKGROUND

### A. Factual Background[1]

Jessica Bergin started working as a court officer for UCS in 2016. In September 2021, UCS notified its employees that they would be required to receive COVID-19 vaccinations, or obtain a medical or religious exemption from vaccination, to remain at work. Employees were required to submit either proof of vaccination or a completed exemption form by October 18, 2021.

Exemption requests were reviewed by UCS's vaccine exemption review committee (VEC), comprising 11 administrators split into Working Groups A and B. Though either working group

[1] Because this appeal arises from the entry of summary judgment, we recount the facts—here, largely undisputed unless noted otherwise—in the light most favorable to the non-movant. *See McGucken v. Shutterstock, Inc.*, 166 F.4th 361, 368 (2d Cir. 2026).

had authority to approve an exemption request without the other group's input, either could recommend only a denial, which then triggered review by the entire VEC. In total, the VEC "received 1,200 exemption requests, 960 of which required a multi-step review process[.]" Joint App'x 269. To facilitate review at that scale, UCS imposed "strict deadlines to prevent employees from submitting an endless amount of inquiries, late requests, and 'appeals' of denials which would have required the VEC to dedicate an arduous amount of time away from their regular daily duties[.]" *Id.*

In the course of reviewing religious exemption requests, the VEC soon realized that most applicants expressed concerns about either "the connection between fetal stem cells and the development of the COVID-19 vaccine" or "the sanctity or purity of his or her own body." *Id.* at 261. Because many of those objections "did not provide sufficient information to adequately address . . . whether the applicant adhered to his or her belief consistently in regard to other vaccines and medical treatments," the VEC "developed a supplemental form to obtain additional information" about the applicant's stated beliefs. *Id.* The supplemental form—split into Section A, regarding stem cells, and Section B, regarding bodily integrity—asked questions about the applicant's past use of vaccines, medical treatments, and over-the-counter drugs.

Bergin submitted her initial religious exemption form on September 26, 2021. Attached were (1) a typed personal statement claiming that coerced vaccination would violate her religious beliefs, (2) a list of scripture verses, and (3) a letter from her pastor objecting to the use of fetal stem-cell lines in the development of the major

COVID-19 vaccines. According to UCS, because Bergin stated concerns about stem cells and bodily integrity in her application—as well as identified some non-religious objections to the vaccine requirement—the VEC requested that she submit the supplemental form. Bergin returned the form without answering most questions, instead attaching a statement that she "lived [her] entire life devoted to Jesus Christ" and that she and her family "strive to keep [their] individual medical information private." *Id.* at 71.

On December 29, 2021, UCS denied Bergin's application for a religious exemption and directed her to submit proof of vaccination by January 10, 2022. One week before that deadline, Bergin submitted a new copy of the supplemental form with the required fields filled in. The VEC responded that its "decisions are final, and the new request [would] not be considered." *Id.* at 245. Bergin did not submit proof of vaccination, and when the January deadline arrived, she was directed not to report to work until she was vaccinated. She remained on administrative leave until she was terminated on April 7, 2022 for failure to comply with the vaccination requirement. On February 15, 2023, UCS rescinded its vaccination requirement and permitted terminated employees to seek reinstatement. Bergin was reinstated on June 22, 2023.

**B. Procedural History**

On September 2, 2022, Bergin sued UCS, asserting a single count under Title VII's disparate-treatment provision. Though she clarified she was not "challenging the legality of the policy itself," Bergin claimed that UCS failed to accommodate her religious belief in denying her exemption request. *Id.* at 9. UCS moved to dismiss the

complaint, arguing that Bergin failed to state a prima facie case of failure to accommodate her religious belief or practice. The district court denied the motion. Discovery largely concerned UCS's knowledge of the sincerity of Bergin's religious objection, as discussed in its interrogatory responses and in the deposition of its Chief of Administration, Justin Barry.

At the conclusion of discovery, both parties cross-moved for summary judgment. The district court entered partial summary judgment for Bergin, holding that she stated a prima facie case under Title VII and that UCS did not establish an undue hardship defense. *See Bergin v. N.Y. State Unified Ct. Sys.* (*Bergin I*), No. 22-CV-5264, 2024 WL 4444434, at *3–4 (E.D.N.Y. Oct. 8, 2024). The district court rested largely on UCS's purported admission that Bergin's initial exemption request "was 'perfectly adequate' and 'explained a religious belief.'" *Id.* at *3. The district court confined its analysis to Bergin's initial request, agreeing that permitting her to submit an untimely supplemental form would have constituted an undue hardship. *Id.* at *4. In denying UCS's subsequent motions for a certificate of appealability and for reconsideration, the district court reiterated that its decision rested on UCS having "acknowledge[d] that [Bergin's] original religious exemption request was valid." *Bergin v. N.Y. State Unified Ct. Sys.* (*Bergin II*), No. 22-CV-5264, 2024 WL 4665266, at *4 (E.D.N.Y. Nov. 4, 2024). The parties thereafter stipulated to an amount of damages, and this appeal followed.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We review the district court's entry of summary judgment *de novo*. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 363 (2d Cir. 2025). "The same standard applies where, as here, the parties filed cross-motions for summary judgment and the district court granted one motion, but denied the other." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.*

## DISCUSSION

Title VII makes unlawful an employer's refusing to hire, discharging, or otherwise discriminating against a person because of the person's religion. *See* 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship[.]" *Id.* § 2000e(j). "The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977). In prohibiting discrimination by withholding accommodations, "Title VII does not demand mere neutrality with regard to religious

practices but instead gives them favored treatment in order to ensure religious persons' full participation in the workforce." *Groff v. DeJoy*, 600 U.S. 447, 461 n.9 (2023) (quotation marks omitted).

**A. The Prima Facie Case**

We treat failure-to-accommodate-religion claims in two steps. First, we ask whether the plaintiff has stated a "prima facie case" of religious discrimination. *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 185 (2d Cir. 2025). Second, if so, we determine whether the employer "offer[ed] him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Id.* at 186 (quotation marks omitted). This case concerns the first step.

Our Circuit originally defined the prima facie case to require a plaintiff to demonstrate that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985) (quotation marks omitted); *see also Knight*, 275 F.3d at 167; *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). Concluding that Bergin made out a prima facie case under this standard, the district court granted her motion for partial summary judgment and denied UCS's. This was error, UCS argues, because the Supreme Court changed the requirements of the prima facie case in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). We agree.

In *Abercrombie*, the Supreme Court considered whether an employer violated Title VII when it refused to hire a prospective employee who the employer assumed would require a religious

exemption from the employer's dress code. *Id.* at 770. The Tenth Circuit, applying a test identical to our own, held that the employer was entitled to summary judgment because the plaintiff had not actually requested a religious accommodation, and the employer's mere speculation did not amount to discrimination. *See* 731 F.3d 1106, 1122 (10th Cir. 2013).

The Supreme Court reversed, rejecting the Tenth Circuit's requirement that a plaintiff actually request an accommodation, and holding that "an applicant need only show that his need for an accommodation was a motivating factor in the employer's decision." *Abercrombie*, 575 U.S. at 772. The Supreme Court explained that failure-to-accommodate-religion claims fall within Title VII's disparate treatment provision, which "prohibits certain *motives*, regardless of the state of the actor's knowledge." *Id.* at 773 (emphasis in original). Therefore, "[a]n employer who has actual knowledge of the need for an accommodation does not violate Title VII by refusing to hire an applicant if avoiding that accommodation is not his *motive*," just as "an employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed." *Id.* (emphasis in original). The Supreme Court thus rejected one requirement of our old rule (that a plaintiff inform an employer of the need for an accommodation) and clarified that what a plaintiff must plead and, ultimately, prove (that the employer was motivated in part by the desire to avoid offering a religious accommodation). *See also Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020) (citing *Abercrombie*, 575 U.S. at 773–74). The Supreme Court explained that a

"request for accommodation, or the employer's certainty that the practice exists, may make it easier to infer motive," but it "is not a necessary condition of liability." *Abercrombie*, 575 U.S. at 774.

Bergin musters a variety of reasons for deviating from the Supreme Court's version of the prima facie test as articulated in *Abercrombie*. We are unpersuaded.

First, Bergin argues that our prior cases control. It is true, of course, that we are bound by a prior published opinion of this Court "unless and until it is reconsidered [*en banc*] or is rejected by a later Supreme Court decision." *United States v. Sterkaj*, 138 F.4th 95, 99 (2d Cir. 2025) (cleaned up). It is true, also, that the exception for abrogation by the Supreme Court "is not to be construed liberally" but "cautiously," keeping in mind that a "less-than-stringent application" of the rule "increases uncertainty in the law by revisiting precedent without cause." *Id.* at 100 (cleaned up). Still, if an intervening Supreme Court decision has "broken the link on which we premised our prior decision, or undermined an assumption of that decision," *Garcia Pinach v. Bondi*, 147 F.4th 117, 126 n.5 (2d Cir. 2025) (quotation marks omitted), our duty to follow Supreme Court precedent overrides our duty to follow our own. That is the case here. In *Abercrombie*, the Supreme Court held that a plaintiff need not inform her employer of the need for accommodation in order to state a Title VII claim, but that she must demonstrate that the employer acted out of a desire to avoid offering an accommodation. Our prior rule—which did include an employer-knowledge requirement and did not expressly require a showing of motive—was abrogated by

*Abercrombie*.[2] We hold that *Philbrook*'s statement of the prima facie case of failure to accommodate religion under Title VII, reiterated in *Knight* and *Baker*, is no longer good law.

Second, Bergin tells us that, "in the ten years since *Abercrombie*, this Court has not endorsed the view that Title VII accommodation claims require plaintiffs to prove discriminatory motive as part of their prima facie case" and that, if anything, one recent case suggests the opposite. Appellee's Br. 38. But this is because we have yet to confront an appeal in which *Abercrombie*'s effect on the prima facie case made the difference. For example, in *Russo v. Patchogue-Medford School District*, we referenced the old formulation of the prima facie case in order to establish context for the defendant's invocation of the undue-hardship defense, which was at issue in the appeal. *See* 129 F.4th at 185–86. Far from endorsing the pre-*Abercrombie* formulation, we "assum[ed] *arguendo* that [the plaintiff] stated a prima facie religious discrimination claim" before proceeding to the second step of the analysis. *Id.* at 186. Such a "passing observation" on the requirements of a prima facie case is dictum, rather than binding precedent. *Baraket v. Holder*, 632 F.3d 56, 59 (2d Cir. 2011). Just as our

[2] In stating that *Abercrombie* abrogated the absence of a "motive" requirement in our prior test, we do not suggest that a new, heightened discriminatory motive requirement exists in failure-to-accommodate cases. That is to say, an employee asserting a failure-to-accommodate claim need not show that an employer's denial of an accommodation was motivated by discriminatory *animus* against religion. But, consistent with *Abercrombie*, the employee does have to show that the denial was "because" of the employee's religion as opposed to, say, the employee's failure to timely provide sufficient information.

pre-*Abercrombie* cases need not control, the absence of precedent in the years since does not bind us now.

Third, now on *Abercrombie*'s terms, Bergin argues that the case is confined to the failure-to-hire context, and thus does not govern her wrongful-termination claim. But that runs headlong into the statutory text, which treats hiring and firing alike. Title VII makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2(a)(1). "As a textual matter, Title VII's disparate-treatment provision draws no distinctions between" hiring and firing. *Cf. Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 309 (2025) (making a similar observation about Title VII's treatment of majority- and minority-group plaintiffs). Nor did the Supreme Court make any such distinction in *Abercrombie*. Instead, it explained broadly that "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." 575 U.S. at 773; *see also Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1272, 1275 & n.4 (11th Cir. 2021) (applying *Abercrombie* to claims of allegedly discriminatory termination). We think it better to interpret the statute as the Supreme Court told us, to "construe Title VII's silence as exactly that: silence." *Abercrombie*, 575 U.S. at 774 (referencing urged requirement that employer have "actual knowledge of a conflict between an applicant's religious practice and a work rule"). Because Bergin's request that we

read a special rule for hiring into Title VII "asks us to add words to the law to produce what is thought to be a desirable result," *id.* (same), we must decline.

Accordingly, we hold, as required by *Abercrombie*, that to state a prima facie case of failure to accommodate a religious belief or practice under Title VII, a plaintiff must demonstrate (1) that she actually required an accommodation of her religious practice, and (2) that the employer's desire to avoid the actually required prospective accommodation was a motivating factor in (3) an adverse employment decision.[3] Though knowledge of the need for an accommodation may be *evidence* of motive, the absence of such evidence is not (as our pre-*Abercrombie* cases held) *dispositive*. *See id.* at 774. Because the district court explicitly declined to apply this standard, *see Bergin I*, 2024 WL 4444434, at *4 n.2, we vacate its judgment and remand for further proceedings consistent with *Abercrombie* and this opinion.

**B. The District Court's Judicial Admission Finding**

On remand, the district court should reassess whether summary judgment in favor of either party is appropriate under the *Abercrombie* standard. In doing so, it may treat evidence of UCS's

---

[3] In this case, Bergin's termination constitutes a cognizable adverse employment action. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting employers from "discharg[ing] any individual" on a discriminatory basis). We need not, and thus do not, decide whether the failure to accommodate itself constitutes an adverse employment action. *See id.* (further prohibiting discrimination "with respect to . . . terms, conditions, or privileges of employment"); *see also Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024).

knowledge of Bergin's need for religious accommodation as relevant to, but not necessarily dispositive of, UCS's motive to deny the accommodation. We do not agree with the district court, however, that during discovery UCS made a judicial admission that Bergin adequately communicated a sincerely held religious belief in conflict with the vaccine mandate.

The district court based its judicial-admission finding on UCS's statement—made in response to an interrogatory and during a Rule 30(b)(6) deposition—that Bergin's initial exemption request was "perfectly adequate" and "explained a religious belief." *Id.* at *3. On a motion for reconsideration, the district court reiterated that it considered UCS's statements "within the litigation" to "acknowledge[] that the employee's original religious exemption request was valid[.]" *Bergin II*, 2024 WL 4665266, at *4. We agree with UCS that the statements it made during discovery about the adequacy of Bergin's application, taken in context, did not rise to the level of a judicial admission that Bergin's initial application demonstrated a sincerely held religious belief in conflict with the vaccine mandate.

"[A] judicial admission . . . must . . . be intentional, clear, and unambiguous." *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020). Statements by counsel must "have sufficient formality or conclusiveness to be a judicial admission." *Berner v. Brit. Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532, 542 (2d Cir. 1965). In its interrogatory response, UCS admitted that it "[did] not contend that Plaintiff lacked a bona fide, good faith religious objection[.]" Joint App'x 168. But it also referred to an earlier answer in which it "contend[ed] that Plaintiff failed to provide sufficient information

about her beliefs which would have allowed the committee to grant her request." *Id.* Likewise, in UCS's Rule 30(b)(6) deposition, Justin Barry admitted that Bergin's "initial submission was perfectly adequate and it explained a religious belief," but also that the VEC "wanted to explore it some more." *Id.* at 189. Because Bergin's stated beliefs concerned "bodily integrity" and "objections related to the use of stem cells," Barry explained, "to gauge . . . the sincerity of both of those beliefs, the work[ing] group[] would typically and very frequently, if not almost all the time with those two objections or concerns, request that the individual fill out the supplemental form." *Id.* at 188.

On review of an award of summary judgment to Bergin, we must view UCS's statements during discovery in the light most favorable to UCS. When we do so, we cannot conclude as a matter of law that they constitute a judicial admission that Bergin's application raised a sincere religious objection to the vaccine mandate. To the contrary, UCS repeatedly emphasized that it required additional information to determine whether Bergin was sincere in her objection to the COVID-19 vaccine. Though "[m]otive and knowledge are separate concepts," *Abercrombie*, 575 U.S. at 773, if UCS did not know from Bergin's initial application if she was sincere, that would likely bear on whether UCS was motivated to deny her a necessary religious accommodation. There is thus at least "a doubt . . . as to the statement of counsel" which precludes finding a judicial admission here. *In re Motors Liquidation Co.*, 957 F.3d at 361 (quoting *Oscanyan v. Arms Co.*,

103 U.S. 261, 263 (1880)).[4]

We intimate no view on whether the record as a whole creates a genuine dispute about UCS's *knowledge*, nor whether such knowledge would be sufficient to support an inference of discriminatory *motive*. Nor do we decide the import of a plaintiff's failure to challenge her employer's vaccine exemption procedure generally, and how that failure might bear on her ability to show discriminatory motive. Though UCS asks us to resolve these issues in its favor on appeal, we think it appropriate for the district court to consider these questions in the first instance. We hold only that the district court should not have treated UCS's isolated statements about Bergin's initial exemption requests as dispositive judicial admissions.

## CONCLUSION

After *Abercrombie*, to prevail on a claim of failure to accommodate a religious practice or belief under Title VII, a plaintiff must plead and prove, (1) that she actually required an accommodation of her religious practice, and (2) that the employer's desire to avoid the required accommodation was a motivating factor in (3) an adverse employment decision. Because the district court entered partial summary judgment for Bergin without determining whether she met this standard, we **VACATE** the judgment and **REMAND** for further proceedings consistent with this opinion.

---

[4] For similar reasons, we disagree with the district court that UCS's claim that it lacked sufficient information to determine the sincerity of Bergin's religious objections, rather than arguing that the "belief was not sincerely held," established at summary judgment the sincerity of her belief. *Bergin II*, 2024 WL 4665266, at *3.