# 25-721

**IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

JESSICA BERGIN,

*Plaintiff-Appellee*,

v.

NEW YORK STATE UNIFIED COURT SYSTEM,

*Defendant-Appellant*.

Appeal from the United States District Court for the Eastern District of New York, No. 22-cv-5264 (BMC)

## PLAINTIFF-APPELLEE'S PETITION FOR REHEARING EN BANC

STEVEN M. WARSHAWSKY
THE WARSHAWSKY LAW FIRM
118 North Bedford Road
Suite 100
Mount Kisco, New York 10549
(914) 864-3353
*smw@warshawskylawfirm.com*

LUKE W. GOODRICH
REBEKAH P. RICKETTS
JORDAN T. VARBERG
BENJAMIN A. FLESHMAN
LEO T. O'MALLEY*
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
Suite 400
Washington, DC 20006
(202) 955-0095
*lgoodrich@becketfund.org*

**Not admitted to the D.C. Bar; admitted only in South Dakota. Practice limited to cases in federal court and supervised by licensed D.C. Bar members.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

FRAP 40(B) STATEMENT AND INTRODUCTION ..... 1

STATEMENT ..... 3

A. Statutory Background ..... 3

B. Factual Background ..... 3

C. Decision Below ..... 5

D. Panel Opinion ..... 5

ARGUMENT ..... 6

I. The panel opinion creates a 10-1 circuit split over whether an anti-accommodation motive is a necessary element of a prima facie case in Title VII failure-to-accommodate-religion claims. ..... 6

II. The panel opinion fundamentally misconstrues *Abercrombie*. ..... 9

III. The panel opinion upends 40 years of settled law on an exceptionally important question. ..... 13

CONCLUSION ..... 17

CERTIFICATE OF COMPLIANCE ..... 19

CERTIFICATE OF SERVICE ..... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Metro Ambulance Servs.*,
992 F.3d 1265 (11th Cir. 2021) .......... 7

*Baker v. Home Depot*,
445 F.3d 541 (2d Cir. 2006) .......... 14

*Barnett v. Inova Health Care Servs.*,
125 F.4th 465 (4th Cir. 2025) .......... 16

*Bostock v. Clayton County*,
590 U.S. 644 (2020) .......... 13

*Carter v. Local 556, Transp. Workers Union of Am.*,
156 F.4th 459 (5th Cir. 2025) .......... 7

*EEOC v. Abercrombie & Fitch Stores*,
575 U.S. 768 (2015) .......... *passim*

*EEOC v. Consol Energy*,
860 F.3d 131 (4th Cir. 2017) .......... 6, 7

*Groff v. DeJoy*,
600 U.S. 447 (2023) .......... 3

*Hebrew v. Tex. Dep't of Crim. Just.*,
80 F.4th 717 (5th Cir. 2023) .......... 11

*Jolly v. Coughlin*,
76 F.3d 468 (2d Cir. 1996) .......... 16

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
150 F.4th 792 (7th Cir. 2025) .......... 8

*Knight v. Conn. Dep't of Pub. Health*,
275 F.3d 156 (2d Cir. 2001) .......... 14

*Patrick v. LeFevre*,
745 F.2d 153 (2d Cir. 1984) .................................................................. 16

*Philbrook v. Ansonia Bd. of Educ.*,
757 F.2d 476 (2d Cir. 1985) .................................................................. 14

*Ringhofer v. Mayo Clinic*,
102 F.4th 894 (8th Cir. 2024) .................................................................. 9

*Smith v. City of Atlantic City*,
138 F.4th 759 (3d Cir. 2025) .................................................................. 6

*Sturgill v. Am. Red Cross*,
114 F.4th 803 (6th Cir. 2024) .................................................................. 7

*Tabura v. Kellogg, USA*,
880 F.3d 544 (10th Cir. 2018) .................................................................. 7

*Thomas v. Rev. Bd.*,
450 U.S. 707 (1981) .................................................................. 15

*Thornton v. Ipsen Biopharmaceuticals*,
126 F.4th 76 (1st Cir. 2025) .................................................................. 6

*Weiss v. Permanente Med. Grp.*,
182 F.4th 1139 (9th Cir. 2026) .................................................. 7, 9, 16

*Wilkins-Bailey v. Essity Pro. Hygiene N. Am.*,
— F.4th —, 2026 WL 2560719 (4th Cir. Sep. 1, 2026) .................... 9, 17

*Wright v. Honeywell Int'l*,
148 F.4th 779 (5th Cir. 2025) ...................................................... 6-7, 8

*Zarn v. Minn. Dep't of Hum. Servs.*,
165 F.4th 1143 (8th Cir. 2026) .................................................................. 7

## STATUTES

42 U.S.C. §2000e .................................................................. 3

42 U.S.C. §2000e-2 .................................................................. 2, 3, 10

**OTHER AUTHORITIES**

Adam Mastroleo, *Second Circuit Revises the Standard for Title VII Religious Accommodation Claims* (July 31, 2026) .......... 17

Christopher P. Maugans, *Second Circuit Realigns Title VII Religious Accommodation Standard*, Goldberg Segalla (July 24, 2026) .......... 17

*Second Circuit Raises the Bar—and Realigns It—for Religious Accommodation Claims*, Famighetti & Weinick PLLC (July 16, 2026) .......... 17

*What Employers Can Learn from Second Circuit's Religious Accommodations Decision*, Lockaby PLLC .......... 17

## FRAP 40(B) STATEMENT AND INTRODUCTION

Rehearing en banc is warranted because the panel decision abrogates 40 years of settled Circuit law—and does so based on a profound misreading of Supreme Court precedent in conflict with ten circuits.

Like other circuits, this Court long held that an employee establishes a prima facie case of failure to accommodate religion under Title VII by showing (1) she held a bona fide religious belief that conflicted with a work requirement; (2) she informed her employer of the belief; and (3) she was disciplined for failing to comply with the work requirement. Those elements are present here: Plaintiff Jessica Bergin had a "good faith religious objection" to getting a COVID-19 vaccine; she informed her employer of this belief; and she was terminated expressly "for failure to comply with the vaccination requirement." Op.6, 15.

The panel, however, held that *EEOC v. Abercrombie & Fitch Stores,* 575 U.S. 768 (2015), "abrogated" the settled prima facie test, adding a new requirement that employees in every case must demonstrate an anti-accommodation motive—*i.e.*, "that the employer acted out of a desire to avoid offering an accommodation." Op.11.

This gets *Abercrombie* backwards. *Abercrombie* makes it *easier* for employees to establish a prima facie case by rejecting an "actual knowledge" requirement. 575 U.S. at 772-73. That is, even if the employer doesn't "know for certain" that an employee needs accommodation, the employee can establish a prima facie case by showing the employer took adverse

action to avoid a suspected accommodation. *Id.* But it is even "easier" to establish a prima facie case where, as here, the employer knows of the conflicting religious belief and takes adverse action because of the conflict. *Id.* at 774. In both scenarios, the employee has made a prima facie showing that her religious practice was "a 'motivating factor' in an employment decision." *Id.* at 773 (quoting 42 U.S.C. §2000e-2(m)).

The panel's contrary ruling conflicts with ten circuits. Each of these circuits has resolved religious accommodation appeals post-*Abercrombie*, and each has reaffirmed its longstanding prima facie test. Several of these decisions came in factually indistinguishable vaccine cases—with courts specifically rejecting the idea (adopted by the panel here) that an employer's doubts about an employee's sincerity or religiosity defeat the prima facie case. As EEOC said in support of rehearing here: "No other circuit has adopted this [panel's] framework, and for good reason." EEOC Br.5, Dkt. 55.1.

The panel's ruling upends 40 years of employment-discrimination law on an issue of immense importance to religious employees. It creates perverse incentives for employers to complexify the accommodation process and deny religious accommodations. It fosters uncertainty and costly litigation, rather than providing a stable framework for employers and employees to negotiate and settle accommodation claims. And it undermines vital civil rights protections for religious employees.

## STATEMENT

### A. Statutory Background

Title VII makes it unlawful for an employer "to discharge any individual … because of such individual's … religion." 42 U.S.C. §2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate" a religious practice "without undue hardship on the conduct of the employer's business." 42 U.S.C. §2000e(j). This means "otherwise-neutral policies" must "give way to the need for an accommodation," *Abercrombie*, 575 U.S. at 775, unless the employer shows that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business," *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).

### B. Factual Background

Plaintiff Jessica Bergin worked as a court officer for Defendant New York State Unified Court System (UCS). In September 2021, UCS notified employees that they must receive COVID-19 vaccinations or obtain a medical or religious exemption. Op.4. It also warned that, when evaluating religious accommodations, "UCS may need to discuss the nature of your religious belief(s)/practice(s) with your religion's spiritual leader." JA.35.

Bergin timely requested a religious exemption and submitted a personal statement explaining the religious beliefs preventing her from

receiving the COVID-19 vaccination—including the vaccine's connection to abortion and her religious beliefs about purity and bodily autonomy. JA.53. She provided 19 Bible passages supporting her religious decision, along with a letter from her Assemblies of God pastor attesting to Bergin's sincerity and her church's corresponding religious beliefs. JA.54-57. UCS's chief administrator testified that Bergin's exemption request was "perfectly adequate" and "explained a religious belief." JA.189; Op.15. And UCS stated that it "does not contend that Plaintiff lacked a bona fide, good faith religious objection." JA.168.

Nevertheless, UCS sent Bergin a "supplemental form" requiring her to disclose detailed medical, personal, and dietary information—including whether and when she had ever received 27 different medications or any other vaccines, and all medicines, treatments, procedures, and foods she abstained from for religious reasons, when she began abstaining, and why. JA.58-65. Bergin returned the form, declining to answer intrusive questions on the ground that she and her family "strive to keep our individual medical information private." JA.66-72. However, she attached another letter expanding on why receiving the COVID-19 vaccine would violate her religious beliefs, and explaining that she would "never stray from my sincere beliefs because it has been prayed upon between myself and my God." *Id.*

UCS then denied Bergin's application for religious accommodation, claiming she provided insufficient information. JA.73. When Bergin

resubmitted the form with additional information, UCS responded that its "decisions are final, and the new request [would] not be considered." Op.6. UCS then terminated her "for failure to comply with the vaccination requirement." Op.6.

Ten months later, UCS rescinded its vaccination requirement and later reinstated Bergin. Op.6.

### C. Decision Below

Bergin sued under Title VII, alleging that UCS terminated her because of her religious practice of abstaining from the COVID-19 vaccine. After discovery, the district court granted summary judgment to Bergin, holding that she stated a prima facie case of failure to accommodate her religious practice and that UCS failed to establish undue hardship. Op.7.

### D. Panel Opinion

The panel vacated and remanded, concluding that *Abercrombie* "abrogated" the longstanding prima facie test for failure-to-accommodate claims. Op.3-4. According to the panel, in place of the previous "employer-knowledge requirement," *Abercrombie* imposes a new anti-accommodation motive requirement—specifically, the plaintiff must prove "that the employer's desire to avoid the actually required prospective accommodation was a motivating factor" in the adverse employment decision. Op.11, 14.

Under this standard, "UCS's knowledge of Bergin's need for religious accommodation," and Bergin's termination "for failure to comply with the

vaccination requirement," is "not necessarily dispositive." Op.6, 14-15. Instead, Bergin "must demonstrate that the employer acted out of a desire to avoid offering an accommodation," "as opposed to, say, [her] failure to timely provide sufficient information," or doubts about whether "she was sincere." Op.11-12 & n.2, 16.

## ARGUMENT

### I. The panel opinion creates a 10-1 circuit split over whether an anti-accommodation motive is a necessary element of a prima facie case in Title VII failure-to-accommodate-religion claims.

The panel splits with ten circuits by imposing a new requirement: to state a prima facie case of failure to accommodate religion under Title VII, employees must prove "that the employer's desire to avoid the actually required prospective accommodation was a motivating factor" in the adverse employment decision. Op.14.

Post-*Abercrombie*, the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits continue to articulate the prima facie standard the same way this Court did previously. That is, they require the plaintiff to show only that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; and (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *EEOC v. Consol Energy*, 860 F.3d 131, 141 (4th Cir. 2017); *accord Thornton v. Ipsen Biopharmaceuticals*, 126 F.4th 76, 81-82 (1st Cir. 2025); *Smith v. City of Atlantic City*, 138 F.4th 759, 774 (3d Cir. 2025); *Wright v. Honeywell Int'l*, 148

F.4th 779, 784 (5th Cir. 2025); *Sturgill v. Am. Red Cross*, 114 F.4th 803, 809 (6th Cir. 2024); *Zarn v. Minn. Dep't of Hum. Servs.*, 165 F.4th 1143, 1150 (8th Cir. 2026); *Weiss v. Permanente Med. Grp.*, 182 F.4th 1139, 1144 (9th Cir. 2026); *Tabura v. Kellogg, USA*, 880 F.3d 544, 549 (10th Cir. 2018).

Among these, the Fourth, Fifth, and Eighth Circuits have expressly analyzed whether a plaintiff satisfied her prima facie burden at summary judgment or trial; all three circuits continue to apply the same prima facie standard post-*Abercrombie*. *Consol Energy*, 860 F.3d at 141 (trial); *Carter v. Local 556, Transp. Workers Union of Am.*, 156 F.4th 459, 478-79 (5th Cir. 2025) (trial); *Zarn*, 165 F.4th at 1150 (summary judgment).

The Eleventh Circuit, like the panel here, adjusted its prima facie standard "to account for *Abercrombie*"—but did so in the *opposite* direction, making it easier to satisfy. *Bailey v. Metro Ambulance Servs.*, 992 F.3d 1265, 1275 & n.4 (11th Cir. 2021). As the Eleventh Circuit explained, *Abercrombie* eliminates the need to show that the employer had "'actual knowledge' of an applicant's or an employee's need for accommodation." *Id.* at 1275 n.4. Thus, the Eleventh Circuit now requires an employee to show only that "(1) his sincere and bona fide religious belief conflicted with an employment requirement, and (2) his employer took adverse employment action against him because of his inability to comply with the employment requirement or because of the employer's perceived need for his reasonable accommodation." *Id.* at 1275. The Seventh Circuit

likewise recognized that *Abercrombie* lowered the employee's burden, updating its standard to note that "an employer does not need actual knowledge of the accommodation's religious nature." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 150 F.4th 792, 802 (7th Cir. 2025).

None of these circuits has imposed an anti-accommodation-motive requirement post-*Abercrombie*. Rather, where, as here, an employer knows that the employee seeks religious accommodation, and the employee suffers an adverse employment action because of the conflict between her religious practice and an employment requirement, the prima facie test in these circuits is met.

The Fifth Circuit's decision in *Wright v. Honeywell International* is illustrative. 148 F.4th at 781. There, the employee applied for a religious accommodation to Honeywell's COVID-19 vaccine mandate, stating that "certain passages" in scripture "[led] him to feel very strongly about" abstaining from the vaccine. *Id.* (cleaned up). Honeywell denied his request, stating he "did not adequately identify any sincerely held religious belief" conflicting with the vaccine requirement—then fired him for "fail[ing] to get vaccinated." *Id.* The Fifth Circuit held the employee satisfied the prima facie standard at summary judgment because he had identified a religious belief regarding his bodily autonomy and had "informed Honeywell that his belief was religious" before then being terminated. *Id.* at 783-84. Honeywell's doubts about sincerity did not defeat the prima facie case. *Id.*

The Fourth Circuit considered the same issue in *Wilkins-Bailey v. Essity Professional Hygiene North America*, — F.4th —, 2026 WL 2560719 (4th Cir. Sep. 1, 2026). There, an employee objected to her employer's COVID-19 vaccination requirements based on "her belief that her 'body is a temple.'" *Id.* at *5. Her employer denied her accommodation request because it thought her beliefs were "secular," not religious. *Id.* at *2. When she remained unvaccinated, she was fired. *Id.* The Fourth Circuit ruled for the employee at summary judgment, holding that she met the prima facie standard despite her employer's doubts about her religiosity. *Id.* at *5. Other circuits have reached similar results in vaccine cases at earlier stages of litigation. *See, e.g.*, *Ringhofer v. Mayo Clinic*, 102 F.4th 894, 901 (8th Cir. 2024); *Weiss*, 182 F.4th at 1146-47.

None of these circuits required the plaintiff to prove that the adverse employment decision was motivated by a specific "desire to avoid the actually required prospective accommodation," "as opposed to, say," doubts about sincerity or insufficient "information." Op.11-12 & n.2, 14, 16. Rather, in these circuits, once employees "identify religious views they believe to conflict with taking the Covid-19 vaccine," they establish a prima facie case by showing they "were denied vaccination accommodations and fired for not taking the vaccine." *Ringhofer*, 102 F.4th at 900-01.

## II. The panel opinion fundamentally misconstrues *Abercrombie*.

The panel's contrary decision misreads *Abercrombie*. While *Abercrombie* holds that an anti-accommodation motive is *sufficient* to prove a

failure-to-accommodate claim when the employer lacks actual knowledge, *Abercrombie* doesn't deem an anti-accommodation motive *necessary* in every case. *See* EEOC Br.6.

1. The plaintiff in *Abercrombie* wore a headscarf as part of her Muslim faith. 575 U.S. at 770. She applied to work at Abercrombie, a clothing store that forbade employee headwear. Although she never notified Abercrombie of her religious practice or requested accommodation, Abercrombie "at least suspected" that "the scarf was worn for religious reasons" and declined to hire her. *Id.* at 774 n.3. When she sued, Abercrombie opposed liability on the ground that the plaintiff never provided Abercrombie "with actual knowledge of h[er] need for an accommodation." *Id.* at 771.

The Supreme Court disagreed, holding that Title VII "does not impose a knowledge requirement." *Id.* at 773. Instead, Title VII forbids employers from taking adverse employment action "'because of'" an individual's "religious practice"—which means an employer cannot make an employee's religious practice "a 'motivating factor' in an employment decision." *Id.* at 772-73 (quoting 42 U.S.C. §2000e-2(a)(1), (m)). An employer's knowledge "may make it easier to infer" that the religious practice was a motivating factor in the employment decision. *Id.* at 774. But even if the employer only "suspects" accommodation may be needed, the employer still violates Title VII if "the employer's desire to avoid the prospective accommodation is a motivating factor in his decision." *Id.* at 773-74 &

n.3. Thus, the rule in *Abercrombie* "is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *Id.* at 773.

Under that rule, this is an easy case. Bergin notified UCS of her religious objection to the COVID-19 vaccine and requested religious accommodation—a request UCS's chief administrator testified was "perfectly adequate" and "explained a religious belief." JA.189; *see also* JA.168 ("UCS does not contend that Plaintiff lacked a bona fide, good faith religious objection"). Yet UCS denied accommodation and terminated Bergin specifically "for failure to comply with the vaccination requirement." Op.6; *see also* UCS.Br.8. Thus, Bergin's "religious practice" was obviously "a factor in [the] employment decision[]." *Abercrombie*, 575 U.S. at 773.

Indeed, this case is "easier" than *Abercrombie*, because UCS didn't merely "suspect[]" that Bergin "may" request accommodation; Bergin actually requested it and was denied. *Id.* at 773-74 & n.3; *cf. Hebrew v. Tex. Dep't of Crim. Just.*, 80 F.4th 717, 724 (5th Cir. 2023) (applying *Abercrombie* and holding employee's religious practice was "the *only* factor that led to his discharge" since he "told [the employer] about his religious practice," "requested an accommodation," was denied one, and was "fired").

2. The panel here read *Abercrombie* very differently. In its view, *Abercrombie* didn't just reject an actual-knowledge requirement; it also added a new prima facie element that "a plaintiff must plead and, ultimately,

prove" in every case: "that the employer was motivated in part by the desire to avoid offering a religious accommodation." Op.10. Thus, according to the panel, it's not enough for a plaintiff to show that she had a sincere religious practice that conflicted with a work requirement, was denied an accommodation, and was disciplined for failing to comply. She must *also* show that the employer independently harbored a "motive" to "avoid offering an accommodation." Op.11.

But this confuses a *sufficient* showing with a *necessary* one. *Abercrombie* says the necessary showing "is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." 575 U.S. at 773. *Abercrombie* identifies *one way* to make this showing when an employer lacks "actual knowledge": by showing "the employer's desire to avoid the prospective accommodation is a motivating factor in his decision." *Id.* at 773-74. But *Abercrombie* doesn't say this is the *only way* to make the necessary showing.

Take, for example, an employer who willingly accommodates employees who need time off on Fridays for personal reasons, but only if the accommodation is requested two weeks in advance. A Muslim employee requests time off one week in advance to attend Friday Jummah prayer, is denied accommodation, and then is fired for leaving work to attend prayer. In such a case, even if the employer wasn't motivated by a "desire to avoid the prospective accommodation"—and was in fact happy to grant accommodations on two weeks' notice—that wouldn't mean the Muslim

employee failed to establish a prima facie case. That the employee requested a religious accommodation, was denied, and was fired for leaving for prayer would establish that his religious practice was "a motivating factor" in the termination. *Id.* at 773. Of course, the employer might be able to show that making accommodations on one week's notice was an undue hardship. But "it is no response" for the employer to argue that it lacked an anti-accommodation motive because the termination "was due to an otherwise-neutral policy." *Id.* at 775; *see also Bostock v. Clayton County*, 590 U.S. 644, 659-60 (2020) ("It doesn't matter if other factors besides the plaintiff's [religious practice] contributed to the decision"; "if changing the employee's [religious practice] would have yielded a different choice … a statutory violation has occurred.").

So too here. Bergin requested a religious accommodation, was denied, and "was terminated … for failure to comply with the vaccination requirement." Op.6. That establishes a prima facie case that her "religious practice" was "a motivating factor" in her termination. *Abercrombie*, 575 U.S. at 773. That is how every other circuit interprets *Abercrombie*. *See supra* Part I; *see also* EEOC Br.8.

## III. The panel opinion upends 40 years of settled law on an exceptionally important question.

The panel opinion not only misconstrues *Abercrombie* but also upends 40 years of precedent on a question with sweeping consequences for district courts and religious employees.

1. For over 40 years, this Court applied a clear, workable, prima facie test for religious accommodation claims. *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985), *aff'd and remanded*, 479 U.S. 60 (1986). It reaffirmed that test multiple times. *See, e.g.*, *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001); *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). That test provided guidance for lower courts and a stable, predictable backdrop against which claims of religious accommodation could be negotiated, litigated, and settled.

Declaring this test "abrogated," the panel now says employees must demonstrate an anti-accommodation motive. Op.4, 11. The panel offers little guidance on what this new requirement means. But it offers two examples signaling that this requirement—far from being a low bar—will be an important new liability shield for employers.

First, the panel suggests in a footnote that an employer would lack the requisite motive if it denies accommodation due to an "employee's failure to timely provide sufficient information." Op.12 n.2. Second, the panel suggests an employer may lack the requisite motive "if [the employer] did not know from [the employee's] initial application if she was sincere." Op.16.

It's easy to see how employers will exploit these examples in future litigation. If employers can defeat the prima facie case by claiming the employee failed "to timely provide sufficient information," Op.12 n.2, employers will have a strong incentive to complicate the accommodation

process—adding layers of bureaucracy, extra deadlines, and intrusive requests for information. Any failure by the employee to answer prying questions or jump through more hoops will give the employer grounds to dispute what used to be the simple prima facie case. And if employers can defeat the prima facie case by expressing doubts about an employee's sincerity or religiosity during the accommodation process, Op.16, employers will have an incentive to question sincerity and religiosity in almost every case.

This case illustrates the dangers. UCS's chief administrator acknowledged that Bergin's exemption request was "perfectly adequate" and "explained a religious belief," and UCS "d[id] not contend that Plaintiff lacked a bona fide, good faith religious objection." JA.189, 168; Op.15. Yet rather than accommodate Bergin, it demanded intimate details of her personal medical history in an undisguised attempt to challenge the logic and consistency of her religious beliefs. *See* JA.58-65. It also warned Bergin and other employees that "UCS may need to discuss the nature of your religious belief(s)/practice(s) with your religion's spiritual leader." JA.35.

These demands conflict with decades of Supreme Court precedent admonishing that religious beliefs need not be "logical" or "consistent" or approved by spiritual leaders to merit protection. *Thomas v. Rev. Bd.*, 450 U.S. 707, 714 (1981). Thus, it's irrelevant whether Bergin ever received "any other type of vaccine since turning 18 years of age" (she

didn't, JA.81), or whether her "spiritual leader" (JA.35) agreed with her (he did, JA.56-57). Yet the panel incentivizes employers to make this sort of inquisition standard fare in accommodation cases.

2. The harms of this regime are predictable. First, the panel opinion will burden district courts with many more sensitive inquiries into sincerity and religiosity at the prima-facie-case stage, as employers seek to defeat the showing of anti-accommodation motive by asserting doubts about an employee's sincerity or religiosity. While courts must occasionally carry out the "delicate task" of evaluating sincerity, *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996), that evaluation—particularly as a matter of routine—risks crossing into forbidden analysis of "verity" based on "the factfinder's perception of what a religion should resemble," *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984). Accordingly, other circuits have rejected employers' attempts to defeat the prima facie case by using intrusive sincerity and religiosity inquiries, followed by claims that the employee "d[id] not provide complete information." *Weiss*, 182 F.4th at 1143-45; *see supra* at 8-9 (discussing *Wright*, *Wilkins-Bailey*, and *Ringhofer*); *accord Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 472 (4th Cir. 2025) ("creat[ing] specific questions for each employee to answer so that the [employer] could scrutinize … the validity of an employee's religious beliefs" supported "a reasonable inference of discriminatory intent").

Second, by giving employers new tools for defeating the prima facie case, the panel opinion significantly shifts the balance of power in religious accommodation cases toward employers. In fact, management-side firms are already touting the panel's decision as a "landmark ruling"[1] that "raises the evidentiary bar"[2] for employees requesting religious accommodations. These firms now specifically advise employers to "inquir[e] about sincerity or consistency"[3] and to use documentation to "show that the [denial of the accommodation] was based on the circumstances of the request, not a desire to avoid providing an accommodation."[4] The message is clear: the panel's decision creates a new path for employers to avoid liability. The result will be to undermine Title VII's protections not just in vaccine cases but in all religious accommodation cases.

## CONCLUSION

The Court should grant rehearing en banc.

---

[1] Adam Mastroleo, *Second Circuit Revises the Standard for Title VII Religious Accommodation Claims*, Legal500 (July 31, 2026), https://perma.cc/JS4X-ZXAW.

[2] *Second Circuit Raises the Bar—and Realigns It—for Religious Accommodation Claims*, Famighetti & Weinick PLLC (July 16, 2026), https://perma.cc/8D7F-RP7Q.

[3] Christopher P. Maugans, *Second Circuit Realigns Title VII Religious Accommodation Standard*, Goldberg Segalla (July 24, 2026), https://perma.cc/KL44-8379.

[4] *What Employers Can Learn from Second Circuit's Religious Accommodations Decision*, Lockaby PLLC, https://perma.cc/ZE3K-FA4N.

Respectfully submitted,

LUKE W. GOODRICH
REBEKAH P. RICKETTS
JORDAN T. VARBERG
BENJAMIN A. FLESHMAN
LEO T. O'MALLEY*
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
Suite 400
Washington, DC 20006
(202) 955-0095
*lgoodrich@becketfund.org*

STEVEN M. WARSHAWSKY
THE WARSHAWSKY LAW FIRM
118 North Bedford Road
Suite 100
Mount Kisco, New York 10549
(914) 864-3353
*smw@warshawskylawfirm.com*

**Not admitted to the D.C. Bar; admitted only in South Dakota. Practice limited to cases in federal court and supervised by licensed D.C. Bar members.*

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A), because it contains 3,900 words. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: October 9, 2026 /s/ *Luke Goodrich*

## CERTIFICATE OF SERVICE

I certify that on October 9, 2026, I caused the foregoing petition to be served electronically via the Court's electronic filing system on all parties to this appeal.

Dated: October 9, 2026 /s/ *Luke Goodrich*

# ADDENDUM

25-721
*Bergin v. N.Y. State Unified Court System*

# United States Court of Appeals
# For the Second Circuit

---

August Term 2025
Argued: March 5, 2026
Decided: July 15, 2026
Amended: September 15, 2026

No. 25-721

---

JESSICA BERGIN,

*Plaintiff-Appellee*,

*v.*

NEW YORK STATE UNIFIED COURT SYSTEM,

*Defendant-Appellant*.

---

Appeal from the United States District Court
for the Eastern District of New York
No. 22-CV-5264, Brian M. Cogan, *Judge*.

---

Before: RAGGI and NATHAN, *Circuit Judges*, and FURMAN, *District Judge*.*

Plaintiff was terminated for failure to comply with a COVID-19 vaccination requirement after her employer denied her request for a religious exemption. She sued the employer under Title VII of the Civil Rights Act of 1964, asserting a single claim of failure to accommodate her religion. The United States District Court for the Eastern District of New York (Cogan, *J.*) granted partial summary judgment for the plaintiff, holding that there was no genuine dispute that the plaintiff had made out a prima facie case of religious discrimination—resting in large part on statements made by the employer during discovery—and that the employer did not demonstrate that granting an accommodation would constitute an undue hardship. The employer appeals, arguing that the district court failed to modify the prima facie test for failure-to-accommodate-religion claims in light of *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). Because we agree that *Abercrombie* abrogated our earlier Title VII precedents, and because the district court improperly deemed statements in the discovery record to be judicial admissions, we **VACATE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

________

* Judge Jesse M. Furman, of the United States District Court for the Southern District of New York, sitting by designation.

STEVEN M. WARSHAWSKY, The Warshawsky Law Firm, Mount Kisco, NY, *for* Plaintiff-Appellee.

MICHAEL J. SIUDZINSKI, Of Counsel, N.Y. State Office of Court Administration, New York, NY, *for* Defendant-Appellant.

---

NATHAN, *Circuit Judge*:

Defendant New York State Unified Court System ("UCS") appeals from a judgment entered on March 10, 2025 in the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge*) in favor of plaintiff Jessica Bergin on her claim of employment discrimination based on UCS's failure to accommodate her religion in violation of Title VII of the Civil Rights Act of 1964. That Act makes actionable an employer's failure to accommodate an employee's religious practice or belief, unless providing an accommodation would pose an undue hardship.

In the past, our Circuit assessed whether a plaintiff stated a prima facie case of failure to accommodate religion under Title VII by asking whether the plaintiff (1) held a bona fide religious belief conflicting with a work requirement, (2) informed her employer of that belief, and (3) was disciplined for failure to comply with the requirement. *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d

Cir. 2001). Today we must decide whether the Supreme Court abrogated that test in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). We hold that it did. Now, to state a prima facie case of failure to accommodate religious belief or practice under Title VII, a plaintiff must demonstrate (1) that she actually required an accommodation of her religious practice, and (2) that the employer's desire to avoid the actually required prospective accommodation was a motivating factor in (3) an adverse employment decision. Because in this case the district court did not consider whether the plaintiff satisfied *Abercrombie*'s standard, and because it improperly deemed portions of the discovery record to be judicial admissions, we vacate the judgment and remand for further proceedings.

## BACKGROUND

### A. Factual Background[1]

Jessica Bergin started working as a court officer for UCS in 2016. In September 2021, UCS notified its employees that they would be required to receive COVID-19 vaccinations, or obtain a medical or religious exemption from vaccination, to remain at work. Employees were required to submit either proof of vaccination or a completed exemption form by October 18, 2021.

Exemption requests were reviewed by UCS's vaccine exemption review committee (VEC), comprising 11 administrators split into Working Groups A and B. Though either working group

[1] Because this appeal arises from the entry of summary judgment, we recount the facts—here, largely undisputed unless noted otherwise—in the light most favorable to the non-movant. *See McGucken v. Shutterstock, Inc.*, 166 F.4th 361, 368 (2d Cir. 2026).

had authority to approve an exemption request without the other group's input, either could recommend only a denial, which then triggered review by the entire VEC. In total, the VEC "received 1,200 exemption requests, 960 of which required a multi-step review process[.]" Joint App'x 269. To facilitate review at that scale, UCS imposed "strict deadlines to prevent employees from submitting an endless amount of inquiries, late requests, and 'appeals' of denials which would have required the VEC to dedicate an arduous amount of time away from their regular daily duties[.]" *Id.*

In the course of reviewing religious exemption requests, the VEC soon realized that most applicants expressed concerns about either "the connection between fetal stem cells and the development of the COVID-19 vaccine" or "the sanctity or purity of his or her own body." *Id.* at 261. Because many of those objections "did not provide sufficient information to adequately address . . . whether the applicant adhered to his or her belief consistently in regard to other vaccines and medical treatments," the VEC "developed a supplemental form to obtain additional information" about the applicant's stated beliefs. *Id.* The supplemental form—split into Section A, regarding stem cells, and Section B, regarding bodily integrity—asked questions about the applicant's past use of vaccines, medical treatments, and over-the-counter drugs.

Bergin submitted her initial religious exemption form on September 26, 2021. Attached were (1) a typed personal statement claiming that coerced vaccination would violate her religious beliefs, (2) a list of scripture verses, and (3) a letter from her pastor objecting to the use of fetal stem-cell lines in the development of the major

COVID-19 vaccines. According to UCS, because Bergin stated concerns about stem cells and bodily integrity in her application—as well as identified some non-religious objections to the vaccine requirement—the VEC requested that she submit the supplemental form. Bergin returned the form without answering most questions, instead attaching a statement that she "lived [her] entire life devoted to Jesus Christ" and that she and her family "strive to keep [their] individual medical information private." *Id.* at 71.

On December 29, 2021, UCS denied Bergin's application for a religious exemption and directed her to submit proof of vaccination by January 10, 2022. One week before that deadline, Bergin submitted a new copy of the supplemental form with the required fields filled in. The VEC responded that its "decisions are final, and the new request [would] not be considered." *Id.* at 245. Bergin did not submit proof of vaccination, and when the January deadline arrived, she was directed not to report to work until she was vaccinated. She remained on administrative leave until she was terminated on April 7, 2022 for failure to comply with the vaccination requirement. On February 15, 2023, UCS rescinded its vaccination requirement and permitted terminated employees to seek reinstatement. Bergin was reinstated on June 22, 2023.

**B. Procedural History**

On September 2, 2022, Bergin sued UCS, asserting a single count under Title VII's disparate-treatment provision. Though she clarified she was not "challenging the legality of the policy itself," Bergin claimed that UCS failed to accommodate her religious belief in denying her exemption request. *Id.* at 9. UCS moved to dismiss the

complaint, arguing that Bergin failed to state a prima facie case of failure to accommodate her religious belief or practice. The district court denied the motion. Discovery largely concerned UCS's knowledge of the sincerity of Bergin's religious objection, as discussed in its interrogatory responses and in the deposition of its Chief of Administration, Justin Barry.

At the conclusion of discovery, both parties cross-moved for summary judgment. The district court entered partial summary judgment for Bergin, holding that she stated a prima facie case under Title VII and that UCS did not establish an undue hardship defense. *See Bergin v. N.Y. State Unified Ct. Sys.* (*Bergin I*), No. 22-CV-5264, 2024 WL 4444434, at *3–4 (E.D.N.Y. Oct. 8, 2024). The district court rested largely on UCS's purported admission that Bergin's initial exemption request "was 'perfectly adequate' and 'explained a religious belief.'" *Id.* at *3. The district court confined its analysis to Bergin's initial request, agreeing that permitting her to submit an untimely supplemental form would have constituted an undue hardship. *Id.* at *4. In denying UCS's subsequent motions for a certificate of appealability and for reconsideration, the district court reiterated that its decision rested on UCS having "acknowledge[d] that [Bergin's] original religious exemption request was valid." *Bergin v. N.Y. State Unified Ct. Sys.* (*Bergin II*), No. 22-CV-5264, 2024 WL 4665266, at *4 (E.D.N.Y. Nov. 4, 2024). The parties thereafter stipulated to an amount of damages, and this appeal followed.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We review the district court's entry of summary judgment *de novo*. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 363 (2d Cir. 2025). "The same standard applies where, as here, the parties filed cross-motions for summary judgment and the district court granted one motion, but denied the other." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.*

## DISCUSSION

Title VII makes unlawful an employer's refusing to hire, discharging, or otherwise discriminating against a person because of the person's religion. *See* 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship[.]" *Id.* § 2000e(j). "The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977). In prohibiting discrimination by withholding accommodations, "Title VII does not demand mere neutrality with regard to religious

practices but instead gives them favored treatment in order to ensure religious persons' full participation in the workforce." *Groff v. DeJoy*, 600 U.S. 447, 461 n.9 (2023) (quotation marks omitted).

**A. The Prima Facie Case**

We treat failure-to-accommodate-religion claims in two steps. First, we ask whether the plaintiff has stated a "prima facie case" of religious discrimination. *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 185 (2d Cir. 2025). Second, if so, we determine whether the employer "offer[ed] him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Id.* at 186 (quotation marks omitted). This case concerns the first step.

Our Circuit originally defined the prima facie case to require a plaintiff to demonstrate that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985) (quotation marks omitted); *see also Knight*, 275 F.3d at 167; *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). Concluding that Bergin made out a prima facie case under this standard, the district court granted her motion for partial summary judgment and denied UCS's. This was error, UCS argues, because the Supreme Court changed the requirements of the prima facie case in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). We agree.

In *Abercrombie*, the Supreme Court considered whether an employer violated Title VII when it refused to hire a prospective employee who the employer assumed would require a religious

exemption from the employer's dress code. *Id.* at 770. The Tenth Circuit, applying a test identical to our own, held that the employer was entitled to summary judgment because the plaintiff had not actually requested a religious accommodation, and the employer's mere speculation did not amount to discrimination. *See* 731 F.3d 1106, 1122 (10th Cir. 2013).

The Supreme Court reversed, rejecting the Tenth Circuit's requirement that a plaintiff actually request an accommodation, and holding that "an applicant need only show that his need for an accommodation was a motivating factor in the employer's decision." *Abercrombie*, 575 U.S. at 772. The Supreme Court explained that failure-to-accommodate-religion claims fall within Title VII's disparate treatment provision, which "prohibits certain *motives*, regardless of the state of the actor's knowledge." *Id.* at 773 (emphasis in original). Therefore, "[a]n employer who has actual knowledge of the need for an accommodation does not violate Title VII by refusing to hire an applicant if avoiding that accommodation is not his *motive*," just as "an employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed." *Id.* (emphasis in original). The Supreme Court thus rejected one requirement of our old rule (that a plaintiff inform an employer of the need for an accommodation) and clarified that what a plaintiff must plead and, ultimately, prove (that the employer was motivated in part by the desire to avoid offering a religious accommodation). *See also Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020) (citing *Abercrombie*, 575 U.S. at 773–74). The Supreme Court explained that a

"request for accommodation, or the employer's certainty that the practice exists, may make it easier to infer motive," but it "is not a necessary condition of liability." *Abercrombie*, 575 U.S. at 774.

Bergin musters a variety of reasons for deviating from the Supreme Court's version of the prima facie test as articulated in *Abercrombie*. We are unpersuaded.

First, Bergin argues that our prior cases control. It is true, of course, that we are bound by a prior published opinion of this Court "unless and until it is reconsidered [*en banc*] or is rejected by a later Supreme Court decision." *United States v. Sterkaj*, 138 F.4th 95, 99 (2d Cir. 2025) (cleaned up). It is true, also, that the exception for abrogation by the Supreme Court "is not to be construed liberally" but "cautiously," keeping in mind that a "less-than-stringent application" of the rule "increases uncertainty in the law by revisiting precedent without cause." *Id.* at 100 (cleaned up). Still, if an intervening Supreme Court decision has "broken the link on which we premised our prior decision, or undermined an assumption of that decision," *Garcia Pinach v. Bondi*, 147 F.4th 117, 126 n.5 (2d Cir. 2025) (quotation marks omitted), our duty to follow Supreme Court precedent overrides our duty to follow our own. That is the case here. In *Abercrombie*, the Supreme Court held that a plaintiff need not inform her employer of the need for accommodation in order to state a Title VII claim, but that she must demonstrate that the employer acted out of a desire to avoid offering an accommodation. Our prior rule—which did include an employer-knowledge requirement and did not expressly require a showing of motive—was abrogated by

*Abercrombie*.[2] We hold that *Philbrook*'s statement of the prima facie case of failure to accommodate religion under Title VII, reiterated in *Knight* and *Baker*, is no longer good law.

Second, Bergin tells us that, "in the ten years since *Abercrombie*, this Court has not endorsed the view that Title VII accommodation claims require plaintiffs to prove discriminatory motive as part of their prima facie case" and that, if anything, one recent case suggests the opposite. Appellee's Br. 38. But this is because we have yet to confront an appeal in which *Abercrombie*'s effect on the prima facie case made the difference. For example, in *Russo v. Patchogue-Medford School District*, we referenced the old formulation of the prima facie case in order to establish context for the defendant's invocation of the undue-hardship defense, which was at issue in the appeal. *See* 129 F.4th at 185–86. Far from endorsing the pre-*Abercrombie* formulation, we "assum[ed] *arguendo* that [the plaintiff] stated a prima facie religious discrimination claim" before proceeding to the second step of the analysis. *Id.* at 186. Such a "passing observation" on the requirements of a prima facie case is dictum, rather than binding precedent. *Baraket v. Holder*, 632 F.3d 56, 59 (2d Cir. 2011). Just as our

---

[2] In stating that *Abercrombie* abrogated the absence of a "motive" requirement in our prior test, we do not suggest that a new, heightened discriminatory motive requirement exists in failure-to-accommodate cases. That is to say, an employee asserting a failure-to-accommodate claim need not show that an employer's denial of an accommodation was motivated by discriminatory *animus* against religion. But, consistent with *Abercrombie*, the employee does have to show that the denial was "because" of the employee's religion as opposed to, say, the employee's failure to timely provide sufficient information.

pre-*Abercrombie* cases need not control, the absence of precedent in the years since does not bind us now.

Third, now on *Abercrombie*'s terms, Bergin argues that the case is confined to the failure-to-hire context, and thus does not govern her wrongful-termination claim. But that runs headlong into the statutory text, which treats hiring and firing alike. Title VII makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2(a)(1). "As a textual matter, Title VII's disparate-treatment provision draws no distinctions between" hiring and firing. *Cf. Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 309 (2025) (making a similar observation about Title VII's treatment of majority- and minority-group plaintiffs). Nor did the Supreme Court make any such distinction in *Abercrombie*. Instead, it explained broadly that "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." 575 U.S. at 773; *see also Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1272, 1275 & n.4 (11th Cir. 2021) (applying *Abercrombie* to claims of allegedly discriminatory termination). We think it better to interpret the statute as the Supreme Court told us, to "construe Title VII's silence as exactly that: silence." *Abercrombie*, 575 U.S. at 774 (referencing urged requirement that employer have "actual knowledge of a conflict between an applicant's religious practice and a work rule"). Because Bergin's request that we

read a special rule for hiring into Title VII "asks us to add words to the law to produce what is thought to be a desirable result," *id.* (same), we must decline.

Accordingly, we hold, as required by *Abercrombie*, that to state a prima facie case of failure to accommodate a religious belief or practice under Title VII, a plaintiff must demonstrate (1) that she actually required an accommodation of her religious practice, and (2) that the employer's desire to avoid the actually required prospective accommodation was a motivating factor in (3) an adverse employment decision.[3] Though knowledge of the need for an accommodation may be *evidence* of motive, the absence of such evidence is not (as our pre-*Abercrombie* cases held) *dispositive*. *See id.* at 774. Because the district court explicitly declined to apply this standard, *see Bergin I*, 2024 WL 4444434, at *4 n.2, we vacate its judgment and remand for further proceedings consistent with *Abercrombie* and this opinion.

**B. The District Court's Judicial Admission Finding**

On remand, the district court should reassess whether summary judgment in favor of either party is appropriate under the *Abercrombie* standard. In doing so, it may treat evidence of UCS's

---

[3] In this case, Bergin's termination constitutes a cognizable adverse employment action. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting employers from "discharg[ing] any individual" on a discriminatory basis). We need not, and thus do not, decide whether the failure to accommodate itself constitutes an adverse employment action. *See id.* (further prohibiting discrimination "with respect to . . . terms, conditions, or privileges of employment"); *see also Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024).

knowledge of Bergin's need for religious accommodation as relevant to, but not necessarily dispositive of, UCS's motive to deny the accommodation. We do not agree with the district court, however, that during discovery UCS made a judicial admission that Bergin adequately communicated a sincerely held religious belief in conflict with the vaccine mandate.

The district court based its judicial-admission finding on UCS's statement—made in response to an interrogatory and during a Rule 30(b)(6) deposition—that Bergin's initial exemption request was "perfectly adequate" and "explained a religious belief." *Id.* at *3. On a motion for reconsideration, the district court reiterated that it considered UCS's statements "within the litigation" to "acknowledge[] that the employee's original religious exemption request was valid[.]" *Bergin II*, 2024 WL 4665266, at *4. We agree with UCS that the statements it made during discovery about the adequacy of Bergin's application, taken in context, did not rise to the level of a judicial admission that Bergin's initial application demonstrated a sincerely held religious belief in conflict with the vaccine mandate.

"[A] judicial admission . . . must . . . be intentional, clear, and unambiguous." *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020). Statements by counsel must "have sufficient formality or conclusiveness to be a judicial admission." *Berner v. Brit. Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532, 542 (2d Cir. 1965). In its interrogatory response, UCS admitted that it "[did] not contend that Plaintiff lacked a bona fide, good faith religious objection[.]" Joint App'x 168. But it also referred to an earlier answer in which it "contend[ed] that Plaintiff failed to provide sufficient information

about her beliefs which would have allowed the committee to grant her request." *Id.* Likewise, in UCS's Rule 30(b)(6) deposition, Justin Barry admitted that Bergin's "initial submission was perfectly adequate and it explained a religious belief," but also that the VEC "wanted to explore it some more." *Id.* at 189. Because Bergin's stated beliefs concerned "bodily integrity" and "objections related to the use of stem cells," Barry explained, "to gauge . . . the sincerity of both of those beliefs, the work[ing] group[] would typically and very frequently, if not almost all the time with those two objections or concerns, request that the individual fill out the supplemental form." *Id.* at 188.

On review of an award of summary judgment to Bergin, we must view UCS's statements during discovery in the light most favorable to UCS. When we do so, we cannot conclude as a matter of law that they constitute a judicial admission that Bergin's application raised a sincere religious objection to the vaccine mandate. To the contrary, UCS repeatedly emphasized that it required additional information to determine whether Bergin was sincere in her objection to the COVID-19 vaccine. Though "[m]otive and knowledge are separate concepts," *Abercrombie*, 575 U.S. at 773, if UCS did not know from Bergin's initial application if she was sincere, that would likely bear on whether UCS was motivated to deny her a necessary religious accommodation. There is thus at least "a doubt . . . as to the statement of counsel" which precludes finding a judicial admission here. *In re Motors Liquidation Co.*, 957 F.3d at 361 (quoting *Oscanyan v. Arms Co.*,

103 U.S. 261, 263 (1880)).[4]

We intimate no view on whether the record as a whole creates a genuine dispute about UCS's *knowledge*, nor whether such knowledge would be sufficient to support an inference of discriminatory *motive*. Nor do we decide the import of a plaintiff's failure to challenge her employer's vaccine exemption procedure generally, and how that failure might bear on her ability to show discriminatory motive. Though UCS asks us to resolve these issues in its favor on appeal, we think it appropriate for the district court to consider these questions in the first instance. We hold only that the district court should not have treated UCS's isolated statements about Bergin's initial exemption requests as dispositive judicial admissions.

## CONCLUSION

After *Abercrombie*, to prevail on a claim of failure to accommodate a religious practice or belief under Title VII, a plaintiff must plead and prove, (1) that she actually required an accommodation of her religious practice, and (2) that the employer's desire to avoid the required accommodation was a motivating factor in (3) an adverse employment decision. Because the district court entered partial summary judgment for Bergin without determining whether she met this standard, we **VACATE** the judgment and **REMAND** for further proceedings consistent with this opinion.

---

[4] For similar reasons, we disagree with the district court that UCS's claim that it lacked sufficient information to determine the sincerity of Bergin's religious objections, rather than arguing that the "belief was not sincerely held," established at summary judgment the sincerity of her belief. *Bergin II*, 2024 WL 4665266, at *3.