# No. 25-721

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

JESSICA BERGIN,
*PLAINTIFF-APPELLEE*,
v.
NEW YORK STATE UNIFIED COURT SYSTEM,
*DEFENDANT-APPELLANT*.

On Appeal from the United States District Court
for the Eastern District of New York
No. 22-CV-5264 (BMC)

**BRIEF OF *AMICI CURIAE* FORMER EEOC GENERAL COUNSEL AND RELIGIOUS NONDISCRIMINATION EXPERT IN SUPPORT OF PLAINTIFF-APPELLEE'S PETITION FOR REHEARING EN BANC**

RACHEL N. MORRISON
ETHICS & PUBLIC POLICY CENTER
1730 M Street, N.W.
Suite 910
Washington, DC 20036
(202) 682-1200
rmorrison@eppc.org

*Counsel for* Amici Curiae

October 16, 2026

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iii

STATEMENT OF INTEREST OF *AMICI CURIAE* .......... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 2

ARGUMENT .......... 4

I. Title VII prohibits religious discrimination and requires reasonable accommodations for sincerely held religious beliefs. .......... 4

II. The panel departed from Title VII's legal standards. .......... 11

CONCLUSION .......... 16

CERTIFICATE OF COMPLIANCE .......... 17

CERTIFICATE OF SERVICE .......... 18

# TABLE OF AUTHORITIES

## Cases

*Adeyeye v. Heartland Sweeteners, LLC*,
721 F.3d 444 (7th Cir. 2013) ........ 6

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015) ........ 8, 12, 13

*Groff v. DeJoy*,
600 U.S. 447 (2023) ........ 9, 10

*Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*,
450 U.S. 707 (1981) ........ 5

*Trans World Airlines, Inc. v. Hardison*,
432 U.S. 63 (1977) ........ 9

*United States v. Seeger*,
380 U.S. 163 (1965) ........ 4, 6, 8

*Welsh v. United States*,
398 U.S. 333 (1970) ........ 4, 5

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) ........ 5, 6

## Statutes

42 U.S.C. § 12112(b)(5)(A) ........ 12

42 U.S.C. § 2000e ........ 4, 7, 8

42 U.S.C. § 2000e(j) ........ 13

42 U.S.C. § 2000gg-1(1) ........ 12

## Other Authorities

EEOC Guidelines on Discrimination Because of Religion, 29 C.F.R. § 1605.1 .......... 5, 6, 8

EEOC, Compliance Manual: Religious Discrimination § 12 (2021) .......... *passim*

EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (last updated May 15, 2023) .......... 10, 14

## STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

*Amici* Sharon Fast Gustafson, former General Counsel for the Equal Employment Opportunity Commission (EEOC), and Rachel N. Morrison, former attorney advisor to General Counsel Gustafson, are experts in religion-related employment discrimination. During her time at the EEOC, *Amicus* Gustafson established a Religious Discrimination Work Group to promote religious nondiscrimination and accommodation. She has worked to promote religious nondiscrimination and accommodation, as well as litigated these cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. *Amicus* Morrison was a member of the Religious Discrimination Work Group and has written and spoken as an expert on employees' religious rights in the workplace.

*Amici* offer this brief to explain Title VII's religious discrimination and accommodation standards and how the panel departed from Title VII's legal standards.

[1] This brief is submitted with a motion for leave to file pursuant to Fed. R. App. P. 29(b)(3). Pursuant to Fed. R. App. P. 29(a)(4)(E), no party's counsel authored this brief in whole or in part, and no person other than *amici* and their counsel contributed money intended to fund preparing or submitting this brief. All parties received timely notice.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case involves whether Defendant-Appellant New York State Unified Court System (UCS) lawfully denied Plaintiff-Appellee Jessica Bergin a religious accommodation to UCS's COVID-19 vaccination policy.

Under Title VII, when a workplace policy conflicts with an employee's sincerely held religious belief, an employer must reasonably accommodate the employee's religious belief if it can do so without undue hardship to the employer's business. The Equal Employment Opportunity Commission (EEOC)—the federal agency tasked with enforcing Title VII—has set out what is required of a religious accommodation.

Bergin requested a religious accommodation to UCS's COVID-19 vaccination policy, supported by 19 Bible passages, a letter from her Assemblies of God pastor, and prayer. Nevertheless, UCS denied Bergin's request because she did not also disclose private medical and dietary history and terminated her for failing to receive a COVID-19 vaccine.

Bergin sued UCS raising a Title VII failure to accommodate claim. The district court granted partial summary judgment, holding that she stated a prima facie case and UCS failed to establish undue hardship. The panel

vacated and remanded the case, wrongly claiming that *Abercrombie* "abrogated" the longstanding prima facie test and imposing a new anti-accommodation motive requirement. But Title VII contains no anti-accommodation motive requirement, and such a requirement will undercut Title VII's religious accommodation protections.

The Court should grant rehearing en banc.

## ARGUMENT

### I. Title VII prohibits religious discrimination and requires reasonable accommodations for sincerely held religious beliefs.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., prohibits discrimination in the workplace on the basis of religion. *Id.* § 2000e-2(a).

***Religious***. Title VII defines "religion" broadly to include "all aspects of religious observance and practice, as well as belief." *Id.* § 2000e(j). Beliefs are considered "religious" if they are "sincerely held" and "in the individual's 'own scheme of things, religious.'" EEOC, Compliance Manual: Religious Discrimination § 12 (2021), https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination (EEOC Compliance Manual)[2] (quoting *Welsh v. United States*, 398 U.S. 333, 339 (1970), and *United States v. Seeger*, 380 U.S. 163, 185 (1965)); *see also* EEOC Guidelines on Discrimination Because of Religion (EEOC

---

[2] EEOC's religion guidance was passed by the Commission after notice and public comment. While it is not legally binding on employers, it states the EEOC's positions and contains extensive footnotes to case law in support. In *Groff v. DeJoy*, the Supreme Court recognized that "a good deal of the EEOC's guidance in this area is sensible." 600 U.S. 447, 471 (2023).

Guidelines), 29 C.F.R. § 1605.1 (EEOC has "consistently applied" the *Welsh* and *Seeger* standard to Title VII). Title VII protects an *individual's* religious beliefs—including religious beliefs about vaccination—regardless of whether those beliefs are common or traditional, whether they seem logical or reasonable to others, whether they are recognized by an organized religion, and whether only a "few—or no—other people adhere to [them]." EEOC Compliance Manual § 12-I.A.1 (citing *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981)); EEOC Guidelines, 29 C.F.R. § 1605.1; *Welsh*, 398 U.S. at 343; *see also* EEOC Compliance Manual § 12-I.A.1 (explaining religious practices can include "refraining from certain activities"). "Title VII protects more than ... practices specifically mandated by an employee's religion." EEOC Compliance Manual § 12-I.A.2.

Determining whether a practice or belief is "religious" turns on the employee's motivation, not the nature of the activity. *Id.* § 12-I.A.1. Title VII protects *religious* beliefs; it does not protect "mere personal preferences" or "[s]ocial, political, or economic philosophies." *Id.* (citing *Wisconsin v. Yoder*, 406 U.S. 205, 216 (1972)). But "overlap between a religious and political view does not place it outside the scope of Title

VII's religious protections, as long as the view is part of a comprehensive religious belief system." EEOC Compliance Manual § 12-I.A.1. A belief that might be held by one person for religious reasons may be held by another person for purely secular reasons. *See id.*

"In most cases whether or not a practice or belief is religious is not at issue." EEOC Guidelines, 29 C.F.R. § 1605.1. While determining whether a belief is "religious" can "present a most delicate question," *Yoder*, 406 U.S. at 215, "the claim of the [individual] that his belief is an essential part of a religious faith must be given great weight." *Seeger*, 380 U.S. at 184. "[T]he [EEOC] and courts 'are not and should not be in the business of deciding whether a person holds religious beliefs for the "proper" reasons.'" EEOC Compliance Manual § 12-I.A.2 (quoting *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 452 (7th Cir. 2013)).

***Sincerely held.*** Instead of reviewing an employee's motives or reasons for holding a religious belief, the EEOC restricts its inquiry to whether the religious belief is sincerely held. EEOC Compliance Manual § 12-I.A.2. Employers and courts may likewise assess the sincerity of a religious belief, but sincerity is "usually not in dispute" and "generally presumed or easily established." *Id.*

Sincerity is "largely a matter of individual credibility." *Id.* Relevant factors that "might undermine an employee's credibility" include "whether the employee has behaved in a manner markedly inconsistent with the professed belief" and "whether the timing of the request renders it suspect." *Id.* But these factors are not "dispositive" because "an individual's beliefs—or degree of adherence—may change over time, and therefore an employee's newly adopted or inconsistently observed religious practice may nevertheless be sincerely held." *Id.* ("[A] sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance.").

***Prohibited discrimination.*** Title VII forbids employers from discriminating because of an individual's religion in hiring, promotion, discharge, "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Further, employers must not "limit, segregate, or classify" employees based on religion "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." *Id.* § 2000e-2(a)(2). Employers are prohibited from discriminating intentionally (disparate treatment) or through policies that have a

disparate impact on religious employees. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015).

***Religious accommodation requirement.*** In addition to those proscriptions, employers are affirmatively required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Absent undue hardship, an employer's failure to reasonably accommodate religious belief constitutes unlawful discrimination. In *Abercrombie*, the Supreme Court held that "Title VII requires otherwise-neutral policies to give way to the need for an accommodation." 575 U.S. at 775. The Court further explained, "Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment," creating an affirmative obligation on employers. *Id*.

An employee's "sincerely held" religious objection to a workplace policy or job duty qualifies for a religious accommodation. EEOC Compliance Manual §§ 12-I.A.2 (citing *Seeger*, 380 U.S. at 185), 12-IV; EEOC Guidelines, 29 C.F.R. § 1605.2.

***Undue hardship defense.*** The Supreme Court recently clarified "that 'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (rejecting reliance on the "more than a *de minimis* cost" line in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977), because "showing 'more than a de minimis cost' ... does not suffice to establish undue hardship under Title VII").[3] "Hardship" is "more severe than a mere burden" and, at a minimum, "something hard to bear." *Id.* And "*undue* hardship" is hardship that rises to an "'excessive' or 'unjustifiable' level." *Id.* To establish undue hardship, an "employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business," "tak[ing] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Id.* at 470-71

[3] EEOC's religion guidance was issued prior to the Supreme Court's opinion in *Groff*. *See* EEOC Compliance Manual, *Notice Concerning the Undue Hardship Standard in Title VII Religious Accommodation Cases* (acknowledging that *Groff* "supersedes any contrary information" in its guidance).

(cleaned up). This is a fact-specific inquiry appropriate for a case-by-case determination. EEOC Compliance Manual § 12-IV.B.1.

***Reasonable accommodation process.*** To receive a religious accommodation, an employee should notify the employer of the conflict between a workplace requirement, policy, or practice and the employee's sincerely held religious belief, observance, or practice. EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws § L.1 (last updated May 15, 2023), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (EEOC COVID-19 Guidance). An employer should assume an employee requesting a religious accommodation is doing so based on a sincerely held religious belief unless the employer "has an objective basis for questioning either the religious nature or the sincerity of a particular belief," in which case the employer may make a "limited factual inquiry" and seek "additional supporting information." *Id.* § L.2.

An employer and an employee should engage in a "flexible, interactive process" to identify workplace accommodations that do not impose an undue hardship on the employer. *Id.* § K.6.

***Religious accommodation denials as disparate treatment.*** Denial of religious accommodation requests can also give rise to other disparate treatment, harassment, or retaliation claims. *See* EEOC Compliance Manual §§ 12-II.A.3, Ex. 13 & n.137; 12-IV.C.4.a, Ex. 48.

## II. The panel departed from Title VII's legal standards.

Plaintiff-Appellee Jessica Bergin alleged sincere religious beliefs against taking the COVID-19 vaccination. Yet her religious accommodation request, supported by 19 Bible passages, a letter from her Assemblies of God pastor, and prayer, JA.54-57, was denied because she did not disclose private medical and dietary information.

Ignoring Title VII's standard, the panel misread *Abercrombie* to claim for the first time in over a decade that *Abercrombie* "abrogated" the established prima facie test—(1) an employee has a bona fide religious belief that conflicted with a work requirement; (2) the employer was informed of the belief; and (3) the employee was disciplined for failing to comply with the conflicting work requirement. Op.4. According to the panel, *Abercrombie* imposes a new anti-accommodation motive requirement to the prima facie test, requiring an employee to

demonstrate that an employer "acted out of a desire to avoid offering an accommodation." Op.11.

But *Abercrombie* did no such thing. In *Abercrombie*, the Supreme Court addressed whether an employer was required under Title VII to have *actual knowledge* of a religious conflict with a workplace policy. 575 U.S. at 772-73. The Court explained that unlike other nondiscrimination laws, Title VII "does not impose a knowledge requirement." *Id.* at 773 (citing the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5)(A), which defines discrimination to include an employer's failure to make "reasonable accommodations to the *known* physical or mental limitations" of an applicant (emphasis added)). *See also* Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg-1(1) (defining discrimination to include an employer's failure to make "reasonable accommodations to the *known* limitations related to the pregnancy, childbirth, or related medical conditions" (emphasis added)). So, a desire to avoid offering a religious accommodation is sufficient (not necessary) to violate Title VII. The Court articulated a "straightforward" rule for failure to accommodate claims: "An employer may not make an applicant's

religious practice, confirmed or otherwise, a factor in employment decisions." 575 U.S. at 773.

In *Abercrombie*, the employer violated Title VII by refusing to hire an employee it suspected (correctly) would need a religious accommodation to its "Look Policy." *Id.* at 775. Here, UCS terminated Bergin after it denied her a religious accommodation to its COVID-19 vaccination policy. Bergin's known religious practice—abstaining from the COVID-19 vaccine—was a factor in UCS's employment decision to fire her, easily satisfying *Abercrombie*'s rule.

The panel's anti-accommodation motive requirement is at odds with Title VII. Under Title VII, employers are required to "reasonably accommodate" an employee's religious beliefs, observances, and practices unless the accommodation would pose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Here, UCS failed to accommodate Bergin's religious objection to its COVID-19 vaccination policy not because there was no reasonable accommodation available or because any such reasonable accommodation would pose an undue hardship, but because Bergin, who had kindly and explicitly requested a

religious accommodation, thereafter declined to disclose private medical and dietary information unrelated to the COVID-19 vaccine.

While "limited factual inquiries" and seeking "additional supporting information" are permitted to ascertain the religious nature or the sincerity of a religious belief when an employer has an "objective basis" for questioning either, that is not what happened here. EEOC COVID-19 Guidance § L.2.

UCS failed to provide "an objective basis" for questioning either the religious nature or the sincerity of Bergin's religious belief. Indeed, UCS's chief administrator acknowledged that Bergin's accommodation request was "perfectly adequate" and "explained a religious belief," JA.189; Op.15, and UCS did not contend that she "lacked a bona fide, good faith religious objection," JA.168.

UCS also did not make a "limited factual inquiry" when seeking "additional supporting information." Rather, UCS sent Bergin a generic supplemental form sent to hundreds of employees, questioning her medical history related to 27 medications and other vaccines, as well as her religious practices related to abstaining from other medicines, treatments, procedures, and food. JA.58-65. This supplemental form was

expansive, intrusive, and unnecessary to determine Bergin's religious accommodation request.

Further, UCS's statement that it "may need to discuss the nature of your religious belief(s)/practice(s) with your religion's spiritual leader" was inappropriate. JA.35. Title VII protects an *individual's* religious beliefs whether or not those beliefs are recognized by an organized religion. EEOC Compliance Manual § 12-I.A.1; EEOC Guidelines, 29 C.F.R. § 1605.1. Nevertheless, Bergin provided a letter from her Assemblies of God pastor supporting her religious beliefs and accommodation request. JA.56-57.

The panel's anti-accommodation motive requirement notwithstanding, UCS's decision to deny Bergin's religious accommodation request and terminate her employment after she declined to disclose personal medical and dietary information unrelated to her religious beliefs regarding the COVID-19 vaccine is sufficient to establish a prima facie case for a Title VII failure to accommodate claim. But the panel's anti-accommodation motive requirement, if allowed to stand, will undercut Title VII's religious accommodation protections.

## CONCLUSION

The Court should grant rehearing en banc.

Respectfully submitted,

s/ Rachel N. Morrison
RACHEL N. MORRISON
ETHICS & PUBLIC POLICY CENTER
1730 M Street, N.W.
Suite 910
Washington, DC 20036
(202) 682-1200
rmorrison@eppc.org

*Counsel for* Amici Curiae

OCTOBER 16, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Microsoft Word for Mac Version 16.113.4 using a proportionally spaced typeface, 14-point Century Schoolbook.

This document complies with the type-volume limit of Fed. R. App. P. 29(b)(4) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 2,599 words.

Dated: October 16, 2026

s/ Rachel N. Morrison
Rachel N. Morrison
*Counsel for* Amici Curiae

## CERTIFICATE OF SERVICE

I, Rachel Morrison, an attorney, certify that the foregoing Brief was served electronically on all parties via the Court's electronic filing system.

Dated: October 16, 2026

s/ Rachel N. Morrison
Rachel N. Morrison
*Counsel for* Amici Curiae