**Case No. 25-721**

# In the United States Court of Appeals for the Second Circuit

JESSICA BERGIN,

*Plaintiff–Appellee-Petitioner*,

*v.*

NEW YORK STATE UNIFIED COURT SYSTEM,

*Defendant–Appellant-Respondent*.

On Appeal from the United States District Court
for the Eastern District of New York
Case No. 22-cv-5264 (BMC)

**BRIEF OF *AMICI CURIAE* CHRISTIAN LEGAL SOCIETY AND JEWISH COALITION FOR RELIGIOUS LIBERTY IN SUPPORT OF THE PETITION FOR REHEARING *EN BANC***

John C. Sullivan
Jace R. Yarbrough
Cliff P. Riley
Sarah C. Cohen
**S | L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
T: (469) 523-1351
F: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Counsel for Amici Curiae*

## DISCLOSURE STATEMENT

As required by Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A), *amici* confirm that they have no parent corporations and that no publicly held corporation owns 10% or more of their stock.

# TABLE OF CONTENTS

**Page**

Disclosure Statement ........ i

Table of Authorities ........ iii

Statement of Interest of *Amici Curiae* ........ 1

Introduction ........ 3

Argument ........ 6

I. *Abercrombie*'s Motive Requirement Is Satisfied By Deliberate Adverse Action Based On Conflicting Religious Practice. ........ 6

II. Title VII's Favored Treatment Of Religious Practice Forecloses Neutrality As A Substitute For Accommodation. ........ 9

III. Procedural And Evidentiary Disputes Cannot Justify The Doctrinal Sea Change Here. ........ 12

Conclusion ........ 15

Certificate of Compliance ........ 17

Certificate of Service ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015) ........ *passim*

*Groff v. DeJoy*,
600 U.S. 447, 471 (2023) ........ 8

*Weiss v. Permanente Med. Grp., Inc.*,
182 F.4th 1139 (9th Cir. 2026) ........ 15

## Statutes

Title VII of the Civil Rights Act of 1964 ("Title VII"),
codified at 42 U.S.C. § 2000e et seq. ........ *passim*

## Rules

Fed. R. App. P. 29(a)(4)(E) ........ 1

Fed. R. App. P. 40(b)(2) ........ 14

## STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

*Amici Curiae* share a concern for individual religious rights, including the ability to participate in the workforce without abandoning sincerely held religious practices. Although representing different faith communities, *amici* have a common interest in preserving religious accommodation across various traditions.

*Amici*'s members have long enjoyed religious liberty protections under Title VII. And over a decade ago, the Supreme Court made it easier for employees to make out Title VII violations against employers. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772–73 (2015) (noting "Title VII relaxes th[e] standard" for plaintiffs); *id.* at 775 (holding that religious rights receive "favored treatment" under the statute).

The panel decision here, however, threatens those gains for religious liberty, creating a lopsided circuit split that subjects religious practices to employers looking for end-runs around Title VII. While

---

[1] Pursuant to FRAP 29(a)(4)(E), *amicus* certifies that no counsel for any party authored this brief, in whole or in part, and that no party, party's counsel, or any other person—other than *amicus*, its members, or its counsel—contributed money to fund the preparation or submission of this brief.

*amici*'s members across the country continue to enjoy the traditional *Abercrombie* framework, those in the Second Circuit will face hurdles the Supreme Court did not intend.

*Amicus Curiae* Christian Legal Society is a nationwide association of Christian lawyers and law students whose mission is to serve Jesus Christ through, among other means, legal aid and advocacy for religious liberty for all. CLS has expertise in the law of religious accommodation under § 701j of Title VII of the 1964 Civil Rights Act and has an interest in individuals being protected against an unreasonable reading of that section that would pose an impossibly high burden for employees.

*Amicus Curiae* Jewish Coalition for Religious Liberty is a non-denominational organization dedicated to protecting religious freedom for all Americans. Founded in 2016, the JCRL is an association of Jewish-American lawyers, rabbis, and communal professionals committed to defending religious liberty in the United States. Its mission emphasizes that religious freedom is not solely a Christian issue and seeks to ensure that adherents of all religions—including Jews and Muslims—are equally protected under the law. The JCRL has submitted *amicus* briefs in numerous state and federal courts, including the

Supreme Court of the United States; submitted op-eds to prominent news outlets; and established an extensive volunteer network to spur public statements and action on religious liberty issues by Jewish communal leadership.

## INTRODUCTION

The panel's interpretation of *Abercrombie*'s "motive" requirement imposes an additional showing of anti-accommodation motive that the Supreme Court's opinion does not support. *See* Op. 10. The *Abercrombie* Court distinguished knowledge of the need for accommodation from the motive for an employment decision. 575 U.S. at 773. An employer might, for example, know that an applicant needs religious accommodation yet reject the applicant solely because the applicant lacks a required professional license. The panel, however, took this to mean that a plaintiff must *always* show a separate anti-accommodation motive. This directly controverts *Abercrombie*'s direction that Title VII requires "otherwise-neutral policies to give way to the need for an accommodation." *Id.* at 775. The panel should have reconciled *Abercrombie*'s motive language with the affirmative obligation directive.

Rather than converting accommodation claims into searches for an additional purpose behind the employer's refusal, *Abercrombie* makes religious accommodation a form of disparate-treatment protection. A failure to accommodate case is an intentional discrimination case. *Id.* at 772 (explaining that failure to accommodate claims belong in the category of "disparate treatment"—*i.e.*, "intentional discrimination"). Consistent with this, the Court explained that an adverse employment action *because of* religious practice is "synonymous with refusing to accommodate the religious practice." *Id.* at 772 n.2.

When the employer deliberately imposes an adverse consequence because the employee adheres to the conflicting religious practice, the refusal to accommodate is proven. A separate explanation of why the employer preferred non-accommodation is unnecessary. Otherwise, an employer could always defeat an accommodation claim merely by characterizing its decision (*i.e.*, motive) as enforcement of a neutral policy. The Supreme Court, however, rejected neutral enforcement as a sufficient answer, holding that Title VII gives religious practices "favored treatment" and requires "otherwise-neutral policies to give way to the

need for an accommodation." *Id.* at 775. Any consideration of "motive" here must account for these directives.

A request for further information may bear on whether an employee actually requires religious accommodation and on what motivated the employer's decision. But a procedural explanation for denying the request does not, by itself, resolve what motivated the subsequent discharge. Once the evidence establishes that the employer deliberately chose discipline because of the conflicting religious practice rather than permitting it, a preference for uniform enforcement explains why it chose not to accommodate—not why the decision falls outside *Abercrombie*.

Although the panel disclaims an animus requirement, Op. 12 n.2, it leaves unexplained what additional anti-accommodation purpose a plaintiff must prove—even after the employer acts because of the employee's adherence to the conflicting religious practice. If that deliberate choice of the employer is enough, the panel's additional requirement adds no independent evidentiary burden. If that deliberate choice of the employer is not enough, the panel inappropriately exceeds *Abercrombie* by demanding something beyond the causal showing that *Abercrombie* identifies as "synonymous" with refusing accommodation.

The Court should clarify that deliberately imposing an adverse consequence *because of* a conflicting religious practice supplies the requisite causal showing (*i.e.*, motive) without independent proof of any further anti-accommodation purpose. That is how *Abercrombie* has been understood across the country for a decade, *see* Pet. 6–9; there is no reason to change now. The petition for rehearing should be granted.

## ARGUMENT

### I. *Abercrombie*'s Motive Requirement Is Satisfied By Deliberate Adverse Action Based On Conflicting Religious Practice.

Title VII prohibits discharge or other adverse employment decisions "because of" religion. 42 U.S.C. § 2000e-2(a)(1). Congress defined religion to include "all aspects of religious observance and practice, as well as belief," subject to the employer's demonstration that it cannot reasonably accommodate without undue hardship. *Id.* § 2000e(j). Religion need only be "a motivating factor," even when other factors also motivate the decision. *Id.* § 2000e-2(m).

*Abercrombie* reads those provisions together. It states that "an applicant need only show that his need for an accommodation was a motivating factor in the employer's decision." 575 U.S. at 772. It then

identifies the governing rule: "An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *Id.* at 773. The protected practice and the need to accommodate it are not separate subjects requiring separate proofs of causation.

Footnote 2 of *Abercrombie* is decisive here. Addressing Justice Alito's concern about the plaintiff's burden, the Court states that failing to hire because of religious practice is "synonymous with refusing to accommodate the religious practice." *Id.* at 772 n.2. "To accuse the employer of the one is to accuse him of the other." *Id.* Accommodation, the Court explains, means allowing the employee to engage in the religious practice despite contrary workplace rules. *Id.* The majority thus preserves the plaintiff's burden to establish discriminatory causation while explaining why that showing is sufficient and does not invite the employer to conjure, or the employee to disprove, a second, independent purpose behind the refusal to accommodate. The Court read § 701j as leaving to the employer only the response of attempting to prove an undue hardship. *Id.*

Consider an employer that knows an employee observes a Sabbath, refuses an exception to its Saturday-work requirement, and discharges the employee for observing that Sabbath. The reason for the discharge is the conflict that accommodation would resolve. The employer may prefer uniform attendance or administrative convenience to the accommodation. And those types of explanations may bear on the question of undue hardship. The employer's additional explanations or goals, however, cannot establish that the religious conflict played no motivating role in the discharge.[2]

This is not an argument that knowledge alone establishes liability. *Abercrombie* expressly distinguishes motive from knowledge: an employer may know of an accommodation need yet reject an applicant for an unrelated reason. 575 U.S. at 773 ("Motive and knowledge are separate concepts."). Nor does every unanswered request establish an intentional refusal. The relevant combination is a religious conflict (known or suspected), a deliberate choice not to permit the conflicting

[2] Under *Groff*, a mere administrative burden or other temporary cost—without more—does not constitute an "undue hardship." *Groff v. DeJoy*, 600 U.S. 447, 471 (2023).

practice, and adverse action because the employee adheres to it. The causal connection—not an inference from silence—supplies the motive.

The panel quotes *Abercrombie*'s "desire to avoid" language but declares the longstanding prima facie formulation abrogated because it did not expressly demand motive. Op. 10–12. Yet absence of the word "motive" does not mean absence of causation—especially since a "failure to accommodate" is, itself, synonymous with and a species of "intentional discrimination." 575 U.S. at 772. The traditional formulation connected discipline to noncompliance with the requirement that conflicts with the disclosed or suspected religious belief. Op. 9. *Abercrombie* removes actual notice as an indispensable prerequisite; it does not establish that the familiar facts, when proved and causally connected, become insufficient without evidence of a further purpose—*i.e.*, it establishes that the causal showing supplies the requisite motive without proof of an additional anti-accommodation purpose.

## II. Title VII's Favored Treatment Of Religious Practice Forecloses Neutrality As A Substitute For Accommodation.

The meaning of motive is found in the protection Congress enacted. Congress provided special protection for religious persons and organizations in the broad definition of "religion" (701j) and the carveouts

for religious entities and schools (702 and 703e2). Formally equal treatment is not the statutory endpoint. *Abercrombie* expressly rejects the contention that disparate treatment requires an employer to have treated religious practices less favorably than comparable secular practices—no "comparator" is needed here (unlike other types of discrimination claims). 575 U.S. at 775. Title VII instead gives religious practices "favored treatment." *Id.* An employer may maintain a generally applicable rule, but the rule must yield when an accommodation is needed. *Id.*

That holding rejects the contention that an employer avoids Title VII liability simply because it intended to enforce a neutral policy. Indeed, *Abercrombie* itself involved a generally applicable dress code. The district manager directed that the prospective employee not be hired because her headscarf violated that policy, as would other headwear, religious or otherwise. *Id.* at 770. The Court nevertheless rejected neutrality as an answer to the accommodation claim. *Id.* at 775. Requiring employees to identify an independent purpose beyond deliberate enforcement against the conflicting religious practice *would restore the very solution the Court rejected* in *Abercrombie.*

For its part, the panel acknowledges favored treatment for religious beliefs. Op. 8–9. But the panel's newly-fashioned analytical framework fails to operate consistently with that principle. An employer that chooses not to make an exception because it prefers uniformity, for example, has chosen to avoid accommodation for that reason. Even so, it is still not accommodating the religious belief. A benign explanation for preferring non-accommodation does not sanitize the choice. Neither religious hostility nor some additional "motive" to disadvantage religious employees is necessary—the panel's fundamental error was to allow employers to hide behind formally neutral policies.

Yet reversal of that error would not make the accommodation obligation absolute. *Abercrombie* preserves the employer's undue-hardship defense—even in the footnote equating the causal showing with refusal to accommodate. 575 U.S. at 772 nn.1–2. But the burden of *demonstrating* undue hardship is on the employer. 42 U.S.C. § 2000e(j). The employer's business needs therefore remain relevant through the statutory framework.

The distinction is important for both sides. An employee cannot demand that every preferred arrangement be granted. But an employer

cannot avoid examining accommodation merely by describing its decision as neutral enforcement. Otherwise, Title VII's favored treatment of religious practice would disappear precisely where it matters: when a religious employee needs an exception to a rule that ordinarily applies to everyone.

For *amici*'s members, the principle extends beyond vaccination requirements. Sabbath observance, religious dress, and other practices regularly conflict with otherwise legitimate employment rules. A rule permitting employers to avoid accommodation scrutiny by insisting that they intended only uniform enforcement would leave these employees with formal equality but without the accommodation Congress supplied. *Abercrombie*, 575 U.S. at 771–75.

## III. Procedural And Evidentiary Disputes Cannot Justify The Doctrinal Sea Change Here.

The reason an employer declines an accommodation request and the reason it takes an adverse action against the employee are analytically distinct. A procedural explanation for the former does not automatically establish the absence of religious causation for the latter. Title VII expressly addresses discharge, and the panel identifies Bergin's termination as the cognizable adverse employment action. Op. 14 n.3.

The proper inquiry must therefore address what motivated that adverse action, not stop at the label attached to the exemption denial (that Bergin inadequately answered the employer's questions).

Here, Bergin initially returned her supplemental form without most answers. UCS denied the request, directing her to provide proof of vaccination. Although Bergin supplied a completed form before the vaccination deadline, UCS declined to reconsider its decision and terminated her for failure to comply with the vaccination requirement. Op. 5–6. These distinct steps matter to identifying the causal relationship between the religious conflict, the refusal of accommodation, and the discharge. The danger in the panel's approach is that a *procedural* explanation for denying an exemption is substituted for examining what was a *motive* for the discharge. On the panel's own account, Bergin was terminated for noncompliance with the vaccination requirement—*not for failing to complete a form*. Whether the religious conflict motivated the discharge must therefore be examined separately; it cannot be resolved merely by invoking the earlier procedural deficiency.

*Amici* do not ask the Court to address any evidentiary disputes or procedural findings. The Court can leave those questions open while correcting the panel's mistake and reinforcing the well-established causal showing the employee must make. The needed clarification is narrow: where the evidence establishes that the employer deliberately penalized adherence to the conflicting religious practice rather than permitting it, the employee need not additionally prove an independent anti-accommodation purpose. A court may find that the evidence does not establish that causal connection. But *Abercrombie* does not allow a court to assume that premise and then demand proof of something more.

Rehearing *en banc* is warranted to secure uniform application of *Abercrombie* and resolve an exceptionally important question affecting religious employees throughout the Circuit. *See* Fed. R. App. P. 40(b)(2). The petition develops the inter-circuit conflict; *amici* only emphasize here the practical and doctrinal consequences. The Court should not require an additional subjective purpose after the employee has shown the deliberate, causally connected choice that *Abercrombie* identifies as refusal to accommodate. Otherwise, the panel opinion will create unwarranted difficulties across the Circuit for religious employees

seeking to vindicate their statutory right to "favored treatment" for their beliefs and practices.[3]

## CONCLUSION

Rehearing *en banc* should be granted.

[3] A recent decision of the Ninth Circuit demonstrates that it can be challenging for religious employees to get past the pleading stage—even without any alterations to *Abercrombie*. *See Weiss v. Permanente Med. Grp., Inc.*, 182 F.4th 1139 (9th Cir. 2026) (litigating for three years to prove sufficiency of notice that employer's vaccination policy conflicted with religious practice). *Amici* fear that adopting the more onerous burden of proof embraced below would undermine Title VII rights even further.

October 16, 2026

Respectfully submitted.

*/s/ John C. Sullivan*
John C. Sullivan
Jace R. Yarbrough
Cliff P. Riley
Sarah C. Cohen
**S | L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
T: (469) 523-1351
F: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because it contains 2591 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because its substantive text is prepared in a proportionally spaced, 14-point Century Schoolbook typeface.

*/s/ John C. Sullivan*
John C. Sullivan

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I certify that on October 16, 2026, I caused the foregoing to be filed through this Court's CM/ECF system, which will serve a notice of electronic filing on all registered users.

*/s/ John C. Sullivan*
John C. Sullivan

*Counsel for Amici Curiae*